UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES JONES, as Personal Representative
of the Estate of WADE JONES, deceased,

              Plaintiff,

    v.

KENT COUNTY, KENT COUNTY
SHERIFF LAWRENCE STELMA,
CHIEF DEPUTY DAVID KOK, CAPT.
KLINT THORNE, DEPUTY JULIE
COOPER, DEPUTY DONALD PLUGGE,
DEPUTY WILLIAM JOURDEN, DEPUTY
WILLIAM GRIMMETT, SGT. McGINNIS,
SGT. BRYAN KNOTT, DEPUTY TONY
HOUSTON, DEPUTY C. BOGNER,
DEPUTY BRYAN CLARK, DEPUTIES
JOHN DOES 1 – 5, CORIZON HEALTH,
INC., a Delaware Corporation, CORIZON
HEALTH, d/b/a CORIZON OF MICHIGAN,
TERI BYRNE, R.N., JANICE STEIMEL, L.P.N.,
JOANNE SHERWOOD, N.P., MELISSA
FURNACE, R.N., DAN CARD, R.N. or L.P.N.,
CHAD RICHARD GOETTERMAN, R.N.,
JAMES AUGUST MOLLO, L.P.N.,
ANGELA NAVARRO, R.N. and LYNNE
FIELSTRA, L.P.N., jointly and severally.

              Defendants.

Case No.: 1:20-cv-00036
Hon. Judge Paul L. Maloney
Magistrate Judge Sally J. Berens

_____/

| BUCKFIRE LAW FIRM | CHAPMAN LAW GROUP |
|---|---|
| Jennifer G. Damico (P51403) | Ronald W. Chapman Sr., M.P.A., |
| Attorney for Plaintiff | LL.M. (P37603) |
| 29000 Inkster Road, Suite 150 | Attorney for Corizon Defendants |
| Southfield, MI 48034 | 1441 West Long Lake Rd., Suite 310 |
| (248) 569-4646 | Troy, MI 48098 |
| (248) 569-6737 (fax) | (248) 644-6326 |
| Jennifer@buckfirelaw.com | rchapman@chapmanlawgroup.com |

VARNUM LLC
Timothy E. Eagle (P38193)
Attorney for Kent County
Defendants
P.O. Box 352
Grand Rapids, MI 49501
(616) 336-6537

_____/

**PLAINTIFF, CHARLES JONES, AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF WADE JONES, DECEASED'S, RESPONSE TO DEFENDANTS,
CORIZON HEALTH, INC., TERI BYRNE, R.N., JANICE STEIMEL, L.P.N., JOANNE
SHERWOOD, N.P., MELISSA FURNACE, R.N., DAN CARD, L.P.N., CHAD RICHARD
GOETTERMAN, R.N., JAMES AUGUST MOLLO, L.P.N., ANGELA NAVARRO, R.N.,
AND LYNNE FIELSTRA, L.P.N.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

NOW COMES Plaintiff, CHARLES JONES, as Personal Representative of the Estate of Wade Jones, deceased, by and through his counsel, The Buckfire Law Firm, and for his Response to Defendants, Corizon Health, Inc., Teri Byrne, R.N., Janice Steimel, L.P.N., Joanne Sherwood, N.P., Melissa Furnace, R.N., Dan Card, L.P.N., Chad Richard Goetterman, R.N., James August Mollo, L.P.N., Angela Navarro, R.N., and Lynne Fielstra, L.P.N.'s (the "Corizon Defendants" hereinafter) Motion to Dismiss Plaintiff's Complaint Pursuant to FED. R. CIV P. 12(b)(6), requests this Honorable Court deny Defendants' Motion and states the following:

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Plaintiff denies the allegations in Paragraph four (4) for the reasons set forth in his Brief in Opposition to the Corizon Defendants' Motion to Dismiss Pursuant to FED. R. CIV P. 12(b)(6).

5.      Plaintiff denies the allegations in Paragraph five (5) for the reasons set forth in his Brief in Opposition to the Corizon Defendants' Motion to Dismiss Pursuant to FED. R. CIV P. 12(b)(6).

6.      Plaintiff denies the allegations in Paragraph six (6) for the reasons set forth in his Brief in Opposition to the Corizon Defendants' Motion to Dismiss Pursuant to FED. R. CIV P. 12(b)(6).

7.      For the reasons set forth in Plaintiff's Brief in Opposition, Plaintiff requests this Honorable Court deny the Corizon Defendants' Motion to Dismiss Pursuant to FED. R. CIV P. 12(b)(6).

8. Plaintiff admits that counsel for the Corizon Defendants sought concurrence in dismissal of Count V - Medical Malpractice, only. Concurrence was denied by Plaintiff. (Ex. 1)

WHEREFORE, Plaintiff, CHARLES JONES, as Personal Representative of the Estate of Wade Jones, deceased, respectfully requests this Honorable Court deny the Corizon Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to FED. R. CIV P. 12(b)(6) for the reasons set forth in his Brief in Opposition.

Respectfully submitted,

BUCKFIRE LAW FIRM

BY:     /s/ Jennifer G. Damico
        Jennifer G. Damico (P51403)
        Attorney for Plaintiff
        29000 Inkster Road, Suite 150
        Southfield, MI 48034
        (248) 569-4646
        jennifer@buckfirelaw.com

April 23, 2020

## CERTIFICATION OF COMPLIANCE WITH LCivR 7.2(b)(i)

The undersigned hereby certifies that Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss is 8,322 words, including headings, footnotes, citations and quotations. The undersigned relied upon Microsoft® Word for Mac, Version 16.33, © 2019 Microsoft, for the word count.

/s/ Jennifer G. Damico (P51403)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES JONES, as Personal Representative
of the Estate of WADE JONES, deceased,

                Plaintiff,

v.

KENT COUNTY, KENT COUNTY
SHERIFF LAWRENCE STELMA,
CHIEF DEPUTY DAVID KOK, CAPT.
KLINT THORNE, DEPUTY JULIE
COOPER, DEPUTY DONALD PLUGGE,
DEPUTY WILLIAM JOURDEN, DEPUTY
WILLIAM GRIMMETT, SGT. McGINNIS,
SGT. BRYAN KNOTT, DEPUTY TONY
HOUSTON, DEPUTY C. BOGNER,
DEPUTY BRYAN CLARK, DEPUTIES
JOHN DOES 1 – 5, CORIZON HEALTH,
INC., a Delaware Corporation, CORIZON
HEALTH, d/b/a CORIZON OF MICHIGAN,
TERI BYRNE, R.N., JANICE STEIMEL, L.P.N.,
JOANNE SHERWOOD, N.P., MELISSA
FURNACE, R.N., DAN CARD, R.N. or L.P.N.,
CHAD RICHARD GOETTERMAN, R.N.,
JAMES AUGUST MOLLO, L.P.N.,
ANGELA NAVARRO, R.N. and LYNNE
FIELSTRA, L.P.N., jointly and severally.

                Defendants.

Case No.: 1:20-cv-00036
Hon. Judge Paul L. Maloney
Magistrate Judge Sally J. Berens

_____/

| BUCKFIRE LAW FIRM | CHAPMAN LAW GROUP |
|---|---|
| Jennifer G. Damico (P51403) | Ronald W. Chapman Sr., M.P.A., |
| Attorney for Plaintiff | LL.M. (P37603) |
| 29000 Inkster Road, Suite 150 | Attorney for Corizon Defendants |
| Southfield, MI 48034 | 1441 West Long Lake Rd., Suite 310 |
| (248) 569-4646 | Troy, MI 48098 |
| (248) 569-6737 (fax) | (248) 644-6326 |
| Jennifer@buckfirelaw.com | rchapman@chapmanlawgroup.com |

VARNUM LLC
Timothy E. Eagle (P38193)
Attorney for Kent County
Defendants
P.O. Box 352
Grand Rapids, MI 49501
(616) 336-6537

_____ /

**PLAINTIFF, CHARLES JONES, AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF WADE JONES, DECEASED'S, BRIEF IN OPPOSITION TO
DEFENDANTS, CORIZON HEALTH, INC., TERI BYRNE, R.N., JANICE STEIMEL,
L.P.N., JOANNE SHERWOOD, N.P., MELISSA FURNACE, R.N., DAN CARD, L.P.N.,
CHAD RICHARD GOETTERMAN, R.N., JAMES AUGUST MOLLO, L.P.N., ANGELA
NAVARRO, R.N., AND LYNNE FIELSTRA, L.P.N.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

ISSUES PRESENTED……………………….................................................... ii

INDEX OF AUTHORITIES…………………………………………………………… iii, iv, v

PLAINTIFF'S COUNTER STATEMENT OF FACTS……...…………………… 1

CONTROLLING OR MOST APPROPRIATE AUTHORITY………………….. 6

ARGUMENT…..…………………………………………………………………. 8

I.   PLAINTIFF HAS PLEAD SUFFICIENT FACTUAL ALLEGATIONS, IF TAKEN AS TRUE, THAT SUPPORT A PLAUSIBLE CLAIM FOR RELIEF FOR DAMAGES THAT WADE JONES' IMPAIRED ABILITY TO FUNCTION ON APRIL 24, 2018, WAS NOT 50% OR MORE THE CAUSE OF THE ACCIDENT OR EVENT THAT LED TO HIS DEATH… 8

II.  PLAINTIFF HAS PLEAD SUFFICIENT FACTUAL ALLEGATIONS, IF TAKEN AS TRUE, THAT SUPPORT PLAUSIBLE CLAIMS FOR RELIEF FOR DAMAGES, AGAINST DEFENDANTS FOR GROSS AND ORIDNARY NEGLIGENCE………………………………………….… 13

III. PLAINTIFF HAS PLEAD SUFFICIENT FACTUAL ALLEGATIONS, IF TAKEN AS TRUE, THAT SUPPORT A PLAUSIBLE CLAIM FOR RELIEF FOR DAMAGES, AGAINST DEFENDANT, TERI BYRNE, R.N., FOR VIOLATION OF WADE JONES' EIGHTH AND FOURTEENTH AMENDMENT RIGHTS……………………………………………………….. 16

IV.  PLAINTIFF HAS PLEAD SUFFICIENT FACTUAL ALLEGATIONS, IF TAKEN AS TRUE, THAT SUPPORT A PLAUSIBLE CLAIM FOR RELIEF FOR DAMAGES, AGAINST DEFENDANT, CORIZON HEALTH, INC., FOR VIOLATION OF WADE JONES' EIGHTH AND FOURTEENTH AMENDMENT RIGHTS (*MONELL* CLAIM)…………… 22

RELIEF REQUESTED…………………………………………………………… 27

i

## ISSUE PRESENTED

SHOULD PLAINTIFF'S COMPLAINT BE DISMISSED PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)?

Defendants Answer:          Yes

Plaintiff Answers:          No

ii

## INDEX OF AUTHORITIES

**CONSTITUTION**

U.S. Const. amend. VIII, §1, cl. 3..……………………………………………………………… i,16,17,22

U.S. Const. amend. XIV, §1, cl. 3…………………………………………………………………… i,16,22

**CASES**

*Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)…………………………………………….. 22

*Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)……………………………………… 18

*Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir.  2001)…………………………………… 7

*Ashcroft v. Iqbal,* 556 U.S. 662, 29 S.Ct. 1937, 1949, 173 L.Ed.2d. 868 (2009)………………… 6,7

*Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)…………………………………… 7

*Beebe v. Hartman*, 290 Mich. App. 512, 526, 807 N.W.2d 333 (Mich. 2010), *adopted*, 489
Mich. 956, 798 N.W.2d 513 (Mich. 2011)………………………………………………………….. 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570, 127 S.Ct. 1995, 167 L.Ed.2d 929 (2007)..… 6,7

*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004)……………………………… 17

*Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991)…………………………………… 17,18

*Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 409, 117 S.Ct.
1382, 137 Ed.2d 626 (1997)……………………………………………………………………….. 24

*Bryant v. Oakpointe Villa Nursing Ctr.,* 471 Mich 411, 684 N.W.2d 864 (Mich. 2004)……….. 14,15,16

*Comstock v. McCrary*, 273 F.3d 693, 702 (6th  Cir. 2001)……………………………………… 18,21

*Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011)………………….. 24

*Cook v. Martin*, 148 Fed. Appx. 327, 337-38 (6th Cir. July 25, 2005) (unpublished)……..…….. 21

*Doe v. Claiborne County,* 103 F.3d 495, 509 (6th Cir. 1996)………………………………….... 22,24

*Darrah v. Krisher*, 865 F.3d 361, 368 (6th Cir. 2017)…………………………………………... 18

*Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)……………………..……. 23

*Estelle v. Gamble*, 429 U.S. 97, 104-06, 97 S.Ct. 285, 50 L.Ed.2d  (1976)............................ 17,18

*Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)................. 16

*Harbour v. Corr. Med. Servs.*, 266 Mich. App. 452, 702 N.W. 2d 671 (Mich. 2005); *cert. denied,* 475 Mich. 859, 712 N.W.2d 777 (Mich. 2006)................................................................ 8,9,10,11 12,13

*Hudson v. Palmer*, 468 U.S. 517, 526-527, 104 S.Ct. 3194, 82 L.Ed.2d 393(1984)................ 16

*L.A. County v. Humphries*, 562 U.S. 29, 38-39, 131 S.Ct. 447, 178 L.Ed.2d 460 (2010).......... 22

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1974)......... i,1,22,23

*Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993)..................................................................... 17

*Reed v. Breton,* 475 Mich. 531, 539, 718 N.W.2d 770 (Mich. 2006).................................. 10

*Richmond v. Huq*, 885 F.3d 928 (6th Cir. 2018)............................................................................ 18

*Shadrick v. Hopkins Cty., Ky*., 805 F.3d 724, 738 (6th Cir. 2015)...................................... 23

*Southern Ohio Bank v. Merrill Lynch, Pierce, Finner and Smith, Inc.,* 479 F.2d 478, 480 (6th Cir. 1973) ........................................................................................................................... 6

*Tate v. Coffee County*, 48 Fed. Appx. 176, 180 (6th Cir. Oct. 4, 2002) (unpublished)............ 21

*Technology Recycling Corp. v. City of Taylor,* 186 Fed. Appx 624, 640 n.5 (6th Cir. 2006)...... 7

*Trowell v. Providence Hosp. & Med. Centers, Inc.,* 316 Mich. App. 680, 697, 893 N.W.2d 112 (Mich. 2016)............................................................................................................................ 15,16

*Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005)............................................. 22

*Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir. 1976)................................................................. 6,17

*Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1976)....................... 17

*Wiley v. Henry Ford Cottage Hosp*., 257 Mich. App. 488, 510, 668 N.W.2d 402 (Mich. 2003).. 15

*Wilson v. Seiter*, 501 U.S.  294, 301, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)..................... 17

*Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 511–12 (6th Cir. 2001).............................. 6,9

**STATUTES**

42 U.S.C. §1983 ………………………………………………………………………………… 1,22

MCL §600.2955a………………………………………………………………………………… 8,10,11

**RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(b)(6) ………………………………………………………………………… ii,6,7,23

Fed. R. Civ. P. 12(c) …………………………………………………………………………… 7

## **PLAINTIFF'S COUNTER STATEMENT OF FACTS**

Plaintiff's decedent, Wade Jones, age 40, died from complications of hypoxia and irreparable brain damage after suffering from severe alcohol withdrawal during his 4-day incarceration at the Kent County Correctional Facility (KCCF), from April 24, 2018 through April 27, 2018. His father, Plaintiff, Charles Jones, filed this Complaint as personal representative of the Estate of Wade Jones, against Kent County, the individual Kent County correctional officers (the "Corrections" and/or "Kent County" Defendants), and the Corizon Defendants, the health care service provider for KCCF. **(ECF No. 1-2, PageID.60)**

Plaintiff's Complaint states the following causes of action against the Corizon Defendants: 1) Count III- Deliberate Indifference to Serious Medical Needs, Violation of Civil Rights Pursuant to 42 U.S.C. §1983 against the individual Corizon employees, 2) Count IV – Failure to Screen, Failure to Train, Failure to Supervise, and Inadequate Policies, Procedures, Customs and Practices – Deliberate Indifference, Violation of Civil Rights Pursuant to 42 U.S.C. §1983 against Corizon Health, Inc. (*Monell* Claim), 3) Count V – Medical Malpractice against the Corizon Defendants (the individual Defendants and Corizon Health, Inc.), and 4) Count VI- Ordinary and Gross Negligence against Corizon Health, Inc. **(ECF No. 1)**

Paragraphs thirty-eight (38) through one hundred ninety-four (194) of Plaintiff's Complaint contain detailed, factual allegations based upon Plaintiff's 21-month investigation into his son's death. **(ECF No.1, PageID. 9-34)(Ex. 2, Declaration of Jennifer G. Damico)** [1]

---

[1] Plaintiff respectfully directs the Court to his Complaint where 24 pages are dedicated to his factual allegations, rather than repeat them here.

A brief recitation and timeline of the pertinent factual allegations are provided below:

| DATE/TIME | FACTUAL ALLEGATION | Ex. No. |
|---|---|---|
| 4/13/18 | Wade Jones (Jones) was issued a misdemeanor ticket for retail fraud-3rd degree, with a notice to appear for an arraignment hearing at the 59th District Court in Walker, Michigan. | ECF No.1; PageID.13 |
| 4/24/18- 2:45 p.m. | The district court judge read the results of Jones' two (2) portable breath tests (PBT): .159 and .145. | ECF No.1-4,PageID.122 |
| 4/24/18- 3:01 p.m. | The district court judge stated that he could smell the odor of alcohol on Jones, chastised him for appearing in court intoxicated, and sentenced him to an immediate 5-day incarceration at the KCCF. | ECF No.1-4, PageID.126 |
| 4/24/18 -5:17 p.m. to 5:27 p.m. | Jones was transported to the KCCF at around 4:40 p.m. and was seen by Defendant, Teri Byrne, R.N., at Central Intake for his Medical and Mental Health Screening Examinations and Surveys ("Screening Forms"). | ECF No. 37, PageID. 318 |
| 4/24/18–5:17p.m.-5:27 p.m. | While she performed a dental check, including examining his gums and teeth, Defendant, Byrne, did not note the odor of alcohol, did not ask Jones the time of his last drink, or record any other indicators that Jones was intoxicated or had the potential withdrawal during his stay.[2] | Ex. 3 |
| 4/24/18-5:27 p.m. | Defendant, Byrne, made no referrals to nursing, did not recommend that he be placed in an observation cell, nor did Defendant, Byrne, recommend that he be placed on a medically supervised alcohol withdrawal program. | ECF No.29, PageID. 261; ECF No. 37, PageID. 319-320 |
| 4/24/18 –9:00 p.m. | Jones was transferred to the main jail, housing unit L1 and placed in cell #011. | ECF No. 37, PageID. 320 |
| 4/24/18-10:18 p.m. | Defendant, Deputy Julie Cooper, entered "Medical Alerts" in Jones' KCCF record for alcohol withdrawals or delirium tremens based upon Jones' self -reporting of his symptoms. | Ex. 4; ECF No. 37, PageID. 320 |
| 4/25/18-1:17 p.m. | Defendant, Deputy Donald Plugge, conducted Jones' Primary Classification Screening ("Classification") 21 hours after being booked in the KCCF.  In his report, Defendant, Plugge, wrote: "GOING THRU ALC WD'S [alcohol withdrawals] HASN'T RECEIVED MEDS YET. HAVING ISSUES WITH SLEEPING AND THROWING UP. . . DAILY LIQUOUR USE."  Defendant, Plugge, did not refer Jones to the nursing staff, the infirmary, and/or an off-site acute care facility, and wrote: "LEAVE IN CURRENT LOCATION UNTIL WD'S IMPROVE." | Ex. 5; ECF No. 37, PageID. 324 |

---

[2] Exhibit "A" to Defendants' Brief in Support of their Motion to Dismiss are the redacted Medical and Mental Health Screening Examinations and Surveys purportedly completed by Defendant, Byrne, on April 24, 2018. **(ECF No. 29-1, PageID. 265-269)** *The full, unredacted surveys, which Plaintiff's counsel obtained directly from Defendant, Kent County, through a FOIA request, are attached as Ex. 3.*

| 4/24/18-4/26/18 | Defendant, Deputies William Jourden and William Grimmett, and several unidentified deputies, made frequent bed/cell checks, talked to Jones, and observed his increasingly erratic behavior. | Ex. 2; ECF No. 37, PageID. 327, |
|---|---|---|
| 4/26/18-1:00 a.m. | 27 hours after Jones' self-reported alcohol withdrawal symptoms or delirium tremens, Defendant, Jourden, entered a note into the KCCF record: "Inmate has started to display symptoms of WD. Hallucinations, confusion, picking and banging on door to escape. Will continue to monitor." | Ex. 6; ECF No. 37, PageID. 328 |
| 4/26/18-4:00 a.m. | 31 hours after self-reporting alcohol withdrawal symptoms or delirium tremens, Jones was seen by a medical professional, Defendant, Janice Steimel, L.P.N. | Ex. 6; ECF No. 37, PageID. 328 -329 |
| 4/26/18 –4:30 a.m. | Defendant, Steimel, performed a standardized alcohol withdrawal protocol test, CIWA-ar, and documented Jones' score as 19. She wrote that she was "unable to get" his blood pressure and no vitals were noted on the record. | Ex. 7 |
| 4/26/18-5:30 a.m. | Defendant, Melissa Furnace, R.N., requested and received the verbal orders from Defendant, Joanne Sherwood, N.P., for the administration of Diazepam (Valium), 10 milligrams orally, every 8 hours for 2 days. She noted that Jones' condition as: "hallucinations." | Ex. 8 |
| 4/26/18-12:55 p.m | Jones was given his first, and only, dose of Diazepam – approximately 45 hours after his incarceration in KCCF. | Ex. 2 |
| 4/26/18-7:00 p.m. | Jones was seen by Defendant, Lynn Fielstra, L.P.N.. She conducted a CIWA-ar and documented his score as 21 (severe). She did not check his vital signs or note them in the record. | Ex. 9 |
| 4/27/18-12:25 a.m | Defendant, Jourden, called for medical personnel to attend to a laceration on Jones' elbow "due to rapid movements in his cell." | Ex. 10 |
| 4/27/18-12:35 a.m | Defendant, Dan Card, L.P.N., arrived at cell #011.[3] He did not administer a dose of Diazepam, bandage and/or treat the elbow of a visibly incoherent Jones, who was in a severe medical crisis. He did not take Jones' vital signs. Instead, he entered with a clip board and attempted to have Jones sign forms. | Ex. 2; Ex. 12 |
| 4/27/18-4:00 a.m. | Defendant, Card, returned to Jones' cell and performed a CIWA-ar. He noted the score as 20 (severe). He did not administer a dose of Diazepam, bandage Jones' lacerated elbow or perform any medical services. He did not take Jones' vital signs. Defendant, Card, completed the "Refusal of Clinical Services" form and indicated that Jones refused "withdrawal check" because he was "Ok at this time." The form is not signed by Jones. | Ex. 2; Ex. 9 |
| 4/27/18-5:01 a.m. | Defendant, Jourden, noted in the record that "[I]nmate Jones was unable to understand directions from staff to be evaluated by medical during WD checks." | Ex. 12 |

---

[3] Plaintiff mistakenly refers to this Defendant as James August Mollo, L.P.N., in his Complaint.

| 4/27/18-5:30 a.m. | Defendant, Furnace, was called to Jones' cell due to "severe w/d, shaking (observed by deputy), skin tear, R elbow, vodka use, visual, tremors." She assisted Defendant, Card, in bandaging Jones' elbow. No dose of Diazepam was given to Jones. She noted his blood pressure as 150/92 and his Glasgow Coma Scale Score as 13 (improperly added as 14). | Ex. 13 |
|---|---|---|
| 4/27/18– 5:45 a.m. | Defendant, Furnace, called Defendant, Joanne Sherwood, N.P., and received the following instructions: "[A]ttempt to have inmate rel. [released](rel. date tomm) and bring to ER – spoke to Sgt McGinnis, after 7 am, can try and talk to courts/and/or bring to ER. To infirmary now." | Ex. 14 |
| 4/27/18-5:59 a.m. | Jones was taken to the infirmary (M1H) by wheelchair because he could not stand up or walk. He was placed in observation cell 0139. | Ex. 2 |
| 4/27/18-6:00 a.m.-7:43 a.m. | Jones was in cell 0139 alone. He was not seen by any medical personnel while in H1M until he was found unresponsive. No one entered to take vital signs, administer medication, start an IV with fluids, and/or perform any type of medical examination or service. | Ex. 2 |
| 4/27/18-7:36 a.m. | Defendant, Deputy Houston, received telephone call from Defendant, Sgt. Knott, "asking if the nurses started and IV yet." Defendant, Houston, told Defendant, Knott, that Defendant, Chad Goetterman, was "waiting for Nurse Practitioner Joanne Sherwood to arrive [shift began at 8:00 a.m.] and determine if they were going to send him out to hospital or put an IV in here." | Ex. 21 |
| 4/27/18-7:43 a.m. | Defendant, Goetterman, found Jones unconscious and not breathing on the toilet in cell 0139. He attempted to resuscitate Jones with assistance from other Defendants. Jones was in cardiac arrest. EMS was called. | Ex. 15 |
| 4/27/18-7:52 a.m. | Hart EMT's intubated Jones and performed advanced life saving techniques. Jones is transported to Spectrum Butterworth Hospital. | Ex. 16 |
| 4/27/18 - 5/2/18 | Jones never regained consciousness and was put on life support. He suffered an anoxic injury and remained in vegetative state with no brain activity due to acute respiratory failure secondary to cardiac arrest and died on May 2, 2018. | Ex. 17 |
| 5/5/18 | The Kent County Medical Examiner noted Jones' final diagnosis as medical complications of chronic ethanol abuse, status postmortem harvest of heart and hypoxic ischemic encephalopathy. The toxicology report showed less that .01 mcg/mL of Diazepam in his femoral blood drawn on 4/27/18 at 8:45 a.m.; less than the low linear reference range for the drug. | Ex. 18 |

As alleged in Plaintiff's Complaint, and supported by the Exhibits, at the time of the Jones' death, the Defendant, Corizon Heath, Inc., enjoyed a $5,500,000.00 annual contract (the "Contract") to provide medical services to Kent County inmates. **(ECF No. 1-2, PageID. 61)** The

Contract required Corizon to adhere to all standards set forth by the National Commission on Correctional Health Care (NCCHC), and in particular, "Standards for Health Services in Jails". **(ECF No. 1-3, PageID. 72)** Defendant agreed to be bound by the NCCHC standards in order obtain accreditation from the commission; no doubt a selling point in soliciting lucrative contracts. In exchange for the $5,500,000.00 annual fee, Defendant, Corizon Health, Inc., agreed to staff the KCCF with licensed, certified, and trained medical personnel, at a certain number for each level of licensure or certification. Further, it agreed, at a minimum, to provide continuing health care professional education and training to its medical staff and to the corrections staff.

While Plaintiff, without the having the opportunity to conduct discovery, is not in possession of the Defendant, Corizon Health, Inc.'s, written policies and procedures, the NCCHC standards set forth a basis for the constitutional violations as set forth in Plaintiff's Complaint, as fully explained in Plaintiff's Brief, Argument, Paragraphs III and IV, *infra.*

The Corizon Defendants request this Honorable Court find that no factual development could justify relief where Plaintiff outlined plausible, if not probable, causes of action against the Corizon Defendants. At the very least, genuine issues of material fact exist that respectfully, preclude this Honorable Court from summarily dismissing Plaintiff's Complaint prior to the commencement of discovery.

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

### **A.    FED. R. CIV. P. 12(b)(6) and (c)**

A motion to dismiss for failure to state a claim is disfavored, especially when one's civil rights are at stake. *Westlake v. Lucas,* 537 F.2d 857, 858 (6ᵗʰ Cir. 1976).

The Corizon Defendants seek dismissal on the pleadings in lieu of answering Plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(6). To survive this motion, Plaintiff's Complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570, 127 S.Ct. 1995, 167 L.Ed.2d 929 (2007). A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d. 868 (2009)(quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. at 1966).

"All well pleaded material allegations of the non-moving party's pleadings are taken as true and allegations of the moving party that have been denied are taken as false." *Southern Ohio Bank v. Merrrill Lynch, Pierce, Finner and Smith, Inc.,* 479 F.2d 478, 480 (6ᵗʰ Cir. 1973). See also, *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6ᵗʰ Cir. 2001) (the court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of [a] claim that would entitle [the plaintiff] to relief.").

Generally, a complaint does not need to contain "detailed factual allegations," although its allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Blanket assertions" or a "formulaic recitation of the elements of a cause of action" are not sufficient. *Twombly,* 550 U.S. at 555, 556 n. 3. In other words, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 570). The factual allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949–50. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. A well pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely," and Rule 12(b)(6) does not continence dismissal based on a judge's disbelief of the plaintiff's factual allegations. *Twombly,* 127 S.Ct. at 1964-1965.

The court generally reviews only the allegations set forth in the complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss. However, "<u>matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account</u>." *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001)(*emphasis supplied)*. A motion on the pleadings under FED. R. CIV. P. 12(c), "turns on legal issues, and is not an assessment of the evidence." *Technology Recycling Corp. v. City of Taylor,* 186 F. Appx 624, 640 n.5 (6th Cir. 2006). When considering whether to grant a motion to dismiss pursuant Rule 12(b)(6) or 12(c), the court may consider any other items of "public record" without converting the motion into one for summary judgment. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008).

## ARGUMENT

**I. PLAINTIFF HAS PLEAD SUFFICIENT FACTUAL ALLEGATIONS, IF TAKEN AS TRUE, THAT SUPPORT A PLAUSIBLE CLAIM FOR RELIEF FOR DAMAGES THAT WADE JONES' IMPAIRED ABILITY TO FUNCTION ON APRIL 24, 2018, WAS NOT 50% OR MORE THE CAUSE OF THE ACCIDENT OR EVENT THAT LED TO HIS DEATH.**

The Corizon Defendants seek dismissal of Plaintiff's state law medical malpractice, ordinary and gross negligence claims, based upon an apportionment of fault statute, MCL §600.2955a, relying upon *Harbour v. Corr. Med. Servs.*, 266 Mich. App. 452, 702 N.W. 2d 671 (Mich. 2005); *cert. denied,* 475 Mich. 859, 712 N.W.2d 777 (Mich. 2006). MCL §600.2955a, states, in relevant part:

> "(1) It is an absolute defense in an action for death of an individual or injury to a person or property that the individual upon whose death or injury the action is based had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and as a result of that impaired ability, the individual was 50% or more the cause of the accident or event that resulted in their death or injury. If the individual described in this subsection was less than 50% of the cause of the accident or event, an award of damages shall be reduced by that percentage.

> (2) As used in this section:

> (b) "Impaired ability to function due to the influence of intoxicating liquor or a "controlled substance" means that, <u>as a result of an individual drinking . . . intoxicating liquor the individual's senses are impaired to the point that the ability to react is diminished from what it would have be had the individual not consumed the liquor</u>. . . An individual is presumed under this section to have an impaired ability to function due to the influence of intoxicating liquor . . .if, under a standard prescribed by section 625a of the Michigan vehicle code, . . . , a presumption would arise that the individual's ability to operate a vehicle was impaired. MCL §600.2955a(1) and (2)(b)(emphasis added).

The intent of the statute was to "place more responsibility on intoxicated plaintiffs who are equally or more to blame for their injuries by making a shift toward personal responsibility." *Beebe v. Hartman*, 290 Mich. App. 512, 526, 807 N.W.2d 333 (Mich. 2010), *adopted*, 489 Mich.

956, 798 N.W.2d 513 (Mich. 2011)(quoting, *Harbour,* 266 Mich. App. at 461). However, "this purpose would not be served if a plaintiff, albeit an intoxicated plaintiff, were precluded from bringing an action to recover for separate and discrete injuries that were the result of medical malpractice and not the plaintiff's intoxication. Such an outcome would result in an inequitable shifting of the blame that would favor a negligent medical care provider who was more at fault for the injury than the intoxicated plaintiff." *Id.*

As discussed below, the facts of this case are distinguishable from *Harbour*. However, the Corizon Defendants are asking the Court to apply the summary judgment standard before Plaintiff has had the opportunity to conduct discovery. Plaintiff's claims must only be *plausible on their face,* meaning, dismissal is only warranted if "plaintiff undoubtedly can prove no set of facts in support of [a] claim that would entitle [the plaintiff] to relief." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).

In *Harbour,* the decedent was arrested for driving under the influence of alcohol and registered a .032 on a Breathalyzer test at the Macomb County Jail; three (3) times over the legal limit. *Harbour v. Corr. Med. Servs.*, 266 Mich. App. 452, 454, 702 N.W. 2d 671 (Mich. 2005). Upon intake, the decedent was assessed by a corrections nurse, who placed him on "sick call" in a holding cell, to be seen in the morning by a doctor. *Id.* The decedent collapsed two hours after the nurse's assessment and died as a result of irregular heart rhythms caused by acute alcohol withdrawal. *Id.* The plaintiff alleged medical malpractice, intentional conduct and ordinary negligence against the correctional health care provider.

A jury trial commenced, and at the close of the plaintiff's proofs, the trial court granted directed verdict for the defendant, finding as a matter of law, that "the evidence unequivocally established that the decedent's intoxication was the proximate cause of his death." *Harbour*, 266

Mich. App. 452, 455. The trial court dismissed all plaintiff's claims with the exception of her count for medical malpractice. *Id.* The appellate court affirmed the decision. *Id.* at 463.

In its analysis, the *Harbour* Court deconstructed the statute, stating that the defendant had the burden to prove that: 1) the decedent had an impaired ability to function due to the influence of intoxicating liquor, and 2) that as a result of that impaired ability, the decedent was 50% or more the cause of the accident or event that result in his death. *Harbour,* 266 Mich. App. 452, 456 (Mich. 2005).

The court found that the plaintiff presented no evidence to refute that the decedent's blood alcohol level was .032, and therefore, at the time accident or event, he "presumptively had an 'impaired ability to function due to the influence of intoxicating liquor' under MCL 600.2955a(2)(b)." *Id.* at 457. In other words, the plaintiff presented no evidence to rebut the presumption created by the statute. *Reed v. Breton,* 475 Mich. 531, 539, 718 N.W.2d 770 (Mich. 2006)("[t]he usual standard required to overcome a rebuttable presumption is 'competent and credible evidence.'").

Next, the plaintiff argued that the "event" that led the decedent's death was the defendant's subsequent negligence. In the context of acute alcohol withdrawal, the appellate court looked to the broad meaning of the word "event" stating:

> "[i]n this case, the expert medical witnesses uniformly agreed that withdrawal is the natural and expected, even inevitable, outcome of excessive alcohol consumption. However, the testimony of these experts also indicated that withdrawal, although caused by drinking alcohol, is a process or syndrome distinct from alcohol consumption; withdrawal has a detectable onset, is manifested by specific symptoms, and eventually passes. Therefore, alcohol withdrawal meets the broad definition of an "event," as defined in *Piccalo,* for the purposes of MCL 600.2955a(1)."

*Id.*

Importantly, the *Harbour* Court rejected the plaintiff's argument that the decedent's death could have been prevented had he been taken to an emergency room, as speculative, *based upon the testimony of the plaintiff's own medical experts. Id.* at 463. Therefore, in affirming the lower court's ruling, the court stated:

> "[u]nder these circumstances, reasonable minds could not differ
> that, as a result of that impairment, the decedent was fifty percent
> or more the cause of the "event" – acute alcohol withdrawal – that
> resulted in his death. Plaintiff's own evidence was unequivocal that
> the decedent's chronic alcohol abuse, and on the night in question,
> his alcohol-related impairment caused the acute withdrawal that was
> the "most immediate, efficient, and direct cause" of his death."

*Id.*

In order to avail themselves to the absolute bar of MCL §600.2955a, *as a matter of law*, the Corizon Defendants, must satisfy both components of the statute: 1) that Jones had an impaired ability to function due to the influence of intoxicating liquor, and 2) that as a result of that impaired ability, the Jones was 50% or more the cause of the accident or event that result in his death. *Harbour,* 266 Mich. App. 452, 456 (Mich. 2005). The Corizon Defendants cannot satisfy either.

First, the Corizon Defendants cannot unequivocally demonstrate that Jones had "an impaired ability to function" within the meaning of MCL §600.2955a(2)(b). Second, Plaintiff is permitted to rebut any presumption of "impairment" by way of competent and credible evidence. Third, the Corizon Defendants cannot unequivocally prove when the alleged "event" – alcohol withdrawal syndrome or delirium tremens – began. And forth, Plaintiff maintains that the separate and distinct acts and/or omissions committed by the Corizon Defendants during the four (4) days of Jones' incarceration were the "most immediate, efficient and direct cause of his death" that clearly outweigh any potential comparative fault of Jones.

The Corizon Defendants are equivocal.  On one hand, they argue that due to alcohol intoxication, Jones had an impaired ability to function on April 24, 2018, the day he was medically-evaluated by its screening health care professional, Defendant, Teri Byrne, R.N., and this impaired ability to function on April 24, 2018, was 50% or more the cause of the event, alcohol withdrawal syndrome and/or delirium tremens, that resulted in his death.

On the other hand, they argue that Byrne, registered nurse, who is trained in screening incoming inmates for drug and alcohol addiction issues, including the signs and symptoms of alcohol withdrawal, exhibited no signs of intoxication, impaired ability or alcohol withdrawal on April 24, 2018, and therefore, she could not have been deliberately indifferent to his serious medical needs.

Unlike the decedent in *Harbour,* who was arrested after registering a .32 on a Breathalyzer, and died within a few hours of his incarceration, the causal connection between Jones' alcohol consumption and his death, is considerably weakened by time, and separate and distinct, superseding acts and omissions by the Defendants.

These facts are uncontroverted. At approximately 2:45 p.m., on April 24, 2018, the district court judge read Jones' PBT results into the record as .159 and .145.  (**ECF No. 1-4, PageID. 122**) It is unknown at what time the tests were administered.  The district court judge stated: "[y]ou don't present as intoxicated, which concerns that you have a tolerance built up."  (**ECF No. 1-4, PageID. 124**) Jones arrived at the jail at approximately 4:40 p.m., and was assessed by Defendant, Byrne, from approximately 5:17 p.m. to 5:27 p.m. (**ECF No. 37, PageID. 318**)

At 10:18 p.m. on April 24, 2018, Jones reported that he was experiencing alcohol withdrawal symptoms and alerts were entered into his KCCF record. (**Ex. 4; ECF No. 37, PageID. 320**) The only order for life-saving alcohol withdrawal medication was made on April 26, 2018

at 5:30 a.m.; 33 hours after Jones' first documented self-report of withdrawal symptoms. **(Ex. 8)**

Jones was not transferred to the infirmary or medical isolation unit (H1M) until 6:00 a.m. on April

27, 2018. Once in H1M, no medical personnel entered his observation cell to take his vital signs,

administer medications, start an IV of fluids, or otherwise provide any type of medical care or for

the approximately 1 ½ hours that he was in cell 0139, until he was found unresponsive in the

bathroom stall. The toxicology report showed that Jones had less that .01 ng/mL of Diazepam in

his femoral blood drawn at 8:45 a.m. on April 27, 2018; meaning, he was not given the medication

in accordance with the order. **(Ex. 18)**

In addition to the detailed factual allegations in Plaintiff's Complaint, three (3) affidavits

from medical expert witnesses were attached as exhibits. **(ECF No. 1-6, PageID 129-142)** These

affidavits, alone, distinguish this case from *Harbour,* and create genuine issues of material fact as

to whether: 1) Jones had an impaired ability to function due to the influence of alcohol on April

24, 2018, that was 50% or more the cause of the event that led to his death, and 2) whether the

Corizon Defendants' medical malpractice, gross and/or ordinary negligence was a proximate cause

of Jones' injuries and death. Accordingly, the Corizon Defendants' Motion to Dismiss Plaintiff's

Complaint should be denied.

## II.     PLAINTIFF HAS PLEAD SUFFICIENT FACTUAL ALLEGATIONS, IF TAKEN AS TRUE, THAT SUPPORT PLAUSIBLE CLAIMS FOR RELIEF FOR DAMAGES AGAINST DEFENDANTS FOR GROSS AND ORIDNARY NEGLIGENCE.

Count VI of Plaintiff's Complaint alleges claims of gross and ordinary negligence against

the Corizon Defendants. Specifically, Plaintiff maintains that the Corizon Defendants had a duty

to maintain the medical equipment in proper working order, including the AED [automated

external defibrillator] and oxygen tanks. Further, Plaintiff argues that the Corizon Defendants

failed to properly hire, train, instruct, supervise and control the actions and conduct of its

employees and agents with respect to the maintenance of the medical equipment in proper working order, including the AED and oxygen tanks.

In his factual allegations, Plaintiff stated:

177.    Once Jones was dragged onto the cell floor, Defendant, Goetterman, began chest compressions and manual ventilation after the oxygen tank, upon information and belief, was empty and/or defective, in violation on [sic] Defendant, Corizon's, Contract with Defendant, Kent County.

180.    When AED was attempted, "no shock was advised," the machine was on "low battery" and it powered off.

**(ECF No.1, PageID. 31-32)(Ex.  2)(Ex. 19)**

NCCHC Standard, J-D-03, Clinic Space, Equipment and Supplies, states that: "[s]ufficient and suitable space, supplies, and equipment are available for the facility's medical, dental and mental health services." **(Ex. 20)**  The compliance indicator for the standard further explains: "[t]he facility has, at a minimum  . . . n. oxygen, o. automated external defibrillator . . ." *Id.*

Plaintiff agrees, generally, that negligence occurring in the course of a patient-professional relationship sounds in medical malpractice only.  However, the Michigan Supreme Court in *Bryant v. Oakpointe Villa Nursing Ctr.,* 471 Mich. 411, 684 N.W.2d 864 (Mich. 2004), promulgated a two-part test for distinguishing between ordinary negligence and medical malpractice claims.  A court must analyze: 1) whether the claim pertains to an action that occurred within the course of a professional relationship, and 2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience.  If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions. *Bryant*, 471 Mich. 411, 422, 684 N.W.2d 864 (Mich. 2004).

Thus, both questions must be answered in the affirmative in order for the claim to sound in malpractice claim only. It is not enough that a professional relationship was involved. "The fact that an employee of a licensed health care facility was engaging in medical care at the time the alleged negligence occurred means that the plaintiffs claim may possibly sound in medical malpractice; it does not mean that the plaintiffs claim certainly sounds in medical malpractice." *Id.* at 421.

In *Trowell v. Providence Hosp. & Med. Centers, Inc.,* 316 Mich. App. 680, 697, 893 N.W.2d 112 (Mich. 2016), with respect to the transferring of a patient, the court noted that "medical judgment, knowledge, and expertise could certainly play an integral role in determining whether one person or two persons should assist a patient in walking or moving." It also noted, "[h]owever, we can also envision a situation in which the determination regarding whether it was negligent to employ just one worker to assist a patient can be made by a jury on the basis of the jurors' common knowledge and experience." 316 Mich. App. at 698. The court further stated:

> We recognize that in certain cases it may be necessary to
> consider matters that implicate medical judgment in conjunction
> with matters that do not implicate medical judgment relative to
> evaluating whether negligence occurred in moving or handling
> a patient, which would effectively make the case a medical malpractice
> action. However, in other cases, factors not requiring or implicating
> medical judgment may be fully sufficient in and of themselves to
> properly assess the reasonableness of conduct; such factors fall within
> the realm of common knowledge and experience. Absent documentary
> evidence and illumination from the complaint, we simply cannot ascertain
> whether the instant case is such a case or whether medical expertise and
> judgment must be contemplated relative to the question of the number
> of aides or nurses that should have been employed to safely assist
> plaintiff. The allegations in the complaint alone were inadequate to serve
> as a basis to summarily dismiss plaintiff's action, and plaintiff was not
> obligated to submit documentary evidence when the hospital chose not
> to do so in support of its motion for summary disposition.

*Id.* at 698-699 (citations omitted).

The critical issue is whether an ordinary layperson "lacks knowledge regarding the appropriate methods and techniques for performing the duties at the core of the negligence claim." *Wiley v. Henry Ford Cottage Hosp.*, 257 Mich. App. 488, 510, 668 N.W.2d 402 (Mich. 2003). In accepting as true, the allegations in Plaintiff's Complaint, reasonable jurors, using their ordinary experience and knowledge, could find that the Corizon's Defendants' failure to ensure that its medical infirmary was properly equipped with: 1) oxygen tanks that were full and/or operable, and/or 2) an AED machine that was regularly charged and tested, amounted to ordinary and/or gross negligence.

No expert testimony is necessary to determine whether the Corizon Defendants should have maintained the medical equipment and supplies in the infirmary. Plaintiff, at the very least, should be afforded the opportunity, like the plaintiffs in *Bryant* and *Trowell* , to conduct discovery, as outlined in Plaintiff's Counsel's Declaration. **(Ex. 2)** Accordingly, Plaintiff requests this Honorable Court to deny the Corizon Defendants' Motion to Dismiss.

## III. PLAINTIFF HAS PLEAD SUFFICIENT FACTUAL ALLEGATIONS, IF TAKEN AS TRUE, THAT SUPPORT A PLAUSIBLE CLAIM FOR RELIEF FOR DAMAGES AGAINST DEFENDANT, TERI BYRNE, R.N., FOR VIOLATION OF WADE JONES' EIGHTH AND FOURTEENTH AMENDMENT RIGHTS.

It is well established that the Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527, 104 S.Ct. 3194, 82 L.Ed. 2d 393(1984)). To state a claim for deprivation of medical care under the Cruel and Unusual Punishment Clause, the plaintiff must state facts that satisfy both an objective and a subjective test.

16

*Farmer* at 834. The objective component requires a showing that the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *Id.* The conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Id.* The Sixth Circuit has held that "a medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004).

To satisfy the subjective component, the plaintiff must show that the official acted with a sufficiently culpable state of mind; that is, that the conduct was "wanton." *Wilson v. Seiter*, 501 U.S. 294, 301, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Estelle v. Gamble*, 429 U.S. 97, 104-06, 97 S.Ct. 285, 50 L.Ed.2d (1976). While the standard is more than mere negligence, the official need not have the intent to punish or harm. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed. 2d 251 (1976). A prison official "may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. "[A] prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering." *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)).

With respect to the Corizon Defendants and Defendant, Teri Byrne, R.N., "[a] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to

17

the prisoner's serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 702 (6ᵗʰ Cir. 2001) (citing *Estelle*, 429 U.S. at 104).

The Sixth Circuit "'distinguish[es] between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment,' such that where medical care is merely inadequate, this Court is 'generally reluctant to second guess medical judgments.'" *Id*. at 939 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6ᵗʰ Cir. 2011) ). "Nevertheless, treatment may be constitutionally impermissible when it is so woefully inadequate as to amount to no treatment at all." *Id*. (internal marks omitted). "Even relatively short periods of delay or neglect have sufficed." *Darrah v. Krisher*, 865 F.3d 361, 368 (6ᵗʰ Cir. 2017). "It is insufficient for a doctor caring for inmates to simply provide some treatment for the inmates' medical needs; rather, 'the doctor must provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm.' " *Richmond v. Huq*, 885 F.3d 928 (6ᵗʰ Cir. 2018).

Failure by a jail medical staff to adhere to a prescribed course of treatment may satisfy the subjective component of an Eighth Amendment violation. *Richmond,* at 939. Specifically, the Sixth Circuit has held: "a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering." *Id.* (quoting *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6ᵗʰ Cir. 1991)).

Here, the Corizon Defendants argue that no factual development by Plaintiff could ever support a claim to relief for damages against Defendant, Teri Byrne, R.N., under the Eighth Amendment for deliberate indifference to Jones' serious medical needs. This argument is simply untrue.

First, the Corizon Defendants have created a factual question that respectfully precludes this Court from dismissing Plaintiff's claim against Defendant, Byrne, and the Corizon Defendants. Attached to their Brief in Support of their Motion to Dismiss, Exhibit A, are purportedly the Medical and Mental Health Screening Forms completed by Defendant Byrne in Central Booking on April 24, 2018. **(ECF No. 29-1, PageID. 265-269)** Plaintiff contests the authenticity and completeness of the Exhibit A. In fact, attached as **Exhibit 3** to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss, are copies of the same documents that Plaintiff received in response to a Freedom of Information Act request to the Defendant, Kent County. **(Ex. 2)** A comparison of the two versions of the documents allegedly prepared by Defendant, Byrne, are inconsistent, at the very least.

On the Mental Health Screening Form, attached to the Corizon Defendants' Brief, the following questions and answers are redacted:

> 2. Are you currently drunk or high? (If yes, state details.)
>
> 4a. Do you currently use alcohol? (If yes, state details.)
>
> 4b. Do you have any alcohol withdrawal concerns?
>
> 5. Have you ever had alcohol or drug withdrawal? (If yes, state details Like type of substance, amount of daily consumption, mode, last use, & withdrawal symptoms experienced such as seizures or hallucinations.)

**(ECF No. 29-1, PageID. 265-269); (Ex. 3)**

Also, on the Corizon Defendants' version of both the Mental Health and the Medical Screening Forms, the "comments" and "treatment plan" notes are redacted. *Id.* In the unredacted versions, the notes state: "NBI. NO MENTAL HEALTH CONCERNS. NO ALERTS. NO CHART MADE." **(Ex. 3)** Neither version of the forms is signed by Defendant, Byrne, but they are dated April 26, 2018; two days after she allegedly conducted the screening evaluations.

While the Corizon Defendants, in their motion, acknowledge Jones' purported answers to the questions that were redacted from their Exhibit A, Plaintiff has legitimate questions as to whether either version of the screening forms are the original forms that were allegedly completed by Defendant, Byrne, on April 24, 2018.

For example, in the redacted version attached by the Corizon Defendants, what did Defendant, Byrne, originally enter on the forms? What was redacted? Is it different from the version attached a Plaintiff's Exhibit 3? Did Defendant, Byrne, add in information in the comment sections, or in the "drop downs" for the pertinent questions regarding alcohol use and withdrawal? Were these documents revised on April 26, 2018; the date that is on both versions of the screening forms? Plaintiff states that these forms are critical to the subjective knowledge of not only Defendant, Byrne, but all of the Defendants. Only a forensic computer audit will be able to uncover whether the documents attached to either brief are authentic, whether the forms were revised, altered or edited, by whom, and when.

Second, again, the Corizon Defendants maintain that due to alcohol intoxication, Jones had an impaired ability to function on April 24, 2018, and this impaired ability to function on April 24, 2018, was 50% or more the cause of the event, alcohol withdrawal syndrome and/or delirium tremens, that resulted in his death.

Defendant, Byrne, registered nurse, is trained in screening incoming inmates for drug and alcohol addiction issues, including the signs and symptoms of alcohol withdrawal, in accordance with NCCHC standards. She is the first line of defense for all Defendants. *See,* Correctional Health Care Services Agreement, Sec. B.2.a, 2/27/14. **(ECF No.1-3, PageID. 73)** With respect to intake screening, NCCHC Standard J-E-02 states that it is "essential" that a "receiving screening is performed on all inmates upon arrival at the intake facility to ensure that emergent and urgent

health needs are met" and that "persons who are severely intoxicated, exhibiting signs of alcohol or drug withdrawal, or otherwise urgently in need of medical attention are referred immediately for care and medical clearance into the facility."[4]

Did Defendant, Byrne, ask Jones why he was serving a 5-day sentence for a third-degree retail fraud misdemeanor? Did Defendant, Byrne, have subjective knowledge that Jones was sentenced immediately to jail because of his PBT results? Did Defendant, Byrne, discuss Jones' condition with the "receiving" intake screening person with the initials "N.H."? What does the video footage reveal with respect to the screening process, including the alleged dental examination? **(Ex. 2).** Other that the intake screening, did Defendant, Byrne, have any other interaction with Jones? Did she discuss Jones' screening with any co-Defendants?

The Sixth Circuit has recognized that a "medical professional's failure to perform any of the tests that would be routinely conducted under similar circumstances rises above the level of simple negligence and can support a finding of deliberate indifference." *Tate v. Coffee County*, 48 Fed. Appx. 176, 180 (6th Cir. Oct. 4, 2002) (unpublished); see *Comstock v. McCrary*, 273 F.3d 693, 711 (6th Cir. 2001) (finding that a doctor's conduct could amount to deliberate indifference where the doctor did not review an inmate's records and failed to follow departmental policy on the medical problem at issue); *Cook v. Martin*, 148 Fed. Appx. 327, 337-38 (6th Cir. July 25, 2005) (unpublished) (holding a nurse liable for failure to complete an initial medical screening and completion of cursory examinations of an inmate were sufficient to support a deliberate indifference claim.)

---

[4] A standard is classified as either "essential" or "important." STANDARDS FOR HEALTH SERVICES IN JAILS, NATIONAL COMMISSION ON CORRECTIONAL HEALTH CARE (2018 ED) **(Ex. 20)**

Plaintiff has plead with specificity a plausible cause of action for violation of Plaintiff's decedent's constitutional right against Defendant, Teri Byrne, R.N. based upon her deliberate indifference to his serious medical needs.

Plaintiff requests This Honorable Court deny the Corizon Defendants' Motion to Dismiss the claims against Defendant, Teri Byrne, R.N., for the reasons stated above.

## III.   PLAINTIFF HAS PLEAD SUFFICIENT FACTUAL ALLEGATIONS, IF TAKEN AS TRUE, THAT SUPPORT A PLAUSIBLE CLAIM FOR RELIEF FOR DAMAGES, AGAINST DEFENDANT, CORIZON HEALTH, INC., FOR VIOLATION OF WADE JONES' EIGHTH AND FOURTEENT AMENDMENT RIGHTS (*MONELL* CLAIM).

Like a municipality, a private corporation, may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *L.A. County v. Humphries*, 562 U.S. 29, 38-39, 131 S.Ct. 447, 178 L. Ed.2d 460 (2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne County,* 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-09.

Plaintiff's 42 U.S.C. §1983 claims against Defendant, Corizon Health, Inc., are divided into essentially two categories: 1) failure to screen, train and supervise it employees, and, 2) inadequate customs, policies, practices and procedures.

To argue that Plaintiff's Complaint is devoid of *Monell* allegations and contains "a shot gun list of twenty-two "policies" in conclusory fashion without specifically expressing where the

policy was derived, nor how each policy is 'closely related to the ultimate injury,'" is simply untrue. **(ECF No 29, Page ID.260)**

Admittedly, Plaintiff is not in possession of Defendant, Corizon Health, Inc.'s Policy and Procedure Manual for the KCCF. However, based upon his 21-month investigation, Plaintiff plead specific policies and standards, for which *Defendant agreed to be bound*, and causally connected the violations of the specific policies and standards to Plaintiff's injuries and damages. Plaintiff avers that he has satisfied the pleading requirements for a *Monell* Claim pursuant to FED. R. CIV. P. 12(b)(6).

To succeed on a failure to screen, train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's or corporation's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citation omitted).

It is insufficient for Plaintiff to show that a *single* employee was unsatisfactorily trained; that an otherwise sound training program was administered negligently; or that better or more training could have equipped the offending official to avoid his or her particular injury-causing conduct, thereby sparing Plaintiff's decedent's injury. *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 738 (6th Cir. 2015)

Rather, Plaintiff must show that: (1) Defendant, Corizon Health, Inc., adhered to its training even though it knew or should have known that the training failed to prevent a pattern of similar constitutional violations, or that (2) Defendant, Corizon Health, Inc., failed to train its employees, and the corrections officers, to handle a narrow class of recurring situations, i.e. alcohol or drug withdrawals, that presented an obvious potential for constitutional violations. *Id.* at 738-39 (*see*

23

*also, Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011), *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).

Here, Plaintiff has sufficiently plead that Defendant, Corizon Health, Inc., unsatisfactorily staffed and trained its workforce, and failed to properly train Co-Defendants, in the identification of alcohol withdrawal syndrome and/or delirium tremens, and the serious, life-threatening risks of the conditions if undetected and untreated.

Likewise, Plaintiff maintains that while Defendant, Corizon Health, Inc., had written policies and procedures, they were so woefully and routinely ignored that it became the "officially executed policy", or toleration of a custom or *de facto* policy, resulting in a constitutional deprivation to Jones, i.e. deliberate indifference to his serious medical needs. *Doe v. Claiborne,* 103 F.3d 495, 507 (6th Cir. 1996).

As alleged in Plaintiff's Complaint, and supported by the Exhibits, at the time of the Jones' death, the Corizon Defendants enjoyed a $5,500,000.00 annual contract (the "Contract") to provide medical services to Kent County inmates. **(ECF No. 1-2, PageID. 61)** The Contract required Corizon to adhere to all standards set forth by the National Commission on Correctional Health Care (NCCHC). **(ECF No. 1-3, PageID. 72)** Again, Defendant agreed to be bound by the NCCHC standards: "Corizon *shall* provide Services in accordance with this Agreement, the NCCHC standards for jails . . ." *Id.* (emphasis added)

In exchange for the $5,500,000.00 annual fee, Defendant, Corizon Health, Inc., agreed to staff the KCCF with licensed, certified, and trained medical personnel, at a certain number for each level of licensure or certification. Further, it agreed, at a minimum, to provide continuing health care professional education and training to its medical staff that "shall be documented though a

list of completed courses, date of completion, and number of hours per course." **(ECF No. 1-3, PageID. 76)**

      With respect to the correctional staff, Defendant, Corizon Health, Inc. agreed to:

> "make available 12 hours of educational classes annually per officer that will include recognition of the need for emergency medical care; acute manifestations of chronic illness, intoxication and withdrawal; adverse reactions to medication; mental illness; retardation; emotional disturbances; signs and symptoms of child abuse at the Juvenile Detention Center only. "

*Id.*

      NCCHC standard, J-C-O4, required that Defendant, Corizon Health, maintain and keep on site, for each correctional officer, an outline of training, including the course and its content and length, and a certificate or other evidence of completion. **(Ex. 20)**    NCCHC standard, J-C-04, Health Training for Correctional Officer, states that it is "essential" that correctional officers are trained to recognize the need to refer an inmate to a qualified health professional. *Id.*

      In addition to the training above, NCCHC standards required training, approved and administered by Defendant, Corizon Health, Inc., for medical and corrections staff in the following areas: Medication Administration and Training, Standard J-C-05, and Patient Safety, Standard J-B-08. *Id.* NCCHC Standard, J-E-02, Receiving Screening, states that it is "essential" that: [w]hen health-trained correctional perform the receiving screening they have documented training by the responsible physician or designee in early recognition of medical, dental, and mental health conditions requiring clinical attention." *Id.*

      NCCHC Standard, J-F-04, Medically Supervised Withdrawal and Treatment, states that it is "essential" that "inmates that are intoxicated or undergoing withdrawal are appropriately managed and supervised." *Id.* The NCCHC required that "all aspects of the standard are addressed by written policy and defined procedures" that are "approved by the responsible physician annually

and are consistent with nationally accepted treatment guidelines." *Îd.* Importantly, the standard states that: **"[i]nmates experiencing severe or progressive . . .alcohol withdrawal are transferred immediately to a licensed acute care facility**." *Id.* (emphasis added)

Plaintiff specifically alleged in his Complaint that both the Corizon Defendants and the Kent County Defendants were improperly screened, trained and supervised, with respect to identifying and treating the acute manifestations of alcohol withdrawal syndrome and/or delirium tremens. Paragraph 229 (a) through (v) of Complaint outlined the particular custom, policy, practice or procedure, Defendant's violation of the particular custom, policy, practice or procedure, and the connection between the violation and Jones' injuries and death.

Plaintiff is entitled to discovery with respect to Defendant, Corizon Health, Inc.'s, written policies and procedures, its training outlines, document retention of training courses, compliance with the NCCHC requirements, and the record of each individual Defendants' actual training received. **(Ex. 2)**

## **RELIEF REQUESTED**

Based upon the foregoing, Plaintiff, Charles Jones, as Personal Representative of the Estate of Wade Jones, deceased, respectfully requests this Honorable Court Deny Defendants, Corizon Health, Inc., Teri Byrne, R.N., Janice Steimel, L.P.N., Joanne Sherwood, N.P., Melissa Furnace, R.N., Dan Card, L.P.N., Chad Richard Goetterman, R.N., James August Mollo, L.P.N., Angela Navarro, R.N., and Lynn Fielstra, L.P.N.'s Motion to Dismiss Plaintiff's Complaint Pursuant to FED. R. CIV. P. 12(b)(6).

Respectfully submitted,

/s/ Jennifer G. Damico
Jennifer G. Damico (P51403)
Buckfire Law Firm
29000 Inkster Road, Suite 150
Southfield, MI 48034
(248) 569-4646
jennifer@buckfirelaw.com

April 23, 2020