UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES JONES, as Personal Representative
of the Estate of WADE JONES, deceased,

        Plaintiff,

    v.

CORIZON HEALTH, INC., *et al.,*

        Defendants.

Case No.: 1:20-cv-00036
Hon. Judge Hala Y. Jarbou
Mag. Judge Sally J. Berens

_____/

| BUCKFIRE LAW FIRM | CHAPMAN LAW GROUP |
|---|---|
| Jennifer G. Damico (P51403) | Ronald W. Chapman Sr., M.P.A., |
| Attorney for Plaintiff | LL.M. (P37603) |
| 29000 Inkster Road, Suite 150 | Devlin Scarber (P64532) |
| Southfield, MI 48034 | Attorney for Defendants, |
| Direct (248) 234-9828 | 1441 West Long Lake Rd., Suite 310 |
| (248) 569-4646 | Troy, MI 48098 |
| (248) 569-6737 (fax) | (248) 644-6326 |
| Jennifer@buckfirelaw.com | rchapman@chapmanlawgroup.com |
| | dscarber@chapmanlawgroup.com |

_____/

## **PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANTS' EXPERT WITNESS, KIMBERLY PEARSON, MHA, MBA, RN, CCHP**

Pursuant to the Federal Rule of Evidence 702 and M.C. L. §600.2169(1) Plaintiff, Charles Jones, as Personal Representative of the Estate of Wade Jones, moves this Honorable Court to enter an Order excluding the testimony of Defendants' expert witness, Kimberly Pearson, MHA, MBA, RN, CCHP. This Motion is supported by the attached Brief and the Exhibits thereto.

Plaintiff conferred with opposing counsel regarding the grounds for this Motion pursuant to Local Rule 7.1(a). Plaintiff sought, but did not obtain, Defendants' concurrence.

Respectfully Submitted,

BUCKFIRE LAW FIRM

By:     /s/  Jennifer G. Damico
        JENNIFER G. DAMICO (P51403)
        Attorney for Plaintiff
        29000 Inkster Road, Suite 150
        Southfield, MI  48034
        Direct (248) 234-9828
        (248) 569-4646
        (248) 569-6737 (fax)
        jennifer@buckfirelaw.com

Date:  June 24, 2022

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES JONES, as Personal Representative
of the Estate of WADE JONES, deceased,

        Plaintiff,                  Case No.: 1:20-cv-00036

  v.                           Hon. Judge Hala Y. Jarbou

                                 Mag. Judge Sally J. Berens

CORIZON HEALTH, INC., *et al.,*

        Defendants.

_____/

| BUCKFIRE LAW FIRM | CHAPMAN LAW GROUP |
|---|---|
| Jennifer G. Damico (P51403) | Ronald W. Chapman Sr., M.P.A., |
| Attorney for Plaintiff | LL.M. (P37603) |
| 29000 Inkster Road, Suite 150 | Devlin Scarber (P64532) |
| Southfield, MI  48034 | Attorney for Defendants, |
| Direct (248) 234-9828 | 1441 West Long Lake Rd., Suite 310 |
| (248) 569-4646 | Troy, MI 48098 |
| (248) 569-6737 (fax) | (248) 644-6326 |
| Jennifer@buckfirelaw.com | rchapman@chapmanlawgroup.com |
| | dscarber@chapmanlawgroup.com |

_____/

**<ins>BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE THE
TESTIMONY OF DEFENDANTS' EXPERT WITNESS, KIMBERLY
PEARSON, MHA, MBA, RN, CCHP</ins>**

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES……………………………………………………  ii,iii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES……………  iv

ISSUE PRESENTED……………………………………………………………  v

I.     INTRODUCTION…………………………………………………...  1

II.    STATEMENT OF FACTS…………………………………………  2

III.   LEGAL ARGUMENT……………………………………………… 3

       A.    THE COURT'S GATEKEEPING FUNCTION UNDER
             M.R.E. 702 AND M.C.L. §600.2169(1)………………………... 3

       B.    KIMBERLY PEARSON DOES NOT MEET THE
             REQUIREMENTS TO PROVIDE STANDARD OF CARE
             TESTIMONY IN DEFENSE OF MEDICAL MALPRACTICE
             CLAIMS, AND THEREFORE, HER TESTIMONY SHOULD
             BE EXCLUDED…………………………………………………... 5

IV.    CONCLUSION……………………………………………………13

LIST OF EXHIBITS…………………………………………………….. vii

## INDEX OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994)……………… 3,iv

*Cox v. Hartman*, 322 Mich. App. 292, 911 N.W. 2d 219 (2017)………….. 5,6,12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,
113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). ……………………………….. 3,iv

*Decker v Flood*, 248 Mich. App. 75, 81-82; 638 N.W.2d 163 (2001)…….. 4

*Elher v. Misra,* 499 Mich. 11, 21, 878 N.W.2d 790 (2016)……………….. 3

*Gay v. Select Specialty Hosp.*, 295 Mich. App. 292,
813 N.W.2d 354 (2012)…………………………………………………… 5,6,7,10,12

*Grossman v, Brown*, 470 Mich. 593, 599, 685 N.W.2d 198 (2004)……… 5

*Jones v. Botsford Continuing Care Corp.*, 310 Mich. App. 192, 200,
871 N.W.2d 15 (2015)……………………………………………………… 5

*Kiefer v. Marley,* 283 Mich. App. 555, 559, 769 N.W.2d 271 (2009)…… 5,6,12

*Nelson v. Tenn Gas Pipeline Co*., 243 F. 3d. 244, 251 (6th Cir. 2001)……5,7

*R.C. Olmstead v. C.U. Interfact, LLC.,* 606 F.3d 262, 271
(6th Cir. 2010)……………………………………………………………. 3,iv

**<u>Other Authorities</u>**

Federal Evidence Rule 702………………………………………………… i,iv,3

Federal Rule of Civil Procedure 26(a)(2)(A)……………………………….. 2

Federal Rule of Civil Procedure 26(a)(2)(B)……………………………….. 2,8,14

M.C.L. §600.2169(1)……………………………………………………….. iv,3,4,5,14

Michigan Rule of Evidence 702………..………………………………… 3

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

Federal Rule of Evidence 702, which states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Plaintiff further submits that *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) and *R.C. Olmstead v. C.U. Interfact, LLC.,* 606 F.3d 262, 271 (6th Cir. 2010) are the most appropriate controlling cases in the Sixth Circuit regarding the admissibility of expert testimony and expert reports.

With respect to Defendants' expert's opinions regarding state law medical malpractice defenses, Plaintiff submits that MCL §600.2169(1) is the controlling or most appropriate authority.

## <u>ISSUE PRESENTED</u>

1. SHOULD KIMBERLY PEARSON BE PRECLUDED FROM PROVIDING STANDARD OF CARE TESTIMONY IN DEFENSE OF PLAINTIFF'S MEDICAL MALPRACTICE CLAIMS BECAUSE SHE DOES NOT MEET THE STATUTORY REQUIREMENTS?

   PLAINTIFF ANSWERS:    YES

   DEFENDANTS ANSWER: NO

## <u>LIST OF EXHIBITS</u>

EXHIBIT 1          Kimberly Pearson's C.V.

EXHIBIT 2          Defendants' Rule 26(a)(2)(A) Expert Disclosures

EXHIBIT 3          Pearson's Rule 26(a)(2)(B) Report

EXHIBIT 4          Pearson Dep. Tr., *Jones v. Corizon*

EXHIBIT 5          Pearson Dep. Tr., *Pajas v. County of Monterey*

EXHIBIT 6          Pearson Dep. Tr., *Parks v. Sebastian County, Arkansas*

EXHIBIT 7          Pearson's Rule 26(a)(2)(B) Report, *Waddell v. County of Genesee, et al.*

EXHIBIT 8          Pearson Dep. Tr., *McGee v. Macon County Sheriff's Department*

EXHIBIT 9          K.P. Consulting, LLC Advertising

## I.    INTRODUCTION

Plaintiff's decedent, Wade Jones (Jones), died from complications of acute alcohol withdrawal syndrome while serving a 5-day sentence at the Kent County Correctional Facility (jail) in April of 2018 (ECF No. 147, PageID. 3179). It is uncontested Jones alcohol withdrawal deteriorated into the serious condition of delirium tremens and that he suffered a cardiac arrest while in the jail infirmary on the morning of April 27, 2018. He never regained consciousness, was determined to have brain functioning incompatible with life, and died on May 4, 2018.

The remaining claims against the Defendants are:

Medical malpractice – against Defendants Corizon Health, Inc., Teri Byrne, RN, Janice Steimel, LPN, James August Mollo, LPN, Melissa Furnace, RN, Lynne Fielstra, LPN, Daniel Card, LPN, and Joanne Sherwood, NP; and

42 U.S.C. §1983, Deliberate Indifference to Serious Medical Needs – against Defendants, James August Mollo, LPN, Melissa Furnace, RN,   Lynne Fielstra, LPN, Daniel Card, LPN, Joanne Sherwood, NP, and Chad Richard Goetterman, RN.

(ECF No. 148, PageID. 3252).

## II.   STATEMENT OF FACTS[1]

In support of their defenses to medical malpractice, Defendants retained expert witness, Kimberly Pearson, MHA, MBA, RN, CCHP,[2] to provide testimony "regarding the standard of care of a licensed registered nurse and a licensed practical nurse in support of the Defendants" in their treatment of Jones.[3]   Pearson is also offered as an expert in correctional practices and procedures.   In this motion, Plaintiff's challenge is limited to Pearson's qualifications to testify as a standard of care expert.

Ms. Pearson is not qualified to provide standard of care testimony because she did not spend a majority of her professional time in active clinical practice in the 12 months prior to the incident. Accordingly, Kimberly Pearson should be precluded from providing standard of care testimony in defense of Plaintiff's medical malpractice claims, and any reference to "standard of care" should be stricken from her Rule 26(a)(2)(B) Report.

---

[1] Plaintiff incorporates by reference the facts from his Brief in Response to Defendants' Motion for Summary Judgment.  (ECF No. 136, PageID. 2779-2813).

[2] "MHA" is Master of Science in Health Care Administration, "MBA" is Master of Business Administration, "RN" is Registered Nurse and "CCHP" is Certified Correctional Health Professional. (Exhibit 1, Pearson's C.V.).

[3] *See* Exhibit 2, Defendants' Rule 26(a)(2)(A) Disclosures; Exhibit 3, Pearson's Rule 26(a)(2)(B) Report; and Exhibit 4, Deposition of Kimberly Pearson, 11.

## III.   LEGAL ARGUMENT

### A.   THE COURT'S GATEKEEPING FUNCTION UNDER F.R.E. 702 AND M.C.L. §600.2169(1).

Federal Rule of Evidence 702 requires the Court to exercise its gatekeeping function regarding whether an expert's testimony is reliable – i.e., based on sufficient facts or data, the product of reliable principles and methods, and that the witness has applied the principles reliably to the facts of the case. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994); *R.C. Olmstead v. C.U. Interfact, LLC.* 606 F.3d 262, 271 (6th Cir. 2010).

However, before the court analyzes the substance of the proffered witness's testimony, it must determine whether the witness qualifies as an expert.

"In a medical malpractice case, expert testimony must satisfy the court that expert is qualified under M.R.E. 702 and M.C.L. §600.2169(1)." *Elher v. Misra,* 499 Mich. 11, 21, 878 N.W.2d 790 (2016).

M.C.L. §600.2169(1) provides that a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom

3

or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

(b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

> (i) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

> (ii) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

(c)     If the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

> (i) Active clinical practice as a general practitioner.

> (ii) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed.

M.C.L. §600.2169(1); see *Decker v Flood*, 248 Mich. App. 75, 81-82; 638 N.W.2d 163 (2001).

"[T]he party proposing to call an expert bears the burden to show that his or her expert meets [the requisite statutory] qualifications." *Cox v. Hartman*, 322 Mich. App. 292, 300, 911 N.W.2d 219, 224 (2017) (*quoting Gay v. Select Specialty Hosp.*, 295 Mich. App. 284, 292, 813 N.W.2d 354, 358 (2012)); *Nelson v. Tenn Gas Pipeline Co.*, 243 F. 3d. 244, 251 (6th Cir. 2001) ("It is the proponent of the testimony that must establish its admissibility by a preponderance of proof.").

Importantly, the law is well-established that a witness *shall* not give expert testimony unless the expert meets the criteria in MCL§600.2169(1). *Grossman v, Brown*, 470 Mich. 593, 599, 685 N.W.2d 198 (2004), *Jones v. Botsford Continuing Care Corp.*, 310 Mich. App. 192, 200, 871 N.W.2d 15 (2015).[4]

### B. KIMBERLY PEARSON, MHA, MBA, RN, CCHP, DID NOT DEVOTE A MAJORITY OF HER TIME TO THE ACTIVE CLINICAL PRACTICE OF NURSING IN THE YEAR PRIOR TO THE OCCURRENCE.

Respectfully, prior to permitting Ms. Pearson to opine as to whether the individual Defendants' actions satisfied the standard of care, the Court must decide if she devoted **more than 50%** of her professional time to the active clinical practice

---

[4] MCL §600.2169(1)(a) applies to "specialists" while section 2169(2)(b) applies all health professional including nurses. *Jones*, 210 Mich. App. 192 at 198.

of nursing from April 24, 2017, through April 24, 2018.[5] ("A majority means more than 50%.") *Cox,* 322 Mich. App. 292, 301 (citing *Kiefer v. Marley,* 283 Mich. App. 555, 559; 769 N.W.2d 271 (2009)).

"Active clinical practice" is not defined in the statute.  The Michigan Court of Appeals defined the phrase in *Gay v. Select Specialty Hosp.,* 295 Mich. App. 284, 813 N.W.2d 254 (2012). It defined "clinical" to mean "pertaining to a clinic" or "concerned with or based on actual observation and treatment of disease in patients rather than experimentation or theory" and "practice" to mean "to pursue a profession, [especially] law or medicine." 295 Mich. App at 295.  The court did not impose a requirement that a medical professional must physically directly interact with patients in order satisfy the "active" component. *Id.* at 295-296.

The *Gay* Court stated: "in the case of a medical professional, in order to be engaged in an active clinical practice, <u>the professional's practice must involve practice in a clinical setting, which usually means where patients are treated</u>."  295 Mich. App. 284, 295-296. (Emphasis added). In explaining the intent, the court noted that "[i]n imposing professional time requirements on expert witnesses, the Legislature intended to address a perceived problem with full-time professional

---

[5] Ms. Pearson testified that she has not held a teaching position at an accredited facility since 2005. (Exhibit 4, Pearson Tr., 15-16).

witnesses who would ostensibly testify to whatever someone paid them to testify about." *Id.* at 296.

In *Gay,* the lower court ruled that the plaintiff's proposed nursing expert was not qualified to provide standard of care testimony because in the year prior to the malpractice, she was not engaged in active clinical practice. *Id.* at 293-294. After delving into her deposition testimony, the Michigan Court of Appeals reversed the lower court's decision because the witness testified that 25% of her professional time was spent orienting nurses, and 50% of her time was spent teaching for an accredited residency program. *Id.* The Michigan Court of Appeals considered the 25% that she spent in orienting nurses as active clinical practice. *Id.* at 295.

Plaintiff submits that Ms. Pearson was not actively pursuing nor practicing the profession of nursing for a majority of her time in the 12 months prior to the occurrence.

In addition to a nursing degree and license, Ms. Pearson has dual-master's degrees in business administration and heath care administration; both of which she obtained after her nursing degree. (Exhibit 1, Pearson's C.V.).

Ms. Pearson was employed as the Deputy Agency Director (Deputy AD) for the Orange County (California) Healthcare Agency from 2013 through February 2, 2018. She served as a high-level executive in an oversight and administrative role for 10 of the 12 relevant months, while concurrently employed as a professional

consultant and expert witness for the entire 12- month period. *Id.* (Exhibit 3, Pearson Rule 26(a)(2)(B) Report).

From February 3, 2018, through April 4, 2018, Ms. Pearson devoted 100% of her time to her private consulting practice, KP Consulting, LLC, and *none of her professional* time was spent in a clinical setting.[6] Therefore, for at least 2 of the 12 critical months, Ms. Pearson was not in active clinical practice.

For the remaining pertinent period, April 24, 2017, through February 2, 2018, Ms. Pearson testified in the instant case that her duties as the Deputy AD were to oversee and supervise all the clinical operations in the County jails composed 10 facilities. (Exhibit 4, Pearson Tr., 11-13). She maintained an office at the healthcare agency and one at the main jail complex. *Id.* at 13. When asked how much of her professional time was devoted to active clinical practice, Ms. Pearson testified:

---

[6] On February 26, 2018, Pearson was deposed as an expert witness in *Pajas v. County of Monterey*. She testified that she was no longer employed with Orange County as of February 2, 2018, and was solely employed by her own consulting practice. *Pajas v. County of Monterey*, Case No.: 16-CV-00945 (N.D. Cal.) (Exhibit 5, 20). On March 19, 2018, Pearson testified as an expert witness in *Parks v. Sebastian County, Arkansas,* Case No.: 2:17-cv-2047 (W.D. Ark.). At that time, she was solely working as a healthcare consultant and an expert witness. (Exhibit 6, 8-9). On April 4, 2018, Pearson draft a Rule 26(a)(2)(B) Report in *Waddell v. County of Genesee*, Case No.: 2:16-cv-14078 (E.D. Mich.). For her current occupation, Pearson wrote: "I provide consultation and reviews for detention facilities as both a program consultant and as an expert witness of correctional healthcare cases." (Exhibit 7, 1-2).

"Well, I – 75 percent of my time involves clinical issues, direct clinical issues with patients and clinical care." *Id.* at 14.

Upon further examination, Ms. Pearson explained:

> Well, this was oversight and supervision of the staff, so it -- it – I didn't go spend eight hours taking care of patients. I worked with the staff. I provided clinical care when necessary. For instance, if we had a large bus of 50 individuals coming in all at one time, I would help out in the intake area, but clinical issues, meaning working through -- working with the hospital on each inmate who was hospitalized, reviewing their clinical care, making determinations about what we could and could not handle at our jail after hospitalization, dealing with pharmaceutical issues, dealing with all clinical focused operational issues.

*Id.* at 14-15.

Ms. Pearson testified that other than helping in the intake area, she did not consider the above-listed duties administrative, but rather "clinical patient issues." *Id.* at 15. She did not testify how often she would help in the intake area. She further testified that in the year prior to the occurrence, she spent 25% of her time performing what she deemed administrative duties including: "budgetary issues, dealing with HR, working with the board of supervisors." *Id.* at 15.

However, on September 24, 2019, Ms. Pearson testified as an expert witness in *McGee v. Macon County Sheriff's Department*.[7] In *McGee,* Ms. Pearson testified that once she was promoted to Deputy AD in 2013, until she retired from Orange

---

[7] Case No.: 2:16-cv-0221 (C.D. Ill.) (Exhibit 8, 10).

County, in February of 2018, she did not provide *any* direct patient care. (Exhibit 7, 9-10). While direct patient care is not a requirement under *Gay,* Ms. Pearson's contradictory testimony regarding any direct patient care that she provided during the relevant period, is inconclusive, and does not assist Defendants in satisfying their burden of a preponderance of the proof in qualified Ms. Pearson as a standard of care expert.

Moreover, Ms. Pearson testimony on February 26, 2018, in *Pajas v. County of Monterey*, unequivocally demonstrates that she was not engaged in the active clinical practice of nursing, either by interacting with patients, providing patient care, supervising nursing staff, or training or orienting nurses, in a clinical setting, for a majority of her professional time, while she was the Deputy AD.

Ms. Pearson testified:

Q.  Okay.  And what were the scope of your responsibilities generally as the Deputy Agency Director?

A.  I was the Executive over all correctional health programs for Orange County, which involved five adult jails and five juvenile facilities, so all of the healthcare programing staff came under my responsibility.

Q.  And so that included the adult - - the adult jail facilities in Orange County?

A.  Yes.

Q.  Okay.  And when you say the Executive, were you – did you report to anybody?

A.    Yes. I reported to the Director of the Orange County
      Healthcare Agency.

Q.    **I see.  So that was broader than the Correctional Health
      Services**?

A.    **Correct**.

Q.    **As Deputy Agency Director, you were in charge of
      correctional officers; is that fair**?

A.    **Yes**.

Q.    And then you were Chief of Operations prior to that?

A.    Yes.

Q.    And what was the difference in terms of the scope of your
      responsibility and authority?

A.    **So as the Deputy Agency Director, it was - - involved
      more deeply into contracts, contract negotiations,
      dealing with the Board of Supervisors and Community
      Corrections in Sacramento, whereas the Chief of
      Operations was, just as that sounds, more involved in the
      daily operating procedures inside the facilities**.

(Exhibit 5, 21-22) (emphasis added).

This testimony, taken within weeks after she retired from the County, and 6

weeks before Wade Jones's death, further algins with the promotional materials for

her consulting business.  In the "About KP Consulting, LLC" section, it states:

> Her recent role as the Deputy Agency Director for
> Correctional Health Services included executive
> administrative oversight . . . She was responsible for a staff
> of 350+ healthcare professionals from various disciplines
> and managed an annual budget in excess of $71M.  Her

> responsibilities included clinical operational oversight, strategic planning, regulatory compliance, management of legal/risk issues, contract management, and labor relations. She also engaged in inter-agency collaborations, . . . and various State licensing agencies.

(Exhibit 9).

Through this business, Ms. Pearson had various consulting contracts; that is, she was retained to provide expert witness and consulting services. During the applicable period, Ms. Pearson was under contract with three entities: NaphCare, Inc., NCCHC Resources, Inc. and the OIR Group.  (Exhibit 1, Pearson's CV, 3).

Again, the Michigan Court of Appeals in *Gay* was clear: "[i]n order to be engaged in an active clinical practice, the professional's practice must involve practice in a clinical setting, which usually means a setting where patients are being treated." *Gay,* 295 Mich. App. 284, 295-296. (Emphasis added). And a majority means more than 50%.  *Cox v. Hartman,* 322 Mich. App. 292, 301 (citing *Kiefer v. Marley,* 283 Mich. App. 555, 559; 769 N.W.2d 271 (2009)).

Defendants have the burden to prove that Ms. Pearson spent a majority of her professional time: 1) in the active clinical practice of nursing, and 2) in a clinical setting.  They cannot do either.

For 2 out the 12-month period, she was solely working as a legal consultant. This is uncontested. *See,* Footnote 6.  For the remaining 10-month period, in order to qualify Ms. Pearson as a standard of care expert in nursing, the Court must find

that more than 50% of her time was devoted to the practice of nursing, as opposed to acting in her role as a business or health care executive administrator and/or a medical-legal consultant.

Ms. Pearson had two offices, one at the healthcare agency headquarters, and one at the main adult jail. It is unclear where she spent a majority of her time in the year before the occurrence.  When she was at the adult jail, her testimony is inexact as to how much of that time was devoted to being engaged in a clinical setting. While she testified that 75% of her time was dealing with "clinical issues," her own testimony from prior engagements as an expert witness reveals that these "clinical issues" pertained to the oversight and administration of the entire correctional healthcare system for Orange County. She was responsible for 350 healthcare professionals and correctional officers; not merely nursing staff. She negotiated contracts. She managed a $71 million dollar budget.  She was responsible for regulatory compliance, strategic planning, management of legal and risk management, labor relations and intra-agency relationships.  (Exhibit 9).

Plaintiff respectively submits that the evidence is overwhelming clear that Ms. Pearson was a high-level County executive who was not actively pursuing the profession of nursing in the year prior to the occurrence.  She is Defendants' corrections policies and procedures expert, who they are trying to "back door" in as

a medical malpractice expert.  This is precisely the reason the Michigan Legislature inacted M.C.L. §600.2169(1).

## IV.  **CONCLUSION**

Defendants have failed to satisfy their burden that a more than 50% of Kimberly Pearson, MHA, MBA, RN, CCHP's professional time was spent in active clinical practice, and therefore, she should be precluded from testifying in defense of medical malpractice. Any reference to the standard of care and medical malpractice should likewise be stricken from her Rule 26(a)(2)(B) Report.

Respectfully submitted,

BUCKFIRE LAW FIRM

BY:  */s/*  Jennifer G. Damico
JENNIFER G. DAMICO (P51403)
Attorney for Plaintiff
29000 Inkster Road, Suite 150
Southfield, MI 48034
Direct (248) 234-9828
(248) 569-4646
(248) 569-6737 (fax)
jennifer@buckfirelaw.com

Date:  June 30, 2022

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES JONES, as Personal Representative
of the Estate of WADE JONES, deceased,

        Plaintiff,                    Case No.: 1:20-cv-00036

    v.                             Hon. Judge Hala Y. Jarbou

                                    Mag. Judge Sally J. Berens

CORIZON HEALTH, INC., *et al.,*

        Defendants.

_____/

| BUCKFIRE LAW FIRM | CHAPMAN LAW GROUP |
|---|---|
| Jennifer G. Damico (P51403) | Ronald W. Chapman Sr., M.P.A., |
| Attorney for Plaintiff | LL.M. (P37603) |
| 29000 Inkster Road, Suite 150 | Devlin Scarber (P64532) |
| Southfield, MI 48034 | Attorney for Defendants, |
| Direct (248) 234-9828 | 1441 West Long Lake Rd., Suite 310 |
| (248) 569-4646 | Troy, MI 48098 |
| (248) 569-6737 (fax) | (248) 644-6326 |
| Jennifer@buckfirelaw.com | rchapman@chapmanlawgroup.com |
| | dscarber@chapmanlawgroup.com |

_____/

## **WORD COUNT CERTIFICATE OF COMPLIANCE**

In accordance with W.D. Mich. LCivR 7.3(b)(i) and (ii), the undersigned certifies that Plaintiff's Brief in Support of Motion to Exclude Testimony of Defendants' Expert Witness, Kimberly Pearson, MHA, MBA,RN, CCHP, is 3,170 words. The software used to generate the word count is Microsoft® Word for Microsoft 365 MSO (Version 2205 Build 16.0.15225.20172) 64-bit.

**/s/ Jennifer G. Damico**