UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES JONES, as Personal Representative
of the Estate of WADE JONES, deceased,

      Plaintiff,

v.

CORIZON HEALTH, INC., *et al.*,

      Defendants.

Case No.: 1:20-cv-00036
Hon. Judge Hala Y. Jarbou
Mag. Judge Sally J. Berens

_____/

| BUCKFIRE LAW FIRM | CHAPMAN LAW GROUP |
|---|---|
| Jennifer G. Damico (P51403) | Ronald W. Chapman Sr., M.P.A., LL.M. (P37603) |
| Attorney for Plaintiff | Devlin Scarber (P64532) |
| 29000 Inkster Road, Suite 150 | Jeffrey L. Bomber (P85407) |
| Southfield, MI 48034 | Attorney for Defendants, |
| Direct (248) 234-9828 | 1441 West Long Lake Rd., Suite 310 |
| (248) 569-4646 | Troy, MI 48098 |
| (248) 569-6737 (fax) | (248) 644-6326 |
| Jennifer@buckfirelaw.com | rchapman@chapmanlawgroup.com |
| | dscarber@chapmanlawgroup.com |
| | jbomber@chapmanlawgroup.com |

_____/

## **PLAINTIFF'S TRIAL BRIEF**

Plaintiff's decedent, Wade Jones (Jones), died from complications of acute alcohol withdrawal syndrome while serving a five-day sentence at the Kent County Correctional Facility (KCCF) in April of 2018. It is uncontested Jones' alcohol withdrawal visibly deteriorated into the extreme condition of delirium tremens, causing him to suffer cardiac arrest on the morning of April 27, 2018 in the jail

infirmary. Instead of consistently ensuring he was given, and actually ingested, the necessary medication that had been ordered to control his condition, as well as transporting him to the hospital when his symptoms worsened, Defendants acted with deliberate indifference to Jones's needs and/or failed to adhere to the recognized standard of care for someone in his dire situation. Jones never regained consciousness following the morning of April 27th; the resultant brain damage he sustained being incompatible with life. Jones died on May 4, 2018.

Plaintiff's claims that will be presented to the jury for deliberation include the following:

- 42 U.S.C. §1983, Deliberate Indifference to Serious Medical Needs – against Defendants, James August Mollo, LPN, Melissa Furnace, RN, Lynne Fielstra, LPN, Daniel Card, LPN, Joanne Sherwood, NP, and Chad Richard Goetterman, RN [Pf.'s Complaint at Count III]; and

- Medical malpractice – against Defendants Corizon Health, Inc., Teri Byrne, RN, Janice Steimel, LPN, James August Mollo, LPN, Melissa Furnace, RN, Lynne Fielstra, LPN, Daniel Card, LPN, and Joanne Sherwood, NP [*Id.* at Count V].

It is Plaintiff's position that if the jury finds that the Defendants violated Jones's constitutional rights, under the more stringent standard, then they have also found Defendants responsible for professional or medical malpractice.

Likewise, if the jury finds that the Defendants were not professionally negligent, then their conduct cannot rise to the level of deliberate indifference.

### A. Defendants' violation of Jones' constitutionally protected rights under the Eighth Amendment

To prove his claim under 42 U.S.C. §1983, a method for vindicating federal rights, Plaintiff must establish the violation of a right secured by the federal Constitution or laws.  See *West v. Atkins*, 487 U.S. 42, 48 (1988); *Albright v. Oliver,* 510 U.S. 266, 271 (1994).  It is undisputed the Defendants against whom this claim has been alleged were acting under the color of state law when Jones fell ill and died.

The Eighth Amendment obligates authorities to provide medical care to incarcerated individuals, and a failure to do so is inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).  A violation occurs when a person faced a sufficiently serious risk to his health or safety and the defendant official acted with " 'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010).

The deliberate-indifference standard includes both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health

00831776                                          3

or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. See also *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 551 (6th Cir. 2009) (concluding that a medical provider was deliberately indifferent where she learned about the prisoner's serious symptoms at about 3:30 pm, but "would not see him until her regularly scheduled medication run at around 7:00 pm"). Neglecting a prisoner's medical need and interrupting a prescribed plan of treatment can constitute a constitutional violation. *Richmond v Huq,* 885 F.3d 928, 947-948 (6th Cir. 2018). Further, "[a]t a certain point, bare minimum observation [of an inmate suffering delirium tremens] ceases to be constitutionally adequate." *Greene v. Crawford Cnty, Michigan*, 22 F.4th at 593, 609 (6th Cir. 2022).

The objective prong is not at issue in this case. Indeed, this Court recognized when ruling on Defendants' dispositive motion, "…there is no question that delirium tremens is an objectively serious medical need." (ECF 147, PageID. 3227) (citations omitted). Evidence, therefore, will focus on Defendants' knowledge and disregard of Jones' medical condition in deliberate indifference to Jones's health or safety. There are a myriad of facts that Plaintiff will present to the jury, including the following—as recognized by this Court when ruling on Defendants' Motion for

Summary Judgment, that demonstrate the deliberate indifference displayed by each of the Defendants to Jones and his condition.

### 1. James August Mallo, LPN

Defendant Mollo was one of two individuals who responded to Jones' cell upon being alerted that he was "face down" because, apparently, he had a seizure. Defendant Mollo did not request any emergency medical assistance. He, and Defendant Goetterman, *infra*, started chest compressions on Jones, but <u>for several minutes</u> after his collapse, did not provide him with oxygen in any form. Significantly, a bag valve mask, along with oxygen tanks, were available; and had been all along. Defendant Mollo, further, allowed Jones to be taken to the jail's infirmary following recusation efforts for observation, again ignoring the need for emergency medical assistance. These actions, combined with Defendant Mollo's failure to take Jones's vital signs as part of an earlier withdrawal check, demonstrate his patter of deliberate indifference to Jones's condition and provide a basis on which to find he violated Jones's Eighth Amendment rights, allowing his estate recovery under 42 U.S.C. §1943. In fact, by the time Defendant Mollo became involved, it was known that Jones was starting to exhibit clear signs of withdrawal and distress.

### 2. Melissa Furnace, RN

Defendant Furnace was the charge nurse during the majority of Jones's incarceration at KCCF. She is the one who placed Jones on the withdrawal protocol

at approximately 5:30 a.m. on April 26, 2018, based on his increasing and alarming withdrawal symptoms, including hallucinations and a high pulse rate. Indeed, at that time, she knew Jones had been spiraling down with increased withdrawal symptoms for over 30 hours based on her access to Jones's medical record as charge nurse.

Jones emergently needed medication based on his worsening symptoms. Defendant Furnace could have ordered that he receive it as soon as possible given her position, but she directed that he receive it at the jail's next distribution time—<u>seven and one-half hours later</u>. Defendant Furnace's only excuse for this delay was one of <u>convenience</u>; not any sort of medical judgment. "That's the schedule", she said, while medical experts will tell this jury that that earlier intervention could have prevented, or significantly lessened, the harm suffered by Jones.

Moreover, Defendant Furnace was the charge nurse when the final three withdrawal checks of Jones were performed (and revealed he had elevated scores from when he arrived at KCCF), including a check on April 26 that scored Jones at 21, and the check conducted at 4:00 am on April 27, when Jones could not understand directions to take his medication. The results of withdrawal checks were reported, per protocol, to the charge nurse; i.e., Defendant Furnace. As such, she knew Jones was undergoing severe withdrawal with hallucinations and was not receiving his ordered treatment ordered by Sherwood. Yet, the jury will be presented with no evidence that she did anything in response.

Furnace, herself, even evaluated Jones at 5:30 am on April 27th following his apparent seizure. With all of her knowledge and what was available to her, she did not contact an emergency medical team. She did not change his treatment plan. Instead, she allowed him to be taken to the jail's infirmary, where she knew that he would not receive IV medication to treat his agitation and reduce his seizure risk.

Significantly, however, Defendant Furnace spoke with deputies during this time about releasing Jones to an emergency room, although she did not need their approval to do so. This demonstrates she thought Jones needed emergency medical care; beyond what the infirmary could supply. Yet, she did nothing toward that end.

Although a charge nurse, responsible for management of medical care, the facts will establish that Defendant Furnace essentially provided no care at all, violating Jones' Eighth Amendment rights and allowing his estate recovery under 42 U.S.C. §1943.

### 3. Lynne Fielstra, RN

Defendant Fielstra offered Jones his second dose of medication at 6:30 p.m. on April 26, 2018. Given his worsening condition as depicted in video surveillance, it does not appear that he took it. Rather, video reveals Jones was confused about what to do with the medicine cup. Although Defendant Fielstra motioned for Jones to drink from the cup, he did not. Toxicology results establish that, following that encounter, Jones's Diazepam and Promethazine levels were negligible. In fact, those

test results establish he received only one dose of his medicine vastly earlier in the day on April 26th.

Moreover, Fielstra conducted her own withdrawal assessments when interacting with Jones, and those result reveal she knew he was in the "severe" category for withdrawal—even though having received one dose of medicine to counter-act his withdrawal side-effects. Yet, even apparently realizing he could not understand enough to take the medicine she offered him, Defendant Fielstra knew Jones would have to wait <u>at least</u> another eight hours for another dose and withdrawal check. Yet, she did nothing. And, she knew that Jones would be sent to an acute care facility (not the jail's infirmary) if he had been hallucinating and not responding to medication (which she observed he did not take).

The jury in case could easily conclude Defendant Fielstra was deliberately indifferent to Jones' medical needs.

### 4. Daniel Card, LPN

Defendant Card conducted a withdrawal check of Jones on April 27, 2018 at 4:00 a.m. He observed Jones sitting on the floor and others previously reported that Jones was hallucinating and unable to understand directions. Recall, Defendant Fielstra encountered Jones' confusion and inability to understand directions the prior evening on April 26th at 6:30 p.m. Yet, the evidence reveals Defendant Card literally did <u>nothing</u> to assist Jones; including give him his medication <u>or</u> attempt to provide

more urgent treatment. The evidence the jury will hear demonstrates that Defendant Card simply did not treat Jones and was deliberately indifferent to his clearly incapacitated condition.

### 5. Joanne Sherwood, NP

Defendant Sherwood did not order, on April 27, 2018, that Jones receive medication immediately. Moreover, she did nothing after being alerted that Jones ostensibly had a seizure earlier that morning, except agree to check on him later that morning when she actually arrived at KCCF. Defendant Sherwood also failed to change any treatment protocol when it was obvious that Jones's condition was deteriorating and he was not receiving necessary treatment, or responding to the meager treatment supplied to him. Indeed, the jury will hear that Defendant Sherwood had <u>zero</u> plans to arrive at KCCF early on April 27th to assess transfer to a hospital, despite Jones's symptoms of shaking, hallucinations, severe withdrawal and inability to comply with medication instructions. Failure to take any action outside of her traditional schedule, although knowing of Jones's deteriorating and critical condition, constitutes deliberate indifference.

### 6. Chad Richard Goetterman, RN

Video footage demonstrates that Defendant Goetterman was more concerned with inspecting a ring (with even a magnifying glass) than Jones's health and well-

being.  Plaintiff's interpretation of video surveillance reveals the following that will be played to the jury:

- 7:34        Jones goes into bathroom stall
- 7:35:35    Goetterman briefly glances up at Jones
- 7:36:10    Nurse Mollo hands Goetterman a ring
- 7:36        Goetterman puts on ring, looking at ring
- 7:38        Goetterman talking to co-workers, handling ring, his back to window, Jones slumped over, but still moving
- 7:39        Goetterman gets magnifying glass to inspect ring
- 7:39:23    **Last movement by Jones**
- 7:39:33    Goetterman's back turned to cell, continues inspecting ring
- 7:42:14    Corrections deputy receives call from another sheriff asking if nurses have started IV in Jones
- 7:42:42    Goetterman gets up to check Jones' vital signs, apparently based on the previous call.

Based on his own admission, Goetterman had no intention to assess Jones until Sherwood arrived at 8:00 a.m. on the 27th unless there was a change in the Jones's condition.  In fact, despite being alerted previously that it appeared Jones had passed out in the bathroom, Defendant Goetterman did nothing until deputies started speaking amongst themselves that Jones should be checked on.

Jones likely had a seizure by this point.  Yet, Goetterman did not start an IV for hydration, contact an emergency provider, or check his vital signs for nearly two

hours. He merely "observed" him (while at the same time observing a ring he was interested in).

Ultimately, Defendant Goetterman attempted to resuscitate Jones with Defendant Mollo. However, he, too, failed to ensure Jones received <u>any</u> form of oxygen in the critical <u>minutes</u> when his heart stopped beating. even though a bag valve mask and oxygen tanks were readily available.

The evidence in this case reveals that Goetterman's choice to sit on his hands and "observe" is constitutionally inadequate. So, too, are his efforts at chest compressions when no oxygen is administered to the patient, resulting in debilitating brain damage. Given the evidence, the jury could likely conclude Defendants, including Defendant Goetterman, violated Jones' federal rights.

**B. Defendants' medical malpractice caused Jones' death**

Responsible for overseeing and supplying medical care to KCCF inmates, the Defendants against whom this claim is brought owed Jones the following duties, particularly to:

a. Timely and appropriately communicate with and among the medical and nursing staff regarding Jones's condition and complaints;
b. Timely obtain medical attention for Jones when obvious risk factors for medical complications including but not limited to severe alcohol withdrawal, and/or detox, delirium tremens, respiratory distress, and/or cardiac arrest were present;
c. Be familiar with the sign's symptoms, and risks of alcohol withdrawal and/or detox, respiratory distress, cardiac arrest, delirium tremens, and the appropriate and necessary treatment;

d. Timely and appropriately communicate that Jones must be transferred to the hospital;
e. Ensure that policies and procedures of a jail infirmary are followed;
f. Ensure that proper assessment of Jones is made and recognize a medical emergency, including but not limited to severe alcohol withdrawal and/or, delirium tremens, and cardiac arrest;
g. Perform an accurate and complete a medical and risk assessment of Jones;
h. Timely and appropriately examine and treat Jones;
i. Timely and appropriately communicate with the physician, nurse practitioner and/or supervisory personnel regarding Jones's medical condition and complaints;
j. Request, require and ensure timely transfer to a hospital for complete physical workup to include medical testing, laboratory studies, and any additional testing and treatment that may be necessary;
k. Monitor Jones in a timely fashion, while Jones is under observation;
m. Ensure that all appropriate protocols, including but not limited to obtaining vital signs are followed;
n. Ensure that policies and procedures of a jail infirmary are followed;
o. Ensure that timely and appropriate assessment of Jones is made and recognize a medical emergency, including but not limited to severe alcohol withdrawal and/or detox, delirium tremens, respiratory distress, and/or cardiac arrest;
p. Timely initiate and pursue chain of command;
q. Timely and appropriately provide medications and appropriate medication dosage;
r. Recommend and obtain all necessary tests in a timely manner;
s. Properly enter medication orders in the medical record keeping system;
t. Ensure that any and all orders and/or instructions are followed, including but not limited to medication and/or transfer instructions;
u. Timely and appropriately perform CIWA protocols;
v. Avoid improper instructions, including medication and/or transfer instructions; and
w. Timely respond to and treat cardiac arrest.

The evidence in this case, particularly as described above as part of Plaintiff's claim under 42 U.S.C. §1983 reveals that the individual nurses and nurse practitioner Defendants breached each of these duties. Defendant Corizon, having hired and acted through its individual nurses and nurse practitioners, equally is responsible for the myriad breaches of duties owed to Jones that occurred while he was at KCCF.

Medical testimony has established, and the jury will hear, that, because of these breaches of duties, Jones failed to receive appropriate and timely medical care and treatment for his worsening alcohol withdrawal and delirium tremens. In conjunction with all of the other missteps in his care, the failure to timely transfer Jones to the hospital lead to his cardiac arrest, irreversible anoxic encephalopathy, and ultimately his death.

## CONCLUSION

For the foregoing reasons, and for the reasons alleged in Counts III and IV of the Complaint and supporting documents, Plaintiff is entitled to judgment against each and every Defendant, and is entitled to the full measure of the relief sought in the Complaint.

        Respectfully submitted,

        BUCKFIRE LAW FIRM

By:   */S/ Jennifer G. Damico*
      JENNIFER G. DAMICO (P51403)
      Attorney for Plaintiff
      29000 Inkster Road, Suite 150
      Southfield, MI    48034
      (248) 234-9828/fax (248) 281-1886
      jennifer@buckfirelaw.com

Dated:  July 18, 2022