UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES JONES, as Personal Representative
of the Estate of WADE JONES, deceased,

        Plaintiff,                Case No.: 1:20-cv-00036

    v.                        Hon. Judge Hala Y. Jarbou

JANICE STEIMEL, L.P.N., JAMES
AUGUST MOLLO, L.P.N., LYNNE
FIELSTRA, L.P.N., MELISSA
FURNACE, R.N., CHAD RICHARD
GOETTERMAN, R.N., AND JOANNE
SHERWOOD, N.P.,

        Defendants.
_____/

| BUCKFIRE LAW FIRM | CHAPMAN LAW GROUP |
|---|---|
| Jennifer G. Damico (P51403) | Ronald W. Chapman Sr., M.P.A., |
| Attorney for Plaintiff | LL.M. (P37603) |
| 29000 Inkster Road, Suite 150 | Devlin Scarber (P64532) |
| Southfield, MI 48034 | Attorney for Defendants, |
| Direct (248) 234-9828 | 1441 West Long Lake Rd., Suite 310 |
| (248) 569-4646 | Troy, MI 48098 |
| (248) 569-6737 (fax) | (248) 644-6326 |
| Jennifer@buckfirelaw.com | rchapman@chapmanlawgroup.com |
| | dscarber@chapmanlawgroup.com |

_____/


**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND PRE-JUDGMENT INTEREST PURSUANT TO 42 U. S. C. §§ 1983, 1988, AND ENTRY OF AMENDED JUDGMENT**


      NOW COMES Plaintiff, CHARLES JONES, as Personal Representative

of the Estate of WADE JONES, deceased through his counsel, BUCKFIRE LAW

FIRM, and pursuant to 42 U.S.C. § 1983, §1988, 28 U.S.C. §1920, Fed. R. Civ. P.

54(d), and W.D. Mich. LR 54.1, files his Motion for Attorneys' Fees, Costs, and

Prejudgment Interest, and Entry of Amended Judgment. Plaintiff relies on the law

and reasoning set forth in his Brief attached hereto, the Federal Rules of Civil

Procedure and the files and records in this case. In accordance with W.D. Mich.

LCivR 7.1(d) on December 20, 2022, Plaintiff's counsel sought concurrence in this

motion, but such concurrence was not forthcoming. **Exhibit 1.**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court

grant Plaintiff's Motion and enter an Order awarding Plaintiff attorneys' fees, costs,

and prejudgment interest as follows:

A.  Attorney fees (Buckfire & Buckfire, P.C.) in the
    amount $813,640.00, **Exhibit 2;**

B.  Costs (Buckfire & Buckfire, P.C.) in the amount of
    $29,464.84, **Exhibit 3;**

C.  Pre-Judgment Interest in the amount of
    $1,028,561.20;[1] and

D.  Enter an Amended Judgment consistent with the
    Court's ruling.

---

[1] Plaintiff reserves the right to seek post-judgment interest pursuant to 28 U.S.C. §1961 and for leave to further amend the Judgment.

Respectfully submitted,

**BUCKFIRE LAW FIRM**

/s/ Jennifer G. Damico
JENNIFER G. DAMICO
(P51403)
Attorney for Plaintiff
29000 Inkster Road, Suite 150
Southfield, MI 48034
(248) 569-4646/fax (248) 281-1886
Jennifer@buckfirelaw.com

December 20, 2022

# TABLE OF CONTENTS

Index of Authorities……………………………………………….....…ii, iii, iv, v

I.     Introduction…………………………………………………………………..1

II.    Argument…………………………………………………………………....5

    A.    Legal Standard to Obtain Attorneys' Fees and Costs…………………..….5

    B.    Plaintiff is the "Prevailing Party" under § 1988 and No " Special Circumstances" are Present to Support the Denial of Fees………………… 7

    C.    Plaintiff's Lodestar Amount…………………………………………....9

    D.    The Number of Hours Submitted by Buckfire Law is Reasonable……….. 15

    E.    Plaintiff Requests Prejudgment Interest and Entry of Amended Judgment………………………………………………………...19

III.    CONCLUSION……………………………………………………….21

# INDEX OF AUTHORITIES

## Cases

*Adcock–Ladd v. Sec'y of Treasury*,
    227 F.3d 343, 350 (6th Cir. 2000)……………………………………………...11

*Associated General Contractors v. Drabik*,
    250 F.3d 482, 495 (6th Cir. 2001)……………………………………………...19

*Berger v. City of Mayfield Heights*,
    265 F.3d 399, 406-07 (6th Cir. 2001).................................................................6

*Blair v. Harris*,
    93 F. Supp.2d 721 (E.D. Mich.)……………………………………………..10

*Blanchard v. Bergeron*,
    489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)..…………………………10

*Blum v. Stenson*,
    465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)…………..11, 12, 13

*Cleveland v. Ibrahim*,
    121 F. App'x 88, 90 (6th Cir. 2005)…………………………………….... 8

*City of Burlington v. Dague*,
    505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)…………………..9

*Conte v. General Housewares Corp.*,
    215 F.3d 628, 640 (6th Cir. 2000)………………………………………….19

*Coulter v. State of Tenn.*,
    805 F.2d 146, 152 (6th Cir. 1986)……………………………..…17, 18, 19

*Deja Vu v. Metropolitan Government of Nashville and Davidson County, Tennessee*,
    421 F.3d 417, 423 (6th Cir. 2005)…………………………………………….6

*Dowling v. Litton Loan Servicing, L.P.*,

2008 WL 906042, at *2 (S.D. Ohio Mar. 31, 2009), *aff'd*, 320 F. App'x
442 (6th Cir. 2009)…………………………………………………………….16

*EEOC v. Wooster Brush Co. Employees Relief Ass'n*,
72 F.2d 566, 579 (6th Cir. 1984)……………………………………...…………..19

*Ford v. Uniroyal Pension Plan,*
154 F.3d 613, 619 (6th Cir. 1998)……………………………………………...19

*Farrar v. Hobby*,
506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)……………………5

*Gates v. Deukmejian,*
987 F.2d 1392 (9th Cir. 1993)…………………………………………………...12

*Gisbrecht v. Barnhart,*
535 U.S. 789, 801, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002)……...…………... 9

*Granzeier v. Middletown*,
173 F.3d 569, 577 (6th Cir. 1999)……………………………………………….7

*Hamlin v. Charter Township of Flint,*
*165 F.3d 426 (6th Cir. 1999)*.............................................................. 10

*Hescott v. City of Saginaw,*
757 F.3d 518, 523 (6th Cir. 2014) ................................................ …….6

*Hensley v. Eckerhart*,
461 U.S. 424, 430, 103 S.Ct. 133, 76 L.Ed.2d 40 (1983)…………….... 9, 10, 17

*Indep. Fed'n of Flight Attendants v. Zipes,*
491 U.S. 754, 761, 109 S. Ct. 2732, 105 L. Ed. 2d 639 (1989) ...........................6

*Jones v. Central Soya, Co.,*
748 F.2d 588, 594 (11th Cir. 1984)………………………………………………17

*Laake v. Benefits Comm*.,
2022 U.S. Dist. LEXIS 16492, S.D. Ohio, Jan. 31, 2022)………………...19, 20

*Lawler v. Teofan,*
  807 F.2d 1207, 1212, n. 3 (5th Cir. 1987)…………………………………… 12

*Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,*
  487 F.2d 161 (3rd Cir. 1973), appeal after remand, 540 F.2d 102 (3rd Cir. 1976) ...................................................................................................................9

*Missouri v. Jenkins,*
  491 U.S. 274, 283-84, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)……………...10

*Northcross v. Board of Education,*
  611 F.2d 624, 636 (6th Cir. 1980)…………………………………………..18

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air,*
  478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1987) ............................18

*Popham, v City of Kennesaw,*
  820 F.2d 1570, 1580 (11th Cir. 1987) ..................................................................6

*Shivers v. Schmiege,*
  285 Mich. App. 636, 646 N.W.2d 669 (2009),  ...................................................8

*Swans v. City of Lansing,*
  65 F. Supp.2d 625 (W.D. Mich. 1998)………………………………………….13

*Van Elslander v. Thomas Sebold & Assocs.,*
  297 Mich. App. 204, 227-229 (2012)…………………………………………...12

*Walker v. U.S. Department of Housing and Urban Development,*
  99 F.3d 761, 768 (5th Cir. 1996)……………………………………………….17

*Woods v. Willis,*
  631 F. App'x 359, 363 (6th Cir. 2015)………………………………………….5

*Wooldridge v. Marlene Industries Corporation,*
  898 F.2d 1169, 1177 (6th Cir. 1990)…………………………………………..18

**Other Authorities**

42 U.S.C. § 1983 ………………………………………………………….1, 4, 8

42 U.S.C. § 1988……………………………………………………...1, 6, 7, 8, 9

28 U.S.C. § 1961(a)………………………………………………………….19, 22

M.C.L. §600.1483……………………………………………………………8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES JONES, as Personal Representative
of the Estate of WADE JONES, deceased,

       Plaintiff,                    Case No.: 1:20-cv-00036

    v.                           Hon. Judge Hala Y. Jarbou

JANICE STEIMEL, L.P.N., JAMES
AUGUST MOLLO, L.P.N., LYNNE
FIELSTRA, L.P.N., MELISSA
FURNACE, R.N., CHAD RICHARD
GOETTERMAN, R.N., AND JOANNE
SHERWOOD, N.P.,

       Defendants.

_____/

| BUCKFIRE LAW FIRM | CHAPMAN LAW GROUP |
|---|---|
| Jennifer G. Damico (P51403) | Ronald W. Chapman Sr., M.P.A., |
| Attorney for Plaintiff | LL.M. (P37603) |
| 29000 Inkster Road, Suite 150 | Devlin Scarber (P64532) |
| Southfield, MI  48034 | Attorney for Defendants, |
| Direct (248) 234-9828 | 1441 West Long Lake Rd., Suite 310 |
| (248) 569-4646 | Troy, MI 48098 |
| (248) 569-6737 (fax) | (248) 644-6326 |
| Jennifer@buckfirelaw.com | rchapman@chapmanlawgroup.com |
|  | dscarber@chapmanlawgroup.com |

_____/

## **PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS AND PREJUDGMENT INTEREST PURSUANT TO 42 U. S. C. §§ 1983, 1988, AND ENTRY OF AMENDED JUDGMENT**

1

## I.     <u>INTRODUCTION</u>

This lawsuit is the arises out of the wrongful death of Plaintiff's decedent, Wade Jones (Jones), who died from complications of acute alcohol withdrawal syndrome while serving a five-day sentence at the Kent County Correctional Facility (KCCF) in April of 2018.

Plaintiff asserted federal deliberate indifference to serious medical and medical malpractice claims against individual Defendants.

The case was tried before a Jury in Lansing, Michigan for 11 days, for 3 weeks.  The Jury deliberated for approximately 15 hours. The 11-page verdict form contained 40 questions for the Jury to consider.

On December 2, 2022, the Jury returned a verdict against Defendants, Mollo, Furnace and Goetterman on Plaintiff's civil rights claim and awarded $6.4 million in compensatory damages.  They Jury found in favor of Defendants on Plaintiff's claim of Professional Negligence. (Judgment) (ECF No. 244, PageID.5701).

Plaintiff's victory did not come easy in this case. Defendants vigorously litigated this case for 4 years (the Notices of Intent to File a Claim for medical malpractice filed on November 13, 2018). Plaintiff incurred substantial costs and

attorneys' fees.[1] Plaintiff's 58-page Complaint contained 6 Counts and 23 Defendants.

Counsel deposed over 40 lay witnesses.  The document production was extensive. Plaintiff drafted detailed and multiple requests for documents from the Corizon Defendants.  They produced nearly 10,000 documents.

Plaintiff spent considerable time learning, reviewing, organizing, electronically coding, and compiling the vast document production. These documents were used at all depositions taken by Plaintiff. Plaintiff compiled binders and provided copies of the exhibits to the witnesses and to defense counsel at all depositions to keep them running smoothly and efficiently.

Plaintiff contemporaneously responded to two Motions for Summary Judgment, where 27 of the above depositions were used by the parties in support of their respective positions.  (ECF No.  125, 127, 135, and 136); see also, **Exhibit 3, Taxable Bill of Costs, Ex. D. – Court Reporter Fees for Deposition Used in Support of Motion for Summary Judgment Responses) (ECF No. 248, PageID. 5907-5983).**  Additionally, Plaintiff produced 45 edited sections of the jail security video footage in support of his  Response to Corizon's Motion for Summary Judgment. ECF No. 136-7, PageID. 2872-2875.

---

[1] Plaintiff total costs exceed $235,000.00.

3

Plaintiff directs the Court to the above history of this case because counsel was effectively without any support other than a legal assistant to schedule depositions and perform filing tasks.  This was especially true during the pandemic when the state was on "lock down."  There are no paralegal hours, because counsel had no paralegal.  There are no associate hours, other than Ms. Gorski for the week before trial, and during trial, because there was no one else working on this file.

The serious time commitment required by this case precluded counsel from employment in other cases. As demonstrated below, the fees requested by counsel are customary and reasonable. Further, counsel took a significant risk by pursuing this matter on a contingency fee basis. The result was considerable given the difficulty of proofs, and amount of costs (mainly due to the expert fees), in terms of both liability and damages. As demonstrated below, the experience and reputation of Plaintiff's counsel dictates a substantial award of attorney's fees. Counsel has had a relationship with her client for approximately four and a half years.

Counsel succeeded at trial by obtaining a favorable jury verdict and judgment. Congress enacted §1988(b) to encourage attorneys to take cases and represent civil rights plaintiffs in cases that do not have substantial economic value. There were no economic damages in this case.

The congressional intent of § 1988(b) is particularly applicable here where the Jury sent a clear message that Plaintiff's decedent's federal rights were violated.  For

the following reasons, Plaintiff's now seeks attorney's fees, costs, and prejudgment interest as the prevailing party.

## II.    <u>ARGUMENT</u>

### A.    <u>Legal Standard to Obtain Attorneys' Fees and Costs.</u>

In an action to enforce a provision of 42 U.S.C. § 1983, § 1988 permits the Court to allow the prevailing party costs, including reasonable attorneys' fees, as part of the costs. *Farrar v. Hobby*, 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).[2] "The purpose of this provision is 'to ensure that federal rights are adequately enforced.'" *Woods v. Willis*, 631 F. App'x 359, 363 (6th Cir. 2015). Section 1988 has a clear remedial objective--providing private citizens an opportunity to seek redress for individual harm while also securing important social benefits for the public as a whole. In this regard, the United States Supreme Court has stated:

> Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil constitutional rights that cannot be valued solely in monetary terms. And Congress has determined that 'the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff....' Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in  nominal or relatively small damages awards.

---

[2] Plaintiff filed his Bill of Costs with supporting documents on December 15, 2022.  Defendants have 28 days to file objections.  (ECF No. 248, PageID. 5907-5983).

*Id*. at 574 (internal citations omitted). Section 1988 also has an important deterrent objective to prevent similar violations from occurring in the future. *See Popham, v City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987) ("The affirmation of constitutional principles produces an undoubted public benefit that courts must consider in awarding attorney's fees under § 1988. When courts affirm the constitutional rights of citizens, public officials are deterred from violating other citizens' rights in the future."). The deterrent objective is particularly important in a case where medical staff violates the constitutional rights of an inmate who cannot help himself.

"Although §1988 uses permissive language regarding fee awards, 'the Supreme Court has read [§1988] as mandatory where the plaintiff prevails, and special circumstances are absent.'" *Hescott v. City of Saginaw*, 757 F.3d 518, 523 (6th Cir. 2014) (citing *Déjà vu v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 421 F.3d 417, 420 (6th Cir. 2005) (citing *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761, 109 S. Ct. 2732, 105 L. Ed. 2d 639 (1989)); *Berger v. City of Mayfield Heights*, 265 F.3d 399, 406-07 (6th Cir. 2001)).

**B.** **Plaintiff is the "Prevailing Party" Under § 1988 and No "Special Circumstances" are Present to Support the Denial of Fees.**

The Sixth Circuit has defined "prevailing party" in the context of § 1988, stating:

> To be a 'prevailing party,' a party must succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit....The Supreme Court has rejected a 'central issue test' which would require a party to succeed on the main issue of the litigation to be considered 'prevailing.' Rather, a party who partially prevails is entitled to an award of attorney's fees commensurate to the party's success.

*Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1977). Plaintiff has not only succeeded on a significant issue in this case but has succeeded on ***the main issue*** of the litigation.  Plaintiff proved by a preponderance of the evidence that 3 of the Defendants were deliberately indifferent to Wade Jones' serious medical needs by obtaining a jury verdict awarding damages and a judgement reflecting the same.

It is indisputable that Plaintiff is a "prevailing party" in this action. He secured a $6.4 million judgment on his 42 U.S.C. § 1983 claim.  Although the Jury did not find the Defendants professionally negligent, any damages that may have been awarded under that claim are inconsequential.

First, arguably, any compensatory damages for professional negligence would have been duplicative of the compensatory damages awarded on the

7

deliberate indifference claim.

Second, the Court is required to reduce any professional negligence verdict to the statutory state law medical malpractice damage "cap".  MCL §600.1483; *Shivers v. Schmiege*, 285 Mich. App. 636, 646, 776 N.W.2d 669 (2009).

Regardless of which "cap" the Court applied, a potential judgment on Plaintiff's professional negligence could not exceed $887,500 approximately 14% of what the Jury awarded.[3]   Thus, there can be no argument that Plaintiff only obtained a "partial" success.

An award of attorneys' fees is mandatory under §1988 absent "special circumstances." *Id.* at 523. "The United States Supreme Court has offered little guidance on what constitutes 'special circumstances,' and as a result, the Sixth Circuit has adopted a "case-by-case" inquiry in which "a non-prevailing defendant bears the burden 'to make a strong showing that special circumstances warrant a denial of fees.'" *Id*. at 523. However, "courts have made clear that special circumstances should not easily be found." *Id*. (quoting *Cleveland v. Ibrahim*, 121 F. App'x 88, 90 (6th Cir. 2005)). Notably, "a plaintiff's failure to win punitive damages does not constitute special circumstances warranting the denial of attorney's fees." *Id*. at 526. As such, no special circumstances exist in the present

---

[3] As of January 28, 2022, the lower cap is $497,000 and the higher cap is $887,500.

case and as a result, Plaintiff as the prevailing party in this lawsuit is entitled to an award of its attorneys' fees under § 1988.

## C.   Plaintiff's Lodestar Amount.

The "lodestar" method of calculating attorney's fees is "the guiding light of our fee-shifting jurisprudence." *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). The "lodestar approach," which calculates the reasonable amount of attorney's fees taking a reasonable hourly rate multiplied by the number of hours reasonably expended on the litigation, was pioneered by the Third Circuit in *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir. 1973), appeal after remand, 540 F.2d 102 (1976), and "achieved dominance in the federal courts" after the Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 133, 76 L.Ed.2d 40 (1983). *Gisbrecht v. Barnhart,* 535 U.S. 789, 801, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002). There is a strong presumption that the lodestar amount represents a "reasonable" fee. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1987).

Under *Hensley*, the factors identified by the Supreme Court include: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the

customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "understandability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n. 3.

Plaintiff's counsel seeks a rate of $750.00 per hour for her work on this difficult case. Indeed, "[w]hether or not [a litigant] agreed to pay a fee and in what amount is not decisive…Such arrangements should not determine the court's decision. *The criterion for the court is not what the parties agree but what is reasonable*." *Blair v. Harris*, 993 F.Supp.2d 721, 734 (E.D. Mich. 2014) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 92 (1989)) (emphasis in original).

Counsel also seeks a rate of $350.00 for the work of attorney Sarah L. Gorski, which is consistent with the complexity of the issues in this case and the *2020 State Bar of Michigan, Economics of Law Practice, Attorney Income and Billing Rate Survey* ("Survey") (**Exhibit 4, Summary Report of Survey. pp. 4, 6, 7).** This survey analyzes billing rates as follows, as well as the complexity of the issues in this case:

|  | 75th Percentile | 95th Percentile |
| --- | --- | --- |
| Personal Injury (Plaintiff) | $500 | $750 |

10

| Medical Malpractice (Plaintiff) | $900 | $1,500 |
|---|---|---|
| Civil Rights | $400 | $550 |

| Years in Practice | 75th Percentile | 95th Percentile |
|---|---|---|
| 3 to 5 | $250 | $365 |
| 26 to 30 | $400 | $620 |

| Geographical Area | Oakland County |
|---|---|
| | $375 to $575 |
| | Grand Rapids |
| | $375 to $545 |
| | Lansing |
| | $345 to $450 |

A reasonable hourly rate must be calculated according to the "prevailing market rate" in the "relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The "relevant community" is "the legal community within [the court of record's] territorial jurisdiction." *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir.2000). The "prevailing market rate" is one that is comparable to rates in the "relevant community" for similar services by lawyers of reasonably comparable skill, experience and reputation. *Stenson*, 465 U.S. at 895 n. 11.

Fees should be calculated at current market rates, not rates that would have historically applied, because "compensation received several years after the services were rendered -- as it frequently is in complex civil rights litigation -- is not equivalent to the same dollar amount received reasonably promptly as the legal

11

services are performed, as would normally be the case with private billings."
*Missouri v. Jenkins,* 491 U.S. 274, 283-84, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989).

The most widely employed method to determine reasonable hourly rates is to base fee awards on rates currently in effect. See, e.g., *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1993); *Lawler v. Teofan*, 807 F.2d 1207, 1212, n. 3 (5th Cir. 1987).

In Michigan, the courts place emphasis on the more empirical factors of the Survey. In *Van Elslander v. Thomas Sebold & Assocs.*, 297 Mich. App. 204, 227-229 (2012) the court stated: "In determining this number, the court should use reliable surveys or other credible evidence of the legal market." 297 Mich. App. at 230. The court also stated that determining a reasonable fee should be guided by the "market rate" which is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." 297 Mich. App. At 230-231. Thus, for its initial inquiry, the *Van Elslander* Court placed strong emphasis on the Survey rates by "years in practice," and "areas of practice." The court reiterated the heightened significance of "locality, experience, and practice area" factors in the Survey. *Id.* Notably, the most recent Economics of Law Survey is from 2020. Plaintiff states that these billing rates were based on surveys completed in 2019 and 2020. The state bar has not published a newer survey. The rates should be adjusted to comport with inflation.

Plaintiff's attorneys' verified time records attached as **Exhibit 2**. The

12

Affidavit of Jennifer G. Damico, Esq. is attached as **Exhibit 5** and the Affidavit of

Sarah L. Gorski, Esq. is **Exhibit 6**.

In order to determine whether the hourly rates claimed are reasonable, the court

looks to "rates prevailing in the community for similar services by lawyers of

reasonably comparable **skill, experience and reputation**." *Blum*, 465 at 896, n. 11

(emphasis added).

### 1.    The Reasonable Rate for Ms. Damico.

Ms. Damico has been a practicing trial attorney for 28 years, specializing

throughout that time in personal injury matters and civil rights violations. She has

been in private practice since 1994.  She began her civil rights career working for

Geoffrey Fieger, and was the second chair in the trial of *Swans v. City of Lansing*,

a civil rights case where the jury awarded the plaintiff $12.6 million in damages.

65 F. Supp.2d 625 (W.D. Mich. 1998).  **(Exhibit 7, Damico C.V.).**

She worked at Plunkett Cooney, P.C. for 9 years and was promoted to full

equity partner in 2007. Ms. Damico returned to representing plaintiffs in 2010. She

has handled several high-profile civil rights cases against the Cities of Detroit,

Saginaw and Lansing.  She represented several sexual assault victims against

Michigan State University and Larry Nassar.  In 2017, Ms. Damico obtained the

highest arbitration award for the year as published in Lawyer's Weekly. *Id.*

She is, or has been, a member and officer of numerous professional

organizations, including:

- Association of Defense Trial Counsel, Secretary

- Michigan Association of Justice, Executive Board Member, Governmental Immunity Legislative Priority Committee Member, Women's Law Caucus Member

- Oakland County Bar Association, Member

- Women's Lawyers Association of Michigan, Member

- Federal Bar Association, Eastern District of Michigan, Member

Ms. Damico has been recognized by her peers, in the following publications:

- Lawyer's Weekly, Super Lawyers in 2022

- DBusiness Magazine, "Top Lawyers," 2022, 2023

- Hour Magazine, "Top Women Attorneys in Michigan", 2023

*Id.*

Attached as **Exhibit 8** are the Affidavits of Ms. Damico's colleagues, Vernon (Ven) R. Johnson, Ronald K. Weiner, and Jonathan R. Marko, 3 experienced trial attorneys, practicing plaintiff personal injury, civil rights and/or medical malpractice law. These Affidavits are submitted in further support of her request for $750.00 per hour as a reasonable rate for the work performed on this case.

14

Due to the complexities of this case, Plaintiff requests a rate of $750 per hour for Ms. Damico, which is consistent with the rates charged by other attorneys practicing in the same areas of law with the same years of experience.

### 2.     The Reasonable Rate for Ms. Gorski.

Plaintiff also claims $350 an hour for the work performed by Sarah L. Gorski, an attorney at the Buckfire Law Firm. Ms. Gorski graduated in 2017 from Western Michigan – Thomas M. Cooley Law School, making the Dean's List. During law school she was chair of the Mock Trial Board, and earned 1ˢᵗ Place in the first year mock trial competition.

She has been working in litigation at the Buckfire Law Firm for approximately one year.  Before joining Buckfire Law, Ms. Gorski spent several years practicing medical malpractice defense litigation.

She is currently admitted to practice in all federal courts of Michigan. Ms. Gorski is additionally a member the Michigan Association for Justice and the Oakland County Bar Association. (**Exhibit 9**, **Gorski C.V.**).

### D.     The Number of Hours Submitted By Buckfire Law is Reasonable.

This case was vigorously and contentiously litigated since January 14, 2020. The number of counsel's hours are commensurate with the effort required under these circumstances. From the date of the filing of the Complaint, Ms. Damico has submitted 1037.30 hours.  From November 9, 2022, Ms. Gorski has submitted

101.90 hours**.   (Exhibit 2 – verified billing statements)**. The Court considers

multiple factors when determining whether the number of hours is reasonable and

Plaintiff's fee petition supports the hours claimed.

### 1.      Counsel has Submitted Sufficiently Itemized and Detailed Billing Entries.

The entries in Plaintiff's fee petition contain adequate specificity. Plaintiff's

time entries need not be so detailed as to wave attorney-client or work-product-

privilege.

> [T]he fee applicant bears the burden of establishing
> entitlement to an award and documenting the appropriate
> hours expended. If a claimant clears this hurdle, the burden
> shifts to the adverse party to demonstrate that a particular
> entry represents frivolous work ... once a plaintiff proffers
> an itemized and detailed bill, it is well-established that
> conclusory allegations that the hours are excessive and
> that counsel employed poor billing judgment do not
> suffice to undermine it.

*Dowling v. Litton Loan Servicing, L.P.*, No. 5-CV-98, 2008 WL 906042, at

*2 (S.D. Ohio Mar. 31, 2009), *aff'd*, 320 F. App'x 442 (6th Cir. 2009) (internal

quotation marks and citations omitted) **(Exhibit 10).**

Counsels' entries are highly detailed and describe the itemized hours worked

by date, the attorney, and the subject matter.   The burden therefore shifts to

Defendant to show the hours expended were frivolous or excessive. *See Dowling*,

2008 WL 906042 at *3.

### 2.   <u>It is Reasonable for Two Attorneys to Attend Trial</u>.

The Plaintiff is entitled to be compensated for two lawyers so long as both are contributing. "Work performed by multiple lawyers, however, is not subject to reduction where the attorneys were not unnecessarily doing the same work." *Jones v. Central Soya, Co.,* 748 F.2d 588, 594 (11th Cir. 1984); see also, *Walker v. U.S. Department of Housing and Urban Development,* 99 F.3d 761, 768 (5th Cir. 1996).

While "[m]ultiple-lawyer litigation is common and not inherently unreasonable," a "district court should evaluate whether the case is 'overstaffed.'" *Hensley*, 461 U.S. at 434); *see also Coulter v. State of Tenn.*, 805 F.2d 146, 152 (6th Cir. 1986) (noting that "multiple representation can be productive," but "there is also the danger of duplication, a waste of resources which is difficult to measure").

In this case, counsel did not perform duplicative work.  As explained in the Introduction Section, above, this case was <u>understaffed</u>.  Ms. Damico performed all the work on this matter, other than minor clerical work, until the week before trial. Ms. Gorski's billing records demonstrate that she began working on the case on November 9, 2022, 5 days before the start of the trial.  **(Exhibit 2).**

Plaintiff called over 20 live witnesses, filed a motion for directed verdict, and responded to motions and challenges to jury instructions and the verdict form by Defendants.   Defendants also employed 2 attorneys at trial.  Plaintiff maintains that 2 attorneys at trial were necessary.

### 3.     <u>A Reasonable Attorney Would Believe the Hours to be Necessarily Expended.</u>

Plaintiff is not required to demonstrate that every minute was strictly necessary to the result she achieved. Once the Court has determined the appropriate hourly rate, the Court must then determine what number of hours were reasonable. "The 'lodestar' method of calculation … does not solve the problem of excessive hours." *Coulter v. Tennessee,* 805 F.2d 146, 150 (6th Cir. 1986). It is within the Court's discretion to reduce the total hours if they seem unreasonable. The question is not whether a party prevailed on a particular motion, nor whether, in hindsight, the time expended was strictly necessary to obtain relief achieved; instead, the question is whether a reasonable attorney would believe the work to be reasonably expended in pursuit of success at the time when the work was performed. *Wooldridge v. Marlene Industries Corporation,* 898 F.2d 1169, 1177 (6th Cir. 1990); *accord Northcross v. Board of Education,* 611 F.2d 624, 636 (6th Cir. 1980).

All the hours submitted by Plaintiff's counsel were reasonably expended in pursuit of this successful civil rights – medical malpractice action.  All elements of both claims were contested.  Nearly 10,000 documents were produced.  Counsel deposed 40 lay witnesses, responded to 2 voluminous summary judgment motions

contemporaneously, reviewed approximately 520 hours of jail video footage and edited into exhibits for Plaintiff's Motion Responses.

Defendants' settlement offer was $515,000. The jury verdict was $6.4 million. Plaintiff submits that counsel's hours were reasonably and necessary expended.

In summary, Plaintiff's request for $813,640.00 in attorney's fees is reasonable.[4]

### E.   Plaintiff Requests Prejudgment Interest and Entry of Amended Judgment.

Plaintiff requests prejudgment interest on his Judgment. The purpose of prejudgment interest is "to compensate the plaintiff for the delay between the time the cause of action arose and the verdict." *Conte v. General Housewares Corp.,* 215 F.3d 628, 640 (6th Cir. 2000). In the Sixth Circuit, absent a statutory provision, the award of prejudgment interest and the determination of the prejudgment interest rate [is] within the sound discretion of the district court. *Ford v. Uniroyal Pension Plan,* 154 F.3d 613, 619 (6th Cir. 1998); *EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 72 F.2d 566, 579 (6th Cir. 1984).

The recent case of *Laake v. Benefits Comm.,* 2022 U.S. Dist. LEXIS 16492, S.D. Ohio, Jan. 31, 2022) is instructive. **(Exhibit 11).** In *Laake,* the district court,

---

[4] $777,975 for Ms. Damico (1037.30 x $750) and $35,665 for Ms. Gorski (101.90 x $350).

in considering the prevailing party's motion for prejudgment, stated that a rate that is too low fails to make a "plaintiff whole," while a rate that is too high, would be an unjust enrichment. *Id.* at \*4. In looking at current interest rates and inflation for 2018 through 2021 (the case being decided in January of 2022) from the U.S. Department of Treasury and Bureau of Labor Statistics, the court determined that 3.5% was a reasonable prejudgment interest rate for the prevailing party. *Id.* at \*6.

Here, Plaintiff respectfully requests a prejudgment award on the full amount of the judgment from the date of the Plaintiff's decedent's death (May 4, 2018) until the date of the entry of the Judgment (December 5, 2022) at the rate of 3.5% annually.

Simply put, prejudgment interest is warranted to compensate Plaintiff for his loss from the time his cause of action arose until the time of the verdict. Plaintiff respectfully requests prejudgment interest in the amount of $1,028,561.20.[5]

### III.   <u>CONCLUSION</u>

Based upon the foregoing, Plaintiff respectfully requests that this Honorable Court grant Plaintiff's Motion and the Relief sought.

---

[5] $6,400,000 x 3.5% = $224,000 annual interest. $224,000/365 days = $613.70 daily interest rate. From 5/4/18 to 12/5/22, there are 1676 days. 1676 x $613.70 = $1,028,561.20.

Respectfully Submitted,

**BUCKFIRE LAW FIRM**

/s/ Jennifer G. Damico
JENNIFER G. DAMICO (P51403)
Attorney for Plaintiff
29000 Inkster Road, Suite 150
Southfield, MI 48034
(248) 569-4646

December 20, 2022

21

## <u>LIST OF EXHIBITS</u>

EXHIBIT 1            Email to Defense Counsel

EXHIBIT 2            Verified Billing Statements

EXHIBIT 3            Taxable Bill of Costs

EXHIBIT 4            2020 State Bar of MI Survey

EXHIBIT 5            Affidavit of Jennifer G. Damico

EXHIBIT 6            Affidavit of Sarah L. Gorski

EXHIBIT 7            Damico C.V.

EXHIBIT 8            Peer Affidavits

EXHIBIT 9            Gorski Affidavit

EXHIBIT 10           Dowling Case

EXHIBIT 11           Laake Case