# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

CHARLES JONES, as Personal Representative
of the Estate of Wade Jones, Deceased,

Case No: 1:20-cv-36

Hon. Judge Hala Y. Jarbou

Plaintiff,                                          Magistrate Judge Sally J. Berens

v.

Corizon Health, Inc. et al.

Defendants.

---

BUCKFIRE LAW FIRM
Jennifer G. Damico (P51403)
Attorney for Plaintiff
29000 Inkster Rd., Ste. 150
Southfield, MI 48034
(248) 569-4646
jennifer@buckfirelaw.com

CHAPMAN LAW GROUP
Ronald W. Chapman Sr., M.P.A.,
LL.M. (P37603)
Devlin Scarber (P64532)
Attorneys for Corizon Health, Inc.; Teri Byrne, R.N.;
Dan Card, L.P.N.; Lynne Fielstra, L.P.N.; Melissa
Furnace, R.N.; Chad Richard Goetterman, R.N.;
James August Mollo, L.P.N.; Joanne Sherwood, N.P.;
and Janice Steimel, L.P.N.
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
dscarber@chapmanlawgroup.com

---

## CORIZON DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW. AND/OR MOTION FOR A NEW TRIAL

NOW COME Defendants CORIZON HEALTH, INC.; DAN CARD, L.P.N.; LYNNE FIELSTRA, L.P.N.; MELISSA FURNANCE, R.N.; CHAD RICHARD GOETTERMAN, R.N.; JAMES AUGUST MOLLO, L.P.N.; JOANNE SHERWOOD, N.P.; and JANICE STEIMEL, L.P.N., by and through their attorneys, CHAPMAN LAW GROUP, and for their Motion for Judgment as a Matter of Law, and/or Motion for a New Trial pursuant to Fed. R. Civ. P. 50 and 59, state as follows:

1.    Following a two-and-a-half-week trial, on December 2, 2022, the jury returned its verdict finding Defendants FURNACE, MOLLO, and GOETTERMAN deliberately indifferent under Plaintiff's 42 U.S.C. §1983 claims for violating decedent Jones' Eighth Amendment rights. **(See ECF No. 243).**

2.    Defendants timely file this Motion seeking Judgment as a Matter of Law and/or New Trial within twenty-eight days from when the jury was discharged on December 2, 2022. (**PageID.5700**); *Fed R. Civ. P. 50; Fed R. Civ. P. 59.*

3.    For the reasons set forth in the Brief accompanying this motion, the Court should either dismiss the jury's verdict finding Defendants FURNACE, MOLLO, and GOETTERMAN deliberately indifferent, enter judgment as a matter of law in Defendants' favor, or order a new trial on Plaintiff's §1983 claims against Defendants FURNACE, MOLLO, and GOETTERMAN.

4.    The undersigned attorney has contacted Plaintiff's counsel requesting concurrence via email correspondence on December 29th, 2022. Plaintiff will oppose the motion.

WHEREFORE, Defendants CORIZON HEALTH, INC.; DAN CARD, L.P.N.; LYNNE FIELSTRA, L.P.N.; MELISSA FURNANCE, R.N.; CHAD RICHARD GOETTERMAN, R.N.; JAMES AUGUST MOLLO, L.P.N.; JOANNE SHERWOOD, N.P.; and JANICE STEIMEL, L.P.N., respectfully request that this Honorable Court GRANT their Motion for Judgment as a matter of Law, and/or New Trial and provide any and all further relief that this Court deems just and equitable.

Respectfully submitted,
CHAPMAN LAW GROUP

Dated: December 30, 2022

*/s/Ronald W. Chapman, Sr.*
Ronald W. Chapman Sr., M.P.A.,
LL.M. (P37603)
Devlin Scarber (P64532)
Attorneys for Corizon Defendants
1441 West Long Lake Rd., Suite 310
Troy, MI 48098, (248) 644-6326
rchapman@chapmanlawgroup.com
dscarber@chapmanlawgroup.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

CHARLES JONES, as Personal Representative
of the Estate of Wade Jones, Deceased,

Case No: 1:20-cv-36

Hon. Judge Hala Y. Jarbou

Plaintiff,                                        Magistrate Judge Sally J. Berens

v.

Corizon Health, Inc. et al.

Defendants.

---

BUCKFIRE LAW FIRM
Jennifer G. Damico (P51403)
Attorney for Plaintiff
29000 Inkster Rd., Ste. 150
Southfield, MI 48034
(248) 569-4646
jennifer@buckfirelaw.com

CHAPMAN LAW GROUP
Ronald W. Chapman Sr., M.P.A.,
LL.M. (P37603)
Devlin Scarber (P64532)
Attorneys for Corizon Health, Inc.; Teri Byrne, R.N.;
Dan Card, L.P.N.; Lynne Fielstra, L.P.N.; Melissa
Furnace, R.N.; Chad Richard Goetterman, R.N.;
James August Mollo, L.P.N.; Joanne Sherwood, N.P.;
and Janice Steimel, L.P.N.
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
dscarber@chapmanlawgroup.com

---

## BRIEF IN SUPPORT OF CORIZON DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW, AND/OR FOR NEW TRIAL

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES...............................................................................................iii

INDEX OF EXHIBITS ................................................................................................... v

STATEMENT OF ISSUES PRESENTED...................................................................... vi

CONTROLLING/APPROPRIATE AUTHORITY FOR RELIEF SOUGHT ........................... vii

I.  INTRODUCTION ...................................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................................... 1

   A.  Procedural History – Prior Significant Court Orders.......................................... 1

   B.  Significant Issues Occurring During Trial .......................................................... 2

      i.  Voir Dire – Failure to Disclose Felony Conviction ...................................... 2

      ii.  Counsel's Intentional Misconduct.............................................................. 3

      iii.  Defendants' Motion for A Directed Verdict Was Denied.............................. 4

III. LEGAL ARGUMENT ................................................................................................ 4

   A.  The Court Should Dismiss Plaintiff's Deliberate Indifference Claims ................. 5

      i.  Plaintiff's Counsel Crying is a "contumacius Conduct/flagrant abuse" calling for Dismissal of Plaintiff's Deliberate Indifference Claims ................................. 5

   B.  Judgment as a Matter of Law.............................................................................. 7

      i.  Standard for Judgment as a Matter of Law ................................................ 7

      ii.  Counsel's Emotional Display Intentionally Influenced the Jury .................... 8

      iii.  Sufficient Proximate Cause Does Not Exist to Sustain a Deliberate Indifference Verdict 13

      iv.  Alternatively, Under 42 U.S. Code §1988, Plaintiffs Should Only Be Awarded Damages For Pain and Suffering and No Damages Should Be Awarded Pursuant to the Michigan Wrongful Death Statute: MCL 600.2922............................................. 19

   C.  New Trial ......................................................................................................... 20

      i.  Counsel's Misconduct: Crying Before the Jury ......................................... 21

      ii.  Jury Foreman Failed to Disclose His prior Arrest and Conviction ............... 22

      iii.  Plaintiff's Deliberate Indifference Claims Were Not Supported by Proximate Cause .. 26

IV. CONCLUSION ....................................................................................................... 28

## INDEX OF AUTHORITIES

### CASES

*Jimkoski v. State Farm Mut. Auto. Ins. Co.,* 247 Fed. Appx. 654, 662 (6th Cir. 2007)............... 12

*Acuity Mut. Ins. Co. v. Frye,* 471 Fed. Appx. 431 (6th Cir. 2012) ............................... 29

*Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)...................................... 15

*Balsley v. LFP, Inc.*, 691 F.3d 747, 761 (6th Cir. 2012)................................ 22, 23, 29

*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004)............................. 17

*Bradley J. Delp Revocable Trust Dated January 8, 1992 v. MSJMR 2008 Irrevocable Trust Dated December 31*, 665 Fed. Appx. 514, 522 (6th Cir. 2016) ..................................................... 7

*Cf. Clarksville-Montgomery County Sch. Sys. v. United States Gypsum Co.*, 925 F.2d 993, 1002 (6th Cir. 1991)................................................................................................ 10

*Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980) ....................... 10, 22, 23

*Consolidation Coal Co. v. Gooding,* 703 F.2d 230, 233 (6th Cir. 1983)...................... 6

*English v. Berghuis,* 900 F.3d 804 (6th Cir. 2018). ........................................... 26

*Estate of Shinholster v. Annapolis Hosp., 471 Mich. 540, 573*................................ 21

*Fharmacy Records v. Nassar*, 379 Fed. Appx. 522, 522-26 (6th Cir. 2010)................... 7

*Frontier Ins. Co. v. Blaty,* 454 F.3d 590, 598-604 (6th Cir. 2006)........................ 12, 20

*Fuery v. City of Chicago*, 900 F.3d 450, 455-63 (7th Cir. 2018) ............................. 8

*Holmes v. City of Masillion,* 78 F. 3d 1041, 1045-56 (6th Cir. 1996)...................... 23

*Hopkins v. Coen,* 431 F.2d 1055, 1059 (6th Cir. 1970)...................................... 20, 29

*Horn v. Madison County Fiscal Court,* 22 F.3d 653, 659 (6th Cir.), *cert. denied,* 115 S. Ct. 199 (1994).................................................................................. 14, 15, 28

*Jackson v. Ala. State Tenure Comm'n,* 405 F.3d 1276, 1288 (11th Cir. 2005)............... 25, 26, 27

*Jefferson County,* LEXIS 27133, at *15 ................................................... 18, 19

*Kosmynka v. Polaris Indus.,* 462 F.3d 74 (2d Cir. 2006) .................................. 20, 29

*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 555-56 (1984)................ 24

*Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014).............................. 15

*Park W. Galleries, Inc. v. Global Fine Art Registry, LLC*, 732 F. Supp. 2d 727, 732 (E.D. Mich. 2010). ................................................................................. 7, 13, 14

*Reid v. Prentice-Hall, Inc.,* 261 F.2d 700, 701 (6th Cir. 1958); *see Link v. Wabash R.R. Co.,* 370

*Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980). ................................ 5

*Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). ........................................................ 2

*Stevens v. Gooch,* 615 F. Appx. 355 at 360 (2015) ...................................................................... 28

*Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). ....................................................... passim

*Torres v. First Transit, Inc*., 979 F.3d 876 (11th Cir. 2020)........................................................ 27

*United States v. Boney*, 977 F.2d 624, 634 (D.C. Cir. 1992)........................................................ 27

*United States v. Carpa*, 271 F.3d 962, 967 n.5 (11th Cir. 2001) .................................................. 26

*United States v. French,* 904 F.3d 111, 114-15, 118-20 (1st Cir. 2018) ...................................... 25

*United States v. Neuhausser*, 241 F.3d 460, 469 (6th Cir. 2001) ............................................ 9, 23

*United States v. Ruiz Solorio,* 337 F.3d 580, 595 (6th Cir. 2003) ..................................... 24, 25, 27

*United States v. Solivan,* 937 F.2d 1146, 115 (6th Cir. 1991) ........................................................ 9

*Viches v. MLT, INC.,* 124 F. Supp. 2d at 1095, 1098 (E.D. Mich. 2000) ..................................... 29

*Viereck v. United States,* 318 U.S. 236, 237-38 (1943) ............................................................... 10

Wainwright v. Witt, 469 U.S. 412, 424 (1985)............................................................................. 26

*Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976)............................................................ 15

*Williams v. Bagley, 380 F.3d 932, 953* (6th Cir. 2004) ............................................................... 26

*Williams v. Campbell*, 2016 U.S. Dist. LEXIS 161669 (E.D. Mich. Nov. 22, 2016)............... 9, 23

*Zerka v. Green,* 49 F.3d 1181, 1185 (6th Cir. 1995) ......................................................... 24, 25, 26

**STATUTES**

28 U.S. Code § 1865(b)(5)...................................................................................................... 6, 25, 26

Mich. Comp. Laws § 600.1307a (e) ............................................................................................. 6, 25

42 U.S. Code § 1988 ......................................................................................................................... 12

Mich. Comp. Laws § 600.2912a(2)) ........................................................................................... 16, 21

U.S. 626, 633-34 (1962) ..................................................................................................................... 6

**RULES**

Fed. R. Civ. P. 50(b). ...................................................................................................................... viii

Fed. R. Civ. P. 59. ........................................................................................................................... viii

M.C.R. 2.511(D)(2), .......................................................................................................................... 26

## <u>INDEX OF EXHIBITS</u>

**EXHIBIT A**        Lexis Report – Jury Foreman, Mr. Sharma

**EXHIBIT B**        Email From MDOC

## STATEMENT OF ISSUES PRESENTED

I.     SHOULD THE COURT DISMISS PLAINTIFFS' §1983 CLAIMS AS A RESULT OF COUNSEL'S "CONTUMACIOUS CONDUCT" WHEREIN SHE INTENTIONALLY CRIED IN FRONT OF THE JURY PREJUDICING THE VERDICT?

    **DEFENDANTS ANSWER:**     **YES.**
    **PLAINTIFF ANSWERS:**     **NO.**

II.     SHOULD THE COURT ENTER JUDGMENT AS A MATTER OF LAW IN DEFENDANTS' FAVOR?

    **DEFENDANTS ANSWER:**     **YES.**
    **PLAINTIFF ANSWERS:**     **NO**

III.     SHOULD THE COURT ORDER A NEW TRIAL?

    **DEFENDANTS ANSWER:**     **YES.**
    **PLAINTIFF ANSWERS:**     **NO.**

IV.     ALTERNATIVELY, GIVEN DEFENDANTS WERE NOT A PROXIMATE CAUSE OF DECEDENT'S DEATH, SHOULD THE COURT ORDER A NEW TRIAL SOLELY ON THE ISSUE OF DAMAGES?

    **DEFENDANTS ANSWER:**     **YES.**
    **PLAINTIFF ANSWERS:**     **NO.**

## CONTROLLING/APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

Defendants bring this motion under Fed. R. Civ. P. 50 and Fed. R. Civ. P. 59. Under Rule 50(b), a renewed Motion for Judgment as a Matter of Law must be brought within 28 days after entry of judgment, or if the Motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged. *Fed. R. Civ. P. 50(b). Fed. R. Civ. P. 59.* The jury was discharged on December 2, 2022, **(ECF No. 243),** judgment was entered on December 5, 2022. **(ECF No. 244).** Defendants orally moved for a directed verdict under Rule 50. **(ECF No. 226).** Defendants have until January 2, 2023, to file a renewed Motion for Judgment as a Matter of Law unless their Motion addresses a jury issue, in which case, Defendants have until December 30, 2022.

Under Rule 59(b), a Motion for a New Trial must be brought within 28 days after the entry of judgment. Fed. R. Civ. P. 59(b). Defendants therefore have until January 2, 2023, to file a Motion for a New Trial.

Fed. R. Civ. P. 50(b) allows for a single motion that argues for both judgment as a matter of law, or, in the alternative, for a new trial. Fed. R. Civ. P. 50(b). Defendant timely files this Motion for Judgment as a Matter of Law, and/or for New Trial. The standards for both are discussed throughout.

## I.   INTRODUCTION

Following a lengthy trial, the jury deliberated for two and a half days before it returned its verdict, acquitting Defendants on the majority of Plaintiff's claims. **(See ECF No. 243).** Specifically, the jury found no cause of action for all five Defendants on Plaintiff's Professional Negligence claims (i.e., medical malpractice), including claims directed toward Nurse Melissa Furnace (hereinafter "Furnace") and James August Mollo (hereinafter "Mollo"). **(Id.)** Nurse Chad Richard Goetterman (hereinafter "Goetterman") was also found not to be professionally negligent given that the Court dismissed Plaintiff's medical malpractice claim against him. **(PageID. 3248).** The jury found Furnace, Mollo, and Goetterman were deliberately indifferent under Plaintiff's 42 U.S.C. §1983. **(See ECF No. 243).**

The jury acquitted the remaining Defendants. **(Id.)**

Defendants now file this Motion for Judgment as a Matter of Law, and/or For New Trial, requesting this Court dismiss Plaintiffs' §1983 claims against Furnace, Mollo, and Goetterman, enter judgment on the same in Defendants' favor, or, in the alternative, order a new trial on these same claims.

## II.   STATEMENT OF FACTS

The facts leading to Jones' death were discussed at length during the two-and-a-half-week trial roughly four (4) weeks ago, Defendants will refrain from discussing the factual details of plaintiff's cause of action. Defendants will address the salient points from the trial and will provide a brief procedural history.

### A.  Procedural History – Prior Significant Court Orders

On April 29, 2022, this Court issued its order in response to Defendants' Motion for Summary Judgment. **(ECF NO. 148)** The order dismissed Plaintiff's deliberate indifference claims

1

under §1983 against Nurse Teri Byrne ("Byrne"), Deputy Cooper, Deputy Plugge, Deputy Grimmett, Nurse Steimel, and Deputy Jourden, as well as the *Monell* claim against Corizon. **(PageID. 3228-46)**. The Court's order also dismissed Plaintiff's medical malpractice claims for conduct that occurred after 6:00 am on April 27, 2018. During the trial the court dismissed all malpractice claims for conduct occurring after 5:00 am on the same day. **(PageID.5681)** The negligence claim against Corizon was also dismissed by the Court. **(PageID.3248)**.

### B. <u>Significant Issues Occurring During Trial</u>

#### i. *Voir Dire – Failure to Disclose Felony Conviction*

Jury *voir dire* began on November 14, 2022. Counsel participated in the *voir dire* process; notwithstanding it is the Court's duty to ensure an impartial jury. "[T]he obligation to impanel an impartial jury lies in the first instance with the trial judge…". *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). Indeed, "[w]ithout an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Id.* (citing *Connors v. United States*, 158 U.S. 408, 413 (1895)). An inadequate *voir dire* impairs counsel's ability to "exercise peremptory challenges where provided by statute or rule." *Id.*

Prior to *vior dire* prospective jurors were placed under oath. Following the trial, defense counsel further explored the background of the jurors. Lexis reported that Mr. Sharma, one of the jurors, had been convicted of a felony for breaking and entering in 2001. He was sentenced to at least 2 years' probation through the Michigan Department of Corrections. Counsel spoke with the MDOC and confirmed Mr. Sharma completed 2 years of probation. Mr. Sharma's identification was confirmed using his Date of Birth. The MDOC also confirmed the records were destroyed consistent with the MDOC record retention policy. Based on the records available, it appears the

jury foreman, Akash Kumar Sharma ("Mr. Sharma") failed to uphold the juror's oath by intentionally not disclosing facts related to his prior conviction. Defense Counsel asked Mr. Sharma and all prospective jurors whether they, or any of their relatives, had ever been arrested or incarcerated. Mr. Sharma failed to disclose he was arrested, charged, convicted or pled guilty, and served 2 years' probation. **(PageID.5842, 5867-71). (Exhibit A- Lexis Report, Mr. Sharma) (Exhibit B - Email from MDOC)**

ii. *Counsel's Intentional Misconduct*

On November 23rd, 2022, the Wednesday before Thanksgiving, Plaintiff presented their last witness for the day, decedent's brother, Bryan Jones. During this testimony, plaintiff's counsel began to cry uncontrollably in front of the jury. **(PageID.6114-17).** This caused the witness on the stand to cry as well, in full view of the jury. Plaintiff's counsel was in front of the podium with her back turned away from defense counsel which prevented defense counsel from seeing the crying and/or imploring the court to stop it.

The crying, sniffing wiping away tears, sniffling, all occurred in full view of the Court, the jury, and the witness (decedent's brother). Notwithstanding, the intentional and inappropriate behavior of counsel, designed to prejudice the jury, was allowed to go on for approximately one hour. The court did not take any steps to advise defense counsel or stop the behavior, choosing instead to allow it to continue.

Following the examination, the jury was dismissed for the day and the Court addressed plaintiff counsel as follows: "I better not see you crying and/or sniffling with anyone else." "Those theatrics will not work. Whether they're theatrics or not, they come off that way to the jury, and I will not allow it, so if you can't emotionally –." **(PageID.6114).** The Court added, after considering defense motion for a cautionary instruction, counsel's crying was: "Pretty obvious. No, no, no.

Don't tell me no one saw it. It was obvious from the beginning. The sniffling was throughout and the crying -- I don't know if I actually saw tears, but she kept wiping her eyes. That was pretty obvious to me. I was trying not to look at her so that it wouldn't draw attention, but it was pretty obvious, and it was from start to finish." **(PageID.6122).**

To mitigate the prejudicial effect of counsel's "theatrics", **(PageID.6114),** Defendants requested a limiting instruction. **(PageID.6122).** Defendants believed a limiting instruction was critical given counsel's emotional ploy had occurred right before the Court discharged the jury for Thanksgiving, providing ample time for jurors to reflect on counsel's emotional display of crying, as well as Mr. Jones' tears as well. *Id.* The Court refused to provide the jury with the curative/limiting instructions addressing this specific issue.

### iii. Defendants' Motion for A Directed Verdict Was Denied

Following the court's ruling related to requirement of proximate cause, Defendants orally moved for a directed verdict under Fed R. Civ. P. 50, seeking dismissal of the deliberate indifference claims, as well as dismissal of the medical malpractice claim based on actions and decisions after 5:00 am on April 27, 208. **(See ECF No. 226).** The Court denied dismissal of the deliberate indifference claims, but dismissed the medical malpractice claim against Furnace. *Id.*

On December 2, 2022, the jury returned a verdict, acquitting all Defendants on Plaintiffs' medical malpractice claims, and finding Nurse Furnace, Mollo, and Goetterman deliberately indifferent under 42 U.S.C. §1983, and awarded a total of 6.4 million dollars to the Plaintiffs.[1] **(ECF No. 243).**

### III.   LEGAL ARGUMENT

Defendants put forward four separate prayers for relief:

---

[1] Damages were awarded as follows: $3,000,000 for conscious pain and suffering; $400,000 for present loss of society and companionship; and $3,000,000 for future loss of society and companionship. **(ECF No. 243).**

1.      Dismiss Plaintiff's Deliberate Indifference Claims under §1983 given counsel's "contumacious conduct".

2.      Enter a judgment as a matter of law based on counsel's intentional misconduct of crying in front of the jury, and/or failure to establish proximate cause for actions after 5:00 a.m.

3.      Grant a new trial based on the jury foreman's failure to disclose his prior arrest and conviction, and sentence and/or Defendants were not a proximate cause of decedent's death.

4.      Reduce, the award to eliminate wrongful death damages for the reasons stated herein.

**A.  <u>The Court Should Dismiss Plaintiff's Deliberate Indifference Claims</u>**

This Court, has the inherent power to enforce extraordinary remedies in appropriate cases. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980). The Court's exercise of such power is paramount to its ability to "'protect [] the due and orderly administration of justice and … maintain[ ] the authority and dignity of the court.'" *Id.* The Sixth Circuit held dismissal pursuant to the court's inherent power is reserved to cases involving "contumacious conduct" or other flagrant abuses. *Consolidation Coal Co. v. Gooding,* 703 F.2d 230, 233 (6th Cir. 1983). A trial court's inherent power includes a remedy of dismissal. *See Reid v. Prentice-Hall, Inc.,* 261 F.2d 700, 701 (6th Cir. 1958); *see Link v. Wabash R.R. Co.,* 370 U.S. 626, 633-34 (1962) (holding dismissal is a proper sanction for the misconduct of counsel without regard to the asserted innocence of the client).

*i.  Plaintiff's Counsel Crying is a "Contumacious Conduct/flagrant abuse" calling for Dismissal of Plaintiff's Deliberate Indifference Claims*

The jury's verdict finding Nurse Furnace, Mollo, and Goetterman deliberately indifferent, **(ECF No. 243)**, was premised upon counsel's persuasive misconduct, where she intentionally cried in the presence of the jury while questioning Jones' brother, Mr. Jones, on direct examination,

5

which in turn, caused him to cry as well. **(PageID.6114)** The verdict was also premised on the juror foreman's, Mr. Sharma, intentional misrepresentation, where he failed to disclose that he had previously been arrested and convicted of a felony disqualifying him from serving as a juror. **(PageID.5842);** *28 U.S. Code § 1865(b)(5); Mich. Comp. Laws § 600.1307a(e).* If not disqualified to serve, he certainly would have been removed for cause by the court. Defense counsel was deprived of the opportunity to secure a fair and impartial jury. While both issues, on their own, are sufficient to support a directed verdict for Defendants, collectively, their prejudicial effect on the jury's verdict is clear and overwhelming. This Court should enter judgment in favor of Defendants and dismiss Plaintiff's deliberate indifference claims under §1983.

The Court acknowledged counsel's misconduct as intentional: crying in front of the jury, which caused Mr. Jones to cry as well. **(253, PageID.6114).** Counsel further planned and executed her emotional ploy right before the jury was retired for Thanksgiving. **(Id. at 6117).** This "contumacious conduct" and "flagrant abuse" from counsel is one of those rare instances where dismissal of Plaintiff's claims is an appropriate remedy. In *Park W. Galleries, Inc. v. Global Fine Art Registry, LLC*, counsel was found to have "engaged in persistent misconduct in front of the jury throughout the trial, [] [that] would be fair[ly] [] characterize[d] [] as "contumacious conduct.". *Park W. Galleries, Inc. v. Global Fine Art Registry, LLC*, 732 F. Supp. 2d 727, 732 (E.D. Mich. 2010). That is, the Court found counsel had inappropriately referenced other criminal matters that exceeded the scope of the current case, attempted to introduce media reports and television clips, and "read into evidence" non-admitted documents. *Id.* at 734-47.

Similar to *Fharmacy Records*, the Court found counsel's emotional display in front of the jury was made in bad faith. **(PageID.6114); (PageID.6122).** Moreover, as in *Park W. Galleries, Inc.*, counsel engaged in persistent misconduct in front of the jury, crying in full view for an hour,

if not longer, and further, causing decedent's brother to cry before the jury as well. Indeed, in both cases, counsel tried to – and succeeded at – getting jurors to decide the case based on inappropriate evidence and/or misconduct. (Id.); (Id.); *see Park W. Galleries, Inc.*, 732 F. Supp. 2d at 732. In fact, in a similar case, the Seventh Circuit upheld a district court's decision to overturn the jury's verdict, entering judgment in favor of the non-prevailing party, where, among other things, counsel also tried to influence the jury's verdict by presenting inappropriate evidence and/or misconduct. *See Fuery v. City of Chicago*, 900 F.3d 450, 455-63 (7th Cir. 2018). Indeed, like in this case, where counsel tried to influence the jury's verdict with her highly emotional display of crying, **(PageID.6114)**, in *Fuery,* the Court found that counsel engaged "in improper lines of questioning intending to garner sympathy from the jury based on the plaintiffs' financial situations." *Fuery* 900 F.3d at 456.

Accordingly, Defendants respectfully ask this honorable Court to enter judgment in favor of Defendants and dismiss Plaintiff's deliberate indifference claims under § 1983.

## B. <u>Judgment as a Matter of Law</u>

### i. *Standard for Judgment as a Matter of Law*

A party may file a renewed Motion for Judgment as a Matter of Law following the jury's verdict where their prior Motion was under Fed. R. Civ. P. 50(a) was denied by the court. Fed. R. Civ. P. 50(b). The renewed Motion will be granted "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). And, in conducting its review, a court may not "reweigh the evidence or assess the credibility of witnesses," and the court's review is restricted to the evidence that was admitted at trial. *Id.*

Here, Defendants orally moved for a directed verdict under Fed. R. Civ. P. 50(a) at the close of Plaintiff's case-in-chief. **(ECF No. 226).** This motion serves as their renewed Motion for Judgment as a Matter of Law. Fed. R. Civ. P. 50(b).

ii.    *Counsel's Emotional Display Intentionally Influenced the Jury*

As part of Plaintiff's case-in-chief, Jones' brother was called to testify. This was the last witness Plaintiff called and it was right before the jury retired for Thanksgiving. **(PageID.6114-17).** Though counsel claimed she did not intend to cry in front of the jury, but rather, was moved by Jones' death, the Court admonished her actions – but did so outside the presence of the jury. **(PageID.6114, 6117).** In fact, the Court referred to counsel's crying as a display of "theatrics". **(Id.)** And even though the Court noted it was obvious counsel was intentionally crying, it failed to interrupt her while she was questioning Mr. Jones, and instead, let her carry on for roughly an hour, allowing Mr. Jones to cry in front of the jury as well. **(PageID.6122).** Yet, still, the Court refused to provide the jury with the limiting instructions defense counsel requested. Defendants are therefore entitled to judgment as a matter of law because "reasonable minds could come to but one conclusion", that counsel's emotional ploy – her "theatrics" – manipulated the jury's verdict. *See Sykes,* 625 F.3d at 305.

Federal courts have long condemned counsel's use of tactics aimed at preying on jurors' emotions and sympathies. *Williams v. Campbell*, 2016 U.S. Dist. LEXIS 161669 (E.D. Mich. Nov. 22, 2016). There, the Court acknowledged that it is inappropriate for counsel to attempt to inflame jurors by crying in front of them. *Id.* at *59. Still, the Court held that even though counsel had cried in front of the jury, the jury's verdict was not unduly prejudiced because the district court delivered a limiting instruction that jurors were not to let sympathy or prejudice influence their decision. *Id.*: *see e.g.*, *United States v. Neuhausser*, 241 F.3d 460, 469 (6th Cir. 2001)

(holding, as captured in the record, the court instructed the jury to decide the case based solely on the evidence presented—not on any inherent bias or emotion. We act under the assumption that jurors follow the instructions they receive."); *see also United States v. Solivan,* 937 F.2d 1146, 115 (6th Cir. 1991) (recognizing the significant prejudice where counsel's improper conduct is calculated to incite the passions and prejudices of jurors) (In the instant case, we examine closely the substance of the prosecutor's statements to determine whether they were calculated to inflame); *see e.g., Viereck v. United States,* 318 U.S. 236, 237-38 (1943) (finding counsel's remarks were intended to inflame the jury and were therefore considered inflammatory and prejudicial). The facts of this case are unique in that it is extremely rare that a trial attorneys cries in front of a jury for about one hour in full view of the court and no action is taken.

This Court acknowledged counsel's crying in front of the jury was intentional and designed to inflame the jurors. **(PageID.6114)** (admonishing counsel and instructing "[t]hose theatrics [i.e., crying] will not work."). But because the Court refused to deliver limiting instructions to the jury, instructing jurors not to decide the case based on their emotions or sympathies, the resulting prejudice from counsel's misconduct was not cured. *Cf. Clarksville-Montgomery County Sch. Sys. v. United States Gypsum Co*., 925 F.2d 993, 1002 (6th Cir. 1991) (holding prejudice can be cured by instructions from the court).

Even if this Court delivered a limiting instruction to the jury, curative/limiting instructions are insufficient where counsel's misconduct was persuasive, as in this case. *See Cleveland v. Peter Kiewit Sons' Co*., 624 F.2d 749, 756 (6th Cir. 1980). The Sixth Circuit clarified that "[i]n determining whether there is a reasonable probability that the verdict of a jury has been influenced by improper conduct, warranting that the verdict be set aside, a court must examine, on a case-by-case basis, the totality of the circumstances, including [1] the nature of the comments, [2] their

frequency, [3] their possible relevancy to the real issues before the jury, [4] the manner in which the parties and the court treated the comments, [5] the strength of the case (e.g. whether it is a close case), and [6] the verdict itself." (internal quotations omitted). *Id.*

Defendants are entitled to judgment as a matter of law because the totality of the circumstances makes it so that "reasonable minds could come to but one conclusion", that counsel's "theatrics" inappropriately influenced the jury's verdict. *See Sykes,* 625 F.3d at 305.

*First,* the nature of counsel's comments (i.e., her crying) were a highly emotional display of grief and sorrow. It is difficult to imagine something more emotionally fraught than someone uncontrollably crying. The situation was then further exacerbated when Jones' brother cried in response to counsel's crying. Counsel decided to deliver this emotional ploy in front of the jury right before they were discharged for Thanksgiving. This allowed the jury to mull over the incident while surrounded by their loved ones and family for the holidays. The Court itself recognized this was an intentional and calculated course of action by counsel. **(PageID.6114).**

*Second,* the frequency of counsel's crying must be considered. Because case law has analyzed whether comments from counsel were highly prejudicial and persuasive, rather than any type of action or behavior, this factor has been analyzed by the number of times counsel delivered inappropriate comments. *See e.g., Jimkoski v. State Farm Mut. Auto. Ins. Co.,* 247 Fed. Appx. 654, 662 (6th Cir. 2007) (finding two isolated instances where counsel made improper remarks during opening statements did not rise to the level of frequency required for a mistrial).

Even though the Court noticed counsel was crying intentionally, it permitted her to carry on questioning Mr. Jones for roughly an hour. **(PageID.6122).** Each tear she dropped and/or each rub of her eyes, was a new independent action adding to the frequency of her misconduct. The

Court confirmed the crying was continuous, which was then magnified by Jones' brother crying in response. **(PageID.6114-17).**

*Third,* the relevancy to the issues before the jury is of significant importance. Here, Counsel's crying in full view of the jury was calculated to be, and was, directly relevant to the issues the jury considered. Indeed, under 42 U.S. Code § 1988, Plaintiff was only entitled to survival damages for pain and suffer or wrongful death damages for the loss of companionship. 42 U.S. Code § 1988; *see Frontier Ins. Co. v. Blaty,* 454 F.3d 590, 598-604 (6th Cir. 2006). Therefore, this entire case was based on emotions given the jury had to analyze and consider Jones' and his estates' pain and suffering in awarded damages.

*Fourth,* the manner in which the parties and the court treated counsel's misconduct is a critical factor. The record demonstrates that both this Court and Defendants treated counsel's crying as highly consequential and serious. Indeed, this Court referred to counsel's crying as a display of "theatrics", while admonishing her outside the presence of the jury, and instructing her to quit crying going forward. **(PageID.6114).** Defendants also realized how consequential and serious counsel's behavior was and therefore requested the Court deliver a curative/limiting instruction to the jury so that their verdict was not inappropriately influenced by counsel's misconduct. This Court, however, refused to grant this request and did not deliver any limiting instruction to the jurors.

*Fifth,* this case was extremely close. In a case similar to this one, the Court found that fact the jury had deliberated for nearly two days in spite of counsel's prejudicial misconduct reflected the closeness of the case. *See Park W. Galleries, Inc. v. Global Fine Art Registry, LLC,* 732 F. Supp. 2d 727, 750 (E.D. Mich. 2010). Not only did the jury deliberate for two and a half days, but they also submitted five (5) or six (6) questions to the Court, including a question as to whether

11

they could resolve the case with a majority vote instead of a unanimous one. **(See ECF No. 243-1).** Further, even before the jury began deliberating, the Court dismissed a significant number of Plaintiff's claims on Summary Judgment, **(ECF No. 147),** before later dismissing even more claims following Defendant's oral motion for a directed verdict. **(ECF No. 226).** The jury also acquitted half of the Defendants on Plaintiff's deliberate indifference claims, further demonstrating this was an exceptionally close case. **(See ECF No. 243).** This is a case that, if fairly presented, is one that would cause the finders of fact to grapple with and debate. Indeed, the jury deliberated for approximately two full days in spite of counsel's unfairly prejudicial crying.

*Sixth,* the verdict itself further supports the jury was inappropriately influenced by counsel's misconduct. As discussed at length in the previous section, the jury's verdict stands against the weight of the evidence in this case, and quite frankly, is not possible given the facts of this case. That is, the jury found Nurse Furnace's and Mollo's conduct prior to 5:00 am on April 27, 2018, was not a proximate cause of Jones' death. **(PageID. 5680-84).** Further, as discussed, Goetterman was also not a proximate cause of Jones' death for conduct that occurred prior to 5:00 am because he only became involved with Jones after 5:00 am on that same day. **(PageID.3248).** Equally important, both Plaintiff's and Defendant's experts testified that Jones' was certain to die following 5:00 am on April 27, 2018, if he had not already been transported to a hospital. **(PageID.5057, 5061).** This means that Furnace, Mollo, and Goetterman were also not a proximate cause of Jones' death for any of their decisions and/or conduct occurring after 5:00 am on April 27th. Nonetheless, the jury still somehow found that Furnace, Mollo, and Goetterman were deliberately indifferent and therefore a proximate cause of Jones' death. **(PageID. 5674-**

**79)**; *see also Horn,* 22 F.3d at 659 (holding "a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury.").

Crucially, the likely explanation for the jury's impossible verdict is that it was inappropriately influenced by counsel's uncontrollable crying, which also caused Jones's brother to cry as well. *See e.g., Park W. Galleries, Inc.,* 732 F. Supp. 2d at 750 (holding the jury's verdict must be discounted because of counsel's misconduct which "so obfuscated the admissible evidence introduced at trial that it is likely that the jury's decision was based, at least in part, on such improper, inflammatory and unfairly prejudicial information rather than solely on the admissible evidence.").

Defendants respectfully ask this Court to hold that Nurse Furnace, Mollo, and Goetterman were not deliberately indifferent under Plaintiff's §1983 claims.

*iii.  Sufficient Proximate Cause Does Not Exist to Sustain a Deliberate Indifference Verdict*

Where a plaintiff seeks an award of damages under § 1983, he must prove that the defendant was a proximate cause of his injury. *See Horn v. Madison County Fiscal Court,* 22 F.3d 653, 659 (6th Cir.), *cert. denied,* 115 S. Ct. 199 (1994) ("[A] violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury.").

Whereas, here, the alleged injury results from inadequate care rather than a complete denial of medical treatment, the plaintiff "must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)); *see also Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976) (holding "[where] a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally

reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

Plaintiffs sought damages (**ECF No. 1**); therefore, they had the burden of proving each individual Defendant proximately caused Jones' death, and that each Defendants actions were "so woefully inadequate as to amount to no treatment at all". *Horn,* 22 F.3d at 659; *Mitchell,* 553 F. App'x at 605. Because Plaintiffs failed to prove each Defendant was a proximate cause of Jones' death, Defendants are entitled to judgment as a matter of law on all Plaintiff's deliberate indifference claims. *Judgment,* 625 F.3d at 305 (Judgment as a matter of law is appropriate where reasonable minds could come to but one conclusion in favor of the moving party).

   a.   A Finding of Proximate Cause is impossible in light of both Plaintiff and Defendant
        Expert Testimony

As part of Plaintiffs' case-in-chief, Dan Fintel, M.D., ("Dr. Fintel"), their only proximate cause witness was asked "Do agree with this statement, in your medical opinion that his condition become irreversible where death was certain to occur at 5:00 a.m. in the morning?". (**PageID.5057**). Dr. Fintel answered "Yes. We discussed that in my deposition in terms of when his condition at the jail was irreversible." (**Id.**) (later confirming Jones' condition became irreversible after 5:00 am on April 27, 2018).

Both of Defendants' proximate cause experts had similar opinions that death was certain to occur. Bryan Williamson, M.D., (hereinafter "Dr. Williamson"), testified that Jones had a ninety-five percent (95%) probability of dying after 5:00 am on April 27, 2018, and a five percent (5%) probability of being in a vegetative state, exactly like what ended up occurring. Defense expert Edward A Journey, M.D. testified Mr. Jones was certain to die after 5:00 a.m. The Court accepted the opinions of the experts and dismissed all Plaintiff's medical malpractice claims relating to Defendants' conduct after 5:00 am because Jones had less than a fifty percent (50%)

chance of surviving. **(PageID.5680-84); (PageID.5057, 5061);** see Mich. Comp. Laws § 600.2912a(2)). Therefore, the only medical malpractice claims the jury decided were solely related to Defendants' conduct that occurred prior to 5:00 am on April 27, 2018.[2] **(See ECF No. 226); (see also PageID. 5680-84).** The Court denied defense counsel's motion to dismiss the deliberate indifference claims based on the same testimony that death was certain to occur.

On December 2, 2022, the jury returned its verdict on the remaining medical malpractice claims, finding none of the Defendants' conduct prior to 5:00 am proximately caused Jones' death, including both Nurse Furnace and Mollo.[3] **(PageID. 5680-84).** This means that the jury must have found Furnace, Mollo, and Goetterman were deliberately indifferent and thus a proximate cause of Jones' death for their conduct after 5:00 am. **(Id. at 5674-79).**

In *Blackmore,* the Sixth Circuit observed that where the need for medical care is not obvious and there is a delay in treatment, as in this case, **(PageID.5899-5902),** then "medical proof is necessary to assess whether the delay caused serious medical injury." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004) (citation omitted). Where the seriousness of the plaintiff's medical need is not obvious to a layperson, then the plaintiff must prove that defendants' actions caused their purported serious medical injury. *See id.*; see also **(PageID.5900).**

Reviewing the inconsistency in the verdict, the jury must have found Furnace, Mollo, and Goetterman deliberately indifferent and a proximate cause of Jones' death for their conduct after 5:00 am. However, such a finding is not possible on the record because both Plaintiff's and

---

[2] The Court dismissed the medical malpractice claims against Defendant Goetterman because his involvement only began after 5:00 am on April 27, 2018. **(ECF No. 147, PageID. 3248).** The Court also dismissed the medical malpractice claim against Nurse Furnace, specifically for her conduct that occurred after 5:00 am on the same day. **(ECF No. 226, PageID.5068).**

[3] As mentioned, the Court dismissed the medical malpractice claim against Nurse Goetterman because his conduct only related to conduct that occurred after 5:00 am on April 27, 2018, when Jones' condition was irreversible and his death was certain. **(ECF No. 147, PageID.3248).**

Defendant's experts testified that Jones was certain to die after 5:00 am on that same day. **(PageID.5057, 5061).**

Under these undisputed facts, when the evidence is viewed in a light most favorable to the Plaintiffs, Defendants are entitled to judgment as a matter of law because "reasonable minds could come to but one conclusion", that Furnace, Mollo, and Goetterman were not a proximate cause of Jones' death. *See Sykes,* 625 F.3d at 305; *see e.g., Jefferson County v. Lindsay,* 1997 U.S. App. LEXIS 27133 (6th Cir. Sept. 29, 1997) (holding the jury's verdict against local government bodies could not stand because the presented evidence did not establish a causal link between prisoner's injuries and purported custom of tolerating police officers' inmate abuse and disrespect for homosexuals).

The individual conduct of the Defendants must be considered independently. Even if this Court considers Nurse Furnace's, Mollo's, and Goetterman's conduct following 5:00 am on April 27, 2018, despite both experts testifying there was no proximate cause because Jones was certain to die, **(PageID.5057, 5061)**, Defendants should still be entitled to judgment as a matter of law regarding Plaintiff's §1983 claims. That is, the record before this Court does not support Furnace's, Mollo's, or Goetterman's conduct after 5:00 am was a proximate cause of Jones' death, such that "reasonable minds could come to but [this] one conclusion". *See Sykes,* 625 F.3d at 305.

1. *Nurse Furnace*

At trial, Nurse Furnace testified she called NP Sherwood at 5:30 am on April 27th and that Sherwood instructed her to bring Jones to KCCF's infirmary rather than a hospital. Furnace had no further involvement after 5:30 am. Sherwood's testimony confirmed this. Yet even though it was Sherwood, NP who was responsible for deciding to send Jones to the infirmary, the jury found that Furnace was deliberately indifferent for this decision and was a proximate cause of Jones'

death but found Sherwood, NP was not. **(PageID. 5674-79).** Ms. Sherwood, NP was the provider who ordered the treatment. If Sherwood, NP was not deliberately indifferent and was not a proximate cause of Jones' death, then Furnace, who simply followed Sherwood's instructions, cannot be a proximate cause of Jones' death. *See e.g., Jefferson County,* LEXIS 27133, at \*15 (finding jury's verdict could not stand because plaintiff failed to establish a causal link between his injuries and defendants' customs and actions). Ms. Furnace took no other action before he shifted ended (6 a.m.) than to ensure Mr. Jones' was transferred to the infirmary at or before 6 a.m. when her shift ended.

2.  *Nurse Mollo*

Following 5:00 am, Nurse Mollo's conduct solely relates to when Jones loses consciousness at 7:39 am on April 27th. **(PageID.3221-22, 3239)** (noting "Nurse Mollo gave Jones his medication on April 26. Plaintiff argues that Mollo did not conduct an adequate withdrawal check because he did not take Jones's vital signs; however, that conduct does not amount to deliberate indifference."). Goetterman called Mollo for assistance. The jail video confirms Mollo promptly appeared and began chest compressions relieving Goetterman. Mollo continued chest compressions until EMS arrived and relieved him. Goetterman was the RN in charge, Mollo is an LPN. Mollo did what he was instructed to do, and no one testified the chest compressions were performed in a deficient manner. It is difficult to imagine how the jury could find Mollo was a proximate cause of Jones' death given his limited involvement administering chest compressions after 5:00 am. All experts testified he was certain to die. Therefore, Mollo's actions or inactions did not proximately cause Mr. Jones' death

3.  *Nurse Goetterman*

Nurse Goetterman's involvement solely pertains to his conduct after 5:00 am on April 27, 2018. Specifically, he and Deputy Houston found Jones unconscious in a bathroom stall. **(Id.).** Goetterman started performing chest compressions on Jones before Mollo appeared and helped. **(Id.).** Both Goeterrman and Mollo continued to administer chest compressions to Jones but did not perform rescue breaths. **(Id.).** Instead, Goetterman prepared the AED and applied it to Jones' chest before also applying the bag valve mask at around 7:49 am. **(Id.)** based on the testimony of all experts there is nothing Goetterman did or did not do that caused Mr. Jones' death. All experts testified he was certain to die. Therefore, Goetterman's actions or inactions did not proximately cause Mr. Jones' death

Though Goetterman did not perform rescues breaths, he could not have been deliberately indifferent and a proximate cause of Jones' death because he was simply following the custom and training at KCCF, in that medical staff are trained not to perform mouth-to-mouth resuscitation during CPR due to the risk of contracting infectious diseases. **(PageID.3224);** *see Jefferson County,* LEXIS 27133, at *15 (finding jury's verdict could not stand because plaintiff failed to establish a causal link between his injuries and defendants' customs and actions

If, however, the Court is not convinced and believes the jury could found Nurse Furnace, Mollo, and Goetterman deliberately indifferent because of their conduct prior to 5:00 am (while still acquitting both on the medical malpractice claims also related to their conduct prior to 5:00 am), Defendants are still entitled to judgment as a matter of law given these two inconsistent jury verdicts.[4] *See Hopkins v. Coen,* 431 F.2d 1055, 1059 (6th Cir. 1970) (holding "…where verdicts in the same case are inconsistent on their faces, indicating that the jury was either in a state of

---

[4] The jury could only consider Goetterman's conduct following 5:00 am on April 27, 2018, because he was not involved prior to this time frame. (ECF No. 147, PageID.3248). However, the jury's verdict is still inconsistent with both Plaintiffs' and Defendants' experts who testified there was no proximate cause after 5:00 am given Jones was certain to die. (ECF No. 223, PageID.5057, 5061).

confusion or abused its power, a motion to alter or amend a judgment, for new trial, or for relief from the judgment, if timely made, [must be granted and] is not discretionary." (citation omitted)); *see e.g., Kosmynka v. Polaris Indus.,* 462 F.3d 74 (2d Cir. 2006) (holding the jury's verdict could not stand because it was inconsistent in finding a manufacturer was negligent but that there was no design or warning defect in the vehicle).

Accordingly, Defendants respectfully ask this Court to hold that Nurse Furnace, Mollo, and Goetterman were not deliberately indifferent under Plaintiff's §1983 claims.

iv.    *Alternatively, Under 42 U.S. Code §1988, Plaintiffs Should Only Be Awarded Damages For Pain and Suffering and No Damages Should Be Awarded Pursuant to the Michigan Wrongful Death Statute: MCL 600.2922*

Section 1988 sets damages for claims brought under § 1983. 42 U.S. Code § 1988. The statute allows a plaintiff to recover survival damages and when supported by state law for plaintiff's estate to recover damages for wrongful death. Id.; *see Frontier Ins. Co.,* 454 F.3d at 598-604. Michigan allows for certain heirs to bring a cause of action for wrongful death. *Id.*

If the Court denies Defendants motion for judgement as a matter of law for Plaintiff's §1983 claims, including those against Nurse Furnace, Mollo, and Goetterman, Plaintiff should only be awarded survival damages for Jones' pain and suffering under 42 USC § 1988.

Returning to Plaintiff's and Defendants' experts, both agree that Jones' condition became irreversible, where he was certain to die following 5:00 am on April 27, 2018. **(PageID.5057, 5061).** This means that Furnace's, Mollo's, and Goetterman's conduct after 5:00 am on April 27, 2018, was not a proximate cause of Jones' death. See Mich. Comp. Laws § 600.2912a(2).

At the same time, the jury found that Furnace's and Mollo's conduct prior to 5:00 am was not a proximate cause of Jones' death either. **(PageID.5680-84).** And, of course, Goetterman was only involved following 5:00 am, and so he cannot be responsible for any actions taken prior to 5:00

am on April 27, 2018. **(PageID.3248)**. This also means that Furnace, Mollo, and Goetterman cannot be a proximate cause of Jones' death for conduct occurring prior to 5:00 am on April 27, 2018.

Given the absence of this causal link between Jones' death and Furnace's, Mollo's, and Goetterman's actions, prior to and following 5:00 am, the jury may have found these Defendants were a proximate cause of something besides Jones' death, such as his pain and suffering. The jury, however, awarded 3.4 million dollars in damages to Jones' estate for loss of companionship (400k for present and 3 million for future), **(PageID.5677),** which are only awarded where a defendant was a proximate cause of plaintiff's death. MCL 600.2922, Death by Wrongful Act states, "(1) Whenever the death of a person, injuries resulting in death, or death as described in section 2922a *shall be caused by* (emphasis added) wrongful act, neglect, or fault of another, and the act, neglect, or fault…" Under Michigan Wrongful Death statute, there *MUST* be a causal link between the alleged action or indication that proximately caused the death. The Michigan Supreme Court in *Estate of Shinholster v. Annapolis Hosp., 471 Mich. 540, 573* held, defendants conduct must be "a proximate cause" of plaintiff's death. All experts agree, Mr. Jones was certain to die after 5 am; therefore, no action or inaction of defendants Frunance, Mollo and Goetterman could have a causal condition to death such that the act or inactions *CAUSED* the death.

Accordingly, Defendants respectfully ask this Court to hold that Plaintiffs are only entitled to the 3 million dollars the jury awarded for Jones' pain and suffering (42 USC § 1988 damages) and not the 3.4 million dollars awarded under the Michigan Wrongful Death statute.

### C.  <u>New Trial</u>

In the Sixth Circuit, "[a] new trial is warranted when a jury reaches a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages

being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Balsley v. LFP, Inc*., 691 F.3d 747, 761 (6th Cir. 2012) (citing *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996)).

i.  *Counsel's Misconduct: Crying Before the Jury*

Counsel previously outlined the grievance conduct of plaintiff counsel uncontrollably crying before the jury for approximately one hour with full knowledge of the court. Where a party moves for a new trial based on allegedly improper comments made by counsel, the Sixth Circuit analysis is based on the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g., whether it is a close case), and the verdict itself. *Id.; see also Peter Kiewit Sons' Co*., 624 at 756.

If it is determined that counsel made improper comments, a court may set aside the jury's verdict only "if there is a reasonable probability that the verdict of the jury has been influenced by such conduct." *Peter Kiewit Sons' Co*., 624 F.2d at 756. This Court developed an extensive record outlining the grievance conduct of counsel, in full view of the jury, that can only be explained by an intentional act of showmanship to persuade the jury before Thanksgiving break to have great sympathy for plaintiffs. The failure to highlight the conduct and instruct the jury to specifically disregard the conduct, was a clear judicial error and allowed the jury to conclude such conduct was permissible and could be considered during deliberations. After all, the court watched the open/outrageous display of sympathy by counsel for approximately one hour and did nothing to stop it.

Federal courts have condemned counsel's use of tactics intended to draw an emotional response from jurors. *Williams,* LEXIS 161669, at *56-60 (holding it is inappropriate for counsel

to attempt to inflame jurors by crying in front of them). And, whereas here, a court fails to provide the jury with a limiting instruction to cure counsel's emotionally charged misconduct, the potential for prejudice is great. *Cf. Id.*: *see e.g., Neuhausser,* 241 F.3d at 469 (finding a curative and limiting instruction can mitigate potential prejudice a defendant would otherwise face). But, even where curative/limiting instructions are delivered to the jury, such instructions are incapable of resolving prejudice where counsel's misconduct was persuasive, as in this case. *See Peter Kiewit Sons' Co.,* 624 F.2d at 756. Indeed, under the six (6) factors analyzed above, it is clear that counsel's misconduct, where she cried in front of the jury, causing Jones' brother to cry as well, was emotionally charged and highly persuasive, thereby influencing the jury's verdict.[5] Defendants were therefore prejudiced and received an unfair trial, requiring that they be awarded a new trial. *See Balsley,* 691 F.3d at 761.

Accordingly, Defendants respectfully ask this Court to order a new trial for Plaintff's § 1983 claims against Nurse Furnace, Mollo, and Goetterman.

ii. *Jury Foreman Failed to Disclose His prior Arrest and Conviction*

On *voir dire,* defense counsel inquired whether any potential jurors, or their relatives, had been arrested or incarcerated. **(PageID.5842).**[6] While the juror in seat number three was responsive and answered that he has a nephew who was in prison for a long period of time, **(Id.),** the jury foreman, Mr. Sharma, failed to disclose that, in 2001, he was arrested for breaking an entering, charged with a felony, more likely than not pled guilty, and was placed on probation for 2 years

---

[5] As argued above, this prejudicial effect counsel's misconduct had is clearly evidenced by the fact that the jury's verdict is not possible – and inconsistent on its face – given the lack of proximate cause discussed at length.

[6] Have any of you had a family member, and let's not -- a close family member. We don't have to go to fifth cousins and sixth cousins that may have been incarcerated. Let's say first with Kent County jail? Any jails in the state of Michigan? How about been arrested and maybe put in jail for overnight or something like that? Juror number eight. (ECF No. 246, PageID.5842).

through the Michigan Department of Corrections.[i] **(Id. at 5867-71).** Though it appears the records related to Mr. Sharma's conviction have been destroyed.

In the Sixth Circuit, there are two ways in which a party seeking a new trial based on a juror's concealment of information can obtain a new trial. *See United States v. Ruiz Solorio*, 337 F.3d 580, 595 (6th Cir. 2003). First, if a juror deliberately conceals material information on *voir dire*, the party seeking a new trial can obtain relief by showing the juror could have been challenged for cause. *Id.*; *see Zerka v. Green,* 49 F.3d 1181, 1185 (6th Cir. 1995) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 555-56 (1984) ("We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause."). This is known as the *McDonough* test, and in such cases, "bias may [but need not] be inferred." *See Zerka*, 49 F.3d at 1186.

Yet, it is possible that a juror could have concealed information in a non-deliberate fashion, through an honest, though mistaken, response. *Ruiz Solorio,* 337 F.3d at 595-96. In such cases, where information is not deliberately concealed, bias may not be inferred, and instead, "the movant must show actual bias" to obtain a new trial. *Id* (citing *Zerka,* 49 F.3d at 1186).

Here, as soon as Defendants learned that the jury foreman, Mr. Sharma, failed to disclose his prior arrest and conviction, they began delving into further research to raise this issue in this motion.[7] *See United States v. French,* 904 F.3d 111, 114-15, 118-20 (1st Cir. 2018) (holding defense counsel had not waived juror misconduct argument where they brought it to the attention of the court shortly after sentencing but immediately after discovering the issue).

---

[7] Unfortunately, this was complicated by the fact that it appears Mr. Sharma's records related to his arrest and conviction and/or probation have been destroyed.

After investigating the issue further, Defendants believe it is evident that Mr. Sharma intended to conceal his prior arrest and conviction to evade detection and serve as a member on the jury. This is supported by Mr. Sharma's enthusiastic and overwhelming involvement, where he not only served as a member of the jury but fulfilled the focal role of jury foreman. Moreover, even if Plaintiffs were to argue that Mr. Sharma was not aware he was not allowed to serve on a jury because he was convicted of a felony and his civil rights had not been restored, 28 U.S. Code § 1865(b)(5); Mich. Comp. Laws § 600.1307a(e), defense counsel's question specifically inquiring as to whether any juror, or their relatives, had been arrested or convicted of a felony, **(PageID.5842),** should have prompted Mr. Sharma to answer affirmatively. *See Jackson v. Ala. State Tenure Comm'n,* 405 F.3d 1276, 1288 (11th Cir. 2005) (holding juror should have disclosed prior felony conviction where counsel directly questioned them but failed to do so intentionally). Being especially generous, even if that was not sufficient to alert Mr. Sharma that he needed to disclose his prior arrest and conviction, the fact that the juror in seat three proceeded to answer the question should have resolved any remaining doubt and Mr. Sharma should have answered counsel's question candidly. **(PageID.5842).**

Because Mr. Sharma deliberately intended to conceal his prior arrest and conviction, Defendants should be awarded a new trial if they satisfy the second requirement under the *McDonough* test, requiring a showing that an honest answer by Mr. Sharma would have provided Defendants with a basis to challenge for cause. S*ee Zerka v. Green,* 49 F.3d at 1185.

Here, the second requirement of the *McDonough* test is satisfied because a pending, or final felony conviction is a valid basis for challenging a juror for cause. *See United States v. Carpa*, 271 F.3d 962, 967 n.5 (11th Cir. 2001) (per curiam) ("A pending or final felony conviction is a valid basis for challenge for cause."); *see also Jackson,* 405 F.3d at 1288; *see* 28 U.S.C. § 1865(b)(5).

24

What's more, the Sixth Circuit has long held that a party is entitled to challenge a juror for cause where they are partial and likely biased. *Williams v. Bagley, 380 F.3d 932, 953* (6th Cir. 2004) (quoting Wainwright v. Witt, 469 U.S. 412, 424 (1985) ('[t]his Court has explained that, "[a]s a general rule, a defendant may excuse a juror for cause if 'the juror's views would prevent or substantially impair the performance of h[er] duties as a juror in accordance with h[er] instructions and h[er] oath.'"); s*ee e.g., English v. Berghuis,* 900 F.3d 804 (6th Cir. 2018). The Michigan Court Rules also set forth grounds to challenge jurors for cause, including where a prospective juror "is biased for or against a party or attorney," M.C.R. 2.511(D)(2), "shows a state of mind that will prevent the person from rendering a just verdict," id., 2.511(D)(3), or "has opinions . . . that would improperly influence the person's verdict," id., 2.511(D)(4). *See English,* 900 F.3d at 817.

In this case, it is clear how someone, like Mr. Sharma, who had a negative experience with law enforcement and the judicial system, wherein he was arrested and convicted for breaking and entering, could be biased and partial to the Plaintiffs' decedent Jones. This is especially true in this case given the emotional outburst counsel and Jones' brother exhibited, crying in front of the jury. **(PageID.6114).**

Both requirements under the *McDonough* test are therefore satisfied and Defendants should be awarded a new trial in light of Mr. Sharma's failure to disclose his prior arrest and conviction.

Nonetheless, if the Court disagrees and finds that Mr. Sharma falls under the second category of juror identified by the Sixth Circuit – a juror who conceals information in a non-deliberate fashion, perhaps, as a mistake, *Ruiz Solorio,* 337 F.3d at 596 – where Defendants must show actual bias to obtain a new trial, this Court should order an evidentiary hearing to determine whether Mr. Sharma did in fact intentionally fail to disclose his prior arrest and conviction. *See e.g., Torres v. First Transit, Inc*., 979 F.3d 876 (11th Cir. 2020) (vacating judgment and remanding

case to district court for an evidentiary hearing on jurors' alleged misconduct where the jurors affirmatively concealed their litigation histories); *see also United States v. Boney*, 977 F.2d 624, 634 (D.C. Cir. 1992) (remanding to district court for an evidentiary hearing and recognizing while a "juror's felon status does not by itself require a new trial, we think the juror's failure to disclose his status in response to the *voir dire* examination presents *serious* added concerns.")[8]; *see also Jackson,* 405 F.3d at 1288 (finding juror's nondisclosure of her prior felony conviction despite direct questioning on *voir dire* was intentional and dishonest).

Defendants respectfully ask this Court to either order a new trial for Plaintiff's § 1983 claims against Nurse Furnace, Mollo, and Goetterman or, alternatively, hold an evidentiary hearing to further investigate the jury foreman's failure to disclose his prior arrest and conviction.

*iii. Plaintiff's Deliberate Indifference Claims Were Not Supported by Proximate Cause*

Defendants will rely on the discussion of proximate cause from the previous section of this brief arguing for judgment as a matter of law. If, however, the Court is reluctant to grant Defendants judgment as a matter of law pursuant to Fed R. Civ. P. 50(b), then, in the alternative, Defendants respectfully request this Court grant a new trial.

As discussed, both the Supreme Court and the Sixth Circuit have clearly held that the standard for deliberate indifference is greater than that of causes rooted in negligence (i.e., medical malpractice). *See Stevens v. Gooch,*  615 Fed. Appx. At 360 (2015); *see also Global-Tech Appliances, Inc.,* 563 U.S. at 769. Given this heightened standard for deliberate indifference, it is not possible for the jury to find that Furnace's and Mollo's conduct before 5:00 am was not a

---

[8] The Court added "[a]fter all, lying or failing to disclose relevant information during *voir dire* itself raises substantial questions about the juror's possible bias. While refusing to adopt a per se rule requiring a new trial in United States v. North, 285 U.S. App. D.C. 343, 910 F.2d 843 (D.C. Cir. 1990), cert. denied, 114 L. Ed. 2d 477, 111 S. Ct. 2235 (1991), we recognized the seriousness of a juror's deliberate concealment of relevant information during *voir dire." Boney,* 977 F.2d at 634.

proximate cause of Jones' death under professional negligence, **(ECF. 243),** but at the same time, conclude they were deliberately indifference because of their conduct was a proximate cause under Plaintiff's § 1983 claims. And, as mentioned, given that Goetterman's involvement only related to his conduct after 5:00 am, the jury also could not have found he was a proximate cause of Jones' death for conduct prior to 5:00 am on April 27th. **(PageID.3248).**

Similarly, given that both Plaintiffs' and Defendants' experts agreed that Jones was certain to die after 5:00 am on April 27, 2018, Furnace's, Mollo's, and Goetterman's conduct after 5:00 am could not have proximately caused Jones' death either. **(PageID.5057, 5061).** Therefore, this means that the jury could not have found any of these defendants deliberately indifferent for any of their actions or decisions after 5:00 am. *See Horn,* 22 F.3d at 659 (confirming that where damages are sought a violation of a federally secured right requires proof that the violation proximately caused the alleged injury).

This Court should therefore grant Defendants a new trial because the jury's verdict finding Nurse Furnace, Mollo, and Goetterman deliberately indifferent under § 1983 was a 'seriously erroneous result' given that the verdict is against the weight of the evidence presented at trial. *See Balsley,* 691 F.3d at 761.

If the Court remains unconvinced the jury's verdict is premised upon Furnace's and Mollo's conduct prior to 5:00 am, notwithstanding the jury finding no cause of action for medical malpractice, a much lower standard of care **(ECF No. 243),** a new trial should still be granted given these two jury verdicts are inconsistent on their face. *See Hopkins,* 431 F.2d at 1059 (holding where verdicts are inconsistent on their face a motion for a new trial must be granted); *see e.g., Kosmynka,* 462 F.3d at 83-87.

If, however, the Court is unwilling to grant a new trial on Plaintiff's § 1983 claims, as argued above, Defendants should, at the very least, be entitled to a new trial for the 3.4 million dollars in damages awarded to Jones' estate pursuant to the Michigan Wrongful Death act for the loss of companionship ($400 thousand for present damages and $3 million for future damages) is impossible for Plaintiff to prove Defendants were a proximate cause of Jones' death after 5 am. **(PageID.5677);** see *Viches v. MLT, Inc.,* 1095, 1098 124 F. Supp. 2d 1092 (E.D. Mich 2000) (finding defendant was a proximate cause of decedent's' death for damages related to loss of companionship/consortium); *see Acuity Mut. Ins. Co. v. Frye,* 471 Fed. Appx. 431 (6th Cir. 2012) (holding defendant was entitled to a new trial on issue of damages given that there was no evidence in the record to support the damages awarded by the jury).

Accordingly, Defendants respectfully ask this Court to either order a new trial for Plaintiff's § 1983 claims against Nurse Furnace, Mollo, and Goetterman, or, alternatively, a new trial on the $3.4 million dollars of damages awarded for loss of companionship.

## IV.    CONCLUSION

For the foregoing reasons, this Court should adopt the appropriate remedies described throughout.

1.    Dismiss Plaintiff's Deliberate Indifference Claims under §1983 given counsel's "contumacious conduct/flagrant abuse".

2.    Enter a judgment as a matter of law based on counsel's intentional misconduct of crying in front of the jury, and/or failure to establish proximate cause for actions after 5:00 a.m.

3.    Grant a new trial based on the jury foreman's failure to disclose his prior arrest and conviction, and sentence and/or Defendants were not a proximate cause of decedent's death.

4.    Reduce, the award to eliminate wrongful death damages for the reasons stated herein.

28

Respectfully submitted,
CHAPMAN LAW GROUP

Dated: December 30, 2022          */s/Ronald W. Chapman, Sr.*
Ronald W. Chapman Sr., M.P.A.,
LL.M. (P37603)
Devlin Scarber (P64532)
Attorneys for Corizon Defendants
1441 West Long Lake Rd., Suite 310
Troy, MI 48098, (248) 644-6326
rchapman@chapmanlawgroup.com
dscarber@chapmanlawgroup.com

## PROOF OF SERVICE

I hereby certify that on December 30, 2022, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein and I hereby certify that I have mailed by US Postal Service the document to the involved non-participants.

*/s/Ronald W. Chapman, Sr.*
Ronald W. Chapman Sr., M.P.A.,
LL.M. (P37603)
1441 West Long Lake Rd., Suite 310
Troy, MI 48098, (248) 644-6326
rchapman@chapmanlawgroup.com