**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

CHARLES JONES, as Personal Representative
of the Estate of Wade Jones, Deceased,

                                                Case No: 1:20-cv-36

                                      Hon. Judge Hala Y. Jarbou
      Plaintiff,                    Magistrate Judge Sally J. Berens

v.

COUNTY OF KENT et al.

      Defendants.

---

| | |
|---|---|
| BUCKFIRE LAW FIRM<br>Jennifer G. Damico (P51403)<br>Sarah L. Gorski (P82899)<br>*Attorneys for Plaintiff*<br>29000 Inkster Rd., Ste. 150<br>Southfield, MI 48034<br>(248) 569-4646<br>jennifer@buckfirelaw.com<br>sarah@buckfirelaw.com | CHAPMAN LAW GROUP<br>Ronald W. Chapman Sr., M.P.A.,<br>LL.M. (P37603)<br>Devlin Scarber (P64532)<br>*Attorneys for Corizon Health, Inc.; Teri Byrne, R.N.;*<br>*Dan Card, L.P.N.; Lynne Fielstra, L.P.N.; Melissa*<br>*Furnace, R.N.; Chad Richard Goetterman, R.N.;*<br>*James August Mollo, L.P.N.; Joanne Sherwood, N.P.;*<br>*and Janice Steimel, L.P.N.*<br>1441 West Long Lake Rd., Suite 310<br>Troy, MI 48098<br>(248) 644-6326<br>rchapman@chapmanlawgroup.com<br>dscarber@chapmanlawgroup.com |

**CORIZON DEFENDANTS REPLY IN SUPPORT OF THEIR MOTION FOR**
**JUDGMENT AS A MATTER OF LAW AND/OR MOTION FOR A NEW TRIAL**

**STATEMENT OF THE REPLY ISSUES**

I. Should Defendants' Motion for New Trial be Granted Since the Foreman Failed to Honestly Answer a Material Question During *Voir Dire* for which Defendant Could Have Challenged for Cause?

**Defendants' answer: Yes.**
**Plaintiff's answer: No.**

II. Should Defendants' Motion for Dismissal, Judgment as a Matter of Law and/or New Trial Based Upon Plaintiff's Counsel's Misconduct During the Examination of Brian Jones be Granted?

**Defendants' answer: Yes.**
**Plaintiff's answer: No.**

III. Should Defendants' Motion for Judgment as a Matter of Law and/or New Trial be Granted Because a Reasonable Jury Could Not Find that Defendants' Were a Proximate Cause of Plaintiff's Injuries, Damages, and Death?

**Defendants' answer: Yes.**
**Plaintiff's answer: No.**

**ARGUMENT**

Plaintiff starts by arguing because Defendants failed to raise counsel's misconduct in their oral motion for a directed verdict under Rule 50(a), their renewed Motion for Judgment as a Matter of Law under 50(b) cannot raise this issue. **(ECF No. 281, PageID.8484)**. Defendants, however, raised the issue of counsel's crying many times at trial, and even requested a limiting instruction. **(ECF No. 274, PageID.8181)**. This was a known issue. It was therefore preserved. *See Kay v. United of Omaha Life Ins. Co.,* 709 Fed. Appx. 320, 328 (6th Cir. 2017) ("Courts usually take a liberal view of what constitutes a pre-verdict motion sufficient to support a post-verdict motion…" (internal quotations and citations omitted)).

For the reasons argued below, the Court should dismiss Plaintiff's claims, or grant Defendants' Motion for Judgment as a Matter of Law and/or New Trial.

**A. DEFENDANTS ARE ENTITLED TO A NEW TRIAL BECAUSE THE FOREMAN FAILED TO HONESTLY ANSWER A MATERIAL QUESTION DURING *VOIR DIRE***

Plaintiff argues Defendants' Motion for a New Trial should be denied because they cannot prove Akash Kumar Sharma's ("Mr. Sharma") failure to disclose his prior felony conviction resulted in actual bias at trial. **(See ECF No. 281, PageID.8522)**. Plaintiff is mistaken.

Defendants conducted a search on LEXIS and found Mr. Sharma was arrested for breaking and entering in 2001. **(ECF No. 258, PageID.8523)**. The Michigan Department of Corrections confirmed Mr. Sharma was placed on probation for two (2) years. *Id.* Mr. Sharma was therefore disqualified from serving as a juror. *Id.* at 6180.

Plaintiff argues, though, the "very same LEXIS report shows that [] [Mr. Sharma] purportedly voted in the past two elections: 2016 and 2020, demonstrating that his voting rights

may have been restored." (**ECF No. 281, PageID.8523 n.9**). Plaintiff therefore contends Defendants cannot demonstrate Mr. Sharma was disqualified to serve as a juror. *Id*. at 8523. This report, however, does not confirm Mr. Sharma's voting rights were reinstated. Rather, it only confirms Mr. Sharma voted in 2016 and 2020. People who have not had their voting rights restored nonetheless vote in elections.

Mr. Sharma also failed to disclose his prior arrest for breaking and entering back in 2001 after asked by defense counsel. (**ECF No. 258, PageID.6196-97**). Though Plaintiff argues counsel's question only inquired as to whether Mr. Sharma's family members were arrested or convicted, any sensible juror would interpret the question to include whether they *personally* were arrested or convicted.[1] *See McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 555-56 (1984) (holding the right to an impartial jury is protected by *voir dire* examination, which is intended to expose biases). Indeed, a juror would be similarly biased whether it was a family member who was convicted or themselves. *See United States v. Carpa*, 271 F.3d 962, 967 n.5 (11th Cir. 2001) (per curiam); *Boyd v. Jones,* 2018 U.S. Dist. LEXIS 110889, at *41 (S.D. Fla. July 3, 2018) (affirming juror's failure to disclose felony conviction was material question on *voir dire*).

Juror bias is also implied "when there are similarities between the personal experiences of the juror and the issues being litigated." *See Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 517 (10th Cir. 1998).

---

[1] The question clearly asked the witness whether someone "close" to him had been arrested or put in jail, certainly implying himself. He was asked if he had ever been a witness in a case, to which he answered "no." (**ECF. No. 265, PageID.6406**). He was also asked: "Is there is anything that sticks out in your mind that you think we should know about?" He answered "No." *(Id.)* This was the time to be honest and forthright, letting the court know that he was arrested himself and a witness in his own case.

3

| **Jones** | **Sharma** |
|---|---|
| Arrested for crime involving theft | Arrested for crime commonly involving theft |
| Convicted of retail fraud | Convicted of breaking and entering |
| Sentenced to jail | More likely than not spent some time in jail |
| Likely put on probation following release | Put on probation for two (2) years |
| Fines and costs incurred because of conviction | Fines and costs incurred because of conviction |
| Negative encounter with Michigan judicial system and law enforcement | Negative encounter with Michigan judicial system and law enforcement |

Defense counsel asked Mr. Sharma "[d]o any of you have any negative feelings of that, like, your position is nobody should be incarcerated, everybody should be let out or you shouldn't put them in jail?". **(ECF No. 246, PageID.5843-44)**. A juror, like Mr. Sharma, arrested and convicted by the State of Michigan inarguably harbors negative feelings toward the judicial system and law enforcement. *See Carpa*, 271 F.3d at 967 n.5; *Boyd,* LEXIS 110889, at *41. Mr. Sharma should have affirmatively disclosed his arrest and conviction in response to any one of defense counsel's questions referenced in this brief.[2] *See Hayes v. Woodford*, 301 F.3d 1054, 1082 (9th Cir. 2002) (holding a prospective juror had a warrant out for her arrest on a traffic matter and therefore might have negative feelings about law enforcement constituting a race-neutral reason for striking her), *rev'd on other grounds on reh'g en banc*, 399 F.3d 972 (9th Cir. 2005). Here, Mr. Sharma's conviction was much more significant than a simple traffic matter.

Yet, Plaintiff argues Defendants are not entitled to a new trial because an affirmative response from Mr. Sharma would not have resulted in a for cause challenge. **(ECF No. 281, PageID.8526)**. Plaintiff's argument runs counter to caselaw. *Carpa*, 271 F.3d at 967 n.5; *Boyd,*

---

[2] The juror questionnaire also asked Mr. Sharma whether he or a close family member had been a party to "any type" of lawsuit. Mr. Sharma indicated he had not. Defense counsel's questions, together with the questionnaire, should have prompted Mr. Sharma to disclose his conviction.

4

LEXIS 110889, at *41; *see Vasquez v. Felker,* 2010 U.S. Dist. LEXIS 105656, at *15 (N.D. Cal. September 27, 2010) (finding "the dismissal of jurors for failing to truthfully answer jury questions or to disclose the criminal backgrounds of themselves or their relatives has been held to be proper under federal law."). In fact, the Sixth Circuit and Michigan have clearly held jurors may be challenged for cause where they are biased. *Williams v. Bagley,* 380 F.3d 932, 953 (6th Cir. 2004); *English v. Berghuis,* 900 F.3d 804 (6th Cir. 2018); M.C.R. 2.511(D)(2).

For these reasons, the bias from Mr. Sharma is implied. *See Skaggs,* 164 F.3d at 517; *United States v. Wood,* 299 U.S. 123, 133 (1936). Defendants therefore could have challenged Mr. Sharma for cause if he affirmatively – and *truthfully* – answered counsel's and the court's question.

"The presence of even a single biased juror deprives a defendant of his right to an impartial jury." *Williams,* 380 F.3d at 944 (citing *Morgan v. Illinois,* 504 U.S. 719, 729 (1992)). Here, that juror was the foreman – the juror others elected to lead them through this trial and guide deliberations.

Accordingly, Defendants respectfully request a new trial. If, however, the Court requires further information to examine the extent of Mr. Sharma's bias, Defendants respectfully request an evidentiary hearing.

> B. **DEFENDANTS ARE ENTITLED TO EITHER JUDGMENT AS A MATTER OF LAW OR NEW TRIAL BECAUSE OF COUNSEL'S MISCONDUCT DURING THE EXAMINATION OF BRIAN JONES**

Plaintiff combines two (2) independent causes of action raised in Defendant's motion. Instead of analyzing whether the Court should enforce a sanction of dismissal because of counsel's "contumacious conduct", or whether Defendants are entitled to judgment as a matter of law or a new trial because of counsel's misconduct (i.e., crying), **ECF No. 258, PageID.6179-88**, Plaintiff

5

blends these two (2) separate causes for relief. Defendants point out this distinction for the Court when it analyzes these *independent* causes.

Plaintiff fails to meaningfully address whether counsel's behavior of crying for roughly twenty (20) minutes, in full view of the jury, rises to the level of "contumacious conduct". **(ECF No. 281, PageID.8513)**. Defendants maintain, however, that counsel's misconduct rises to this level. **(ECF No. 258, PageID.6179-81)**. Indeed, in *Fuery v. City of Chicago,* counsel's attempt to inflame the jury to garner jurors' sympathies resulted in the verdict being overturned. 900 F.3d 450, 456 (7th Cir. 2018). While in *Fuery,* it was simply "improper lines of questioning" that elicited an emotional response, *Id.,* here, it was a much more powerful display of raw emotions, further made effective by Jones crying in response. The Court expected more from counsel. See **PageID.6114; PageID.6122**.

But Plaintiff claims because this case involved the tragic death of Jones, it is impossible to determine if the jury was inflamed by counsel's misconduct or was emotional because of the disposition of the case. **(ECF No. 281, PageID.8513-14)**. The Sixth Circuit has developed six (6) factors to identify whether counsel's improper conduct influenced the verdict obtained at trial. *Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980). These six (6) factors confirm counsel's misconduct inflamed jurors.

Under the first factor, the nature of the comments, it is difficult to imagine a more emotionally charged display than uncontrollable crying and sobbing for twenty (20) minutes. **(ECF No. 258, PageID.6184)**. Counsel's crying further inflamed the jury because it caused Jones' brother to cry as well, and because it occurred immediately before the jury was retired for Thanksgiving; causing jurors to mull over this emotional display while surrounded by loved ones. *Id*. at 6177.

6

But Plaintiff argues counsel's crying was irrelevant because "[l]ike *Williams*, if the jurors had any sympathy towards the Plaintiff, a reasonable explanation is that it was likely due to the nature of the action and was provided prior to Plaintiff's Counsel questioning Brian Jones." **(ECF No. 281, PageID.8517)**. In *Williams*, the defendant was convicted for shooting and killing his girlfriend. *Williams v. Campbell*, 2016 U.S. Dist. LEXIS 161669, at *1-2 (E.D. Mich. November 22, 2016). Here, Plaintiff alleged Defendants failed to provide medical care to Jones. Comparing Jones' death to the coldblooded murder of a loved one in *Williams* is disingenuous. Unlike *Williams,* here, jurors' sympathies were inflamed by counsel's misconduct.

In *Williams,* counsel's crying was also isolated and short-lived. The misconduct was so fleeting the Court's opinion dedicates a handful of sentences to the issue. *See* LEXIS 161669, at *59. Conversely, here, counsel cried for twenty (20) minutes while uncontrollably sobbing and wiping her eyes. **(ECF No. 258, PageID.6177)**. Moreover, instead of treating counsel's crying as inconsequential, as in *Williams,* here, the Court scolded counsel. **(PageID.6114, 6122)**.

Plaintiff fails to address the second factor: frequency of the misconduct. Defendant reiterates counsel's prolonged crying and rubbing of her eyes each constituted a new independent action adding to the frequency of her misconduct to the point her actions impermissibly influenced the verdict at trial. **See ECF No. 258, PageID.6184-85.**

Plaintiff concedes under the third factor, the possible relevancy to the real issues before the jury, counsel's emotional display is directly relevant to the issues the jury decided. **See ECF No. 281, PageID.8517-18; see ECF No. 258, PageID.6185.** This factor weighs in Defendants' favor.

Under the fourth factor, the manner in which the parties and the court treated the comments, Plaintiff acknowledges the serious manner in which this Court responded to counsel's crying. **See**

**ECF No. 281, PageID.8518** (observing the Court reviewed counsel's misconduct on *three (3)* separate occasions). As such, the one-sentence instruction Plaintiff references, **ECF No. 281, PageID.8519**, was entirely insufficient to mitigate the sympathy counsel evoked from jurors. Indeed, the Court's response affirms more than a single sentence was necessary. (**PageID.6114, 6122**). Defendants also moved for a limiting instruction to cure counsel's prejudicial misconduct, which the Court denied. *Id.*

Under the fifth factor, the strength of the case, Plaintiff argues his case was extremely strong, such that the jury's verdicts can reasonably be interpreted as Plaintiff proving the higher level of culpability (i.e., criminal recklessness) against the three (3) Defendants instead of the lower level of culpability for professional negligence. **(ECF No. 281, PageID.8519-20)**. Plaintiff's argument misses the mark because, whether Plaintiff proved a higher level of culpability is immaterial, given that the jury found Furnace's and Mollo's actions prior to 5:00 a.m. on April 27, 2018, did not cause Jones' death, and because Plaintiff's and Defendant's experts testified proximate cause was absent for the three (3) Defendants actions after 5:00 a.m. **See ECF No. 258, PageID.6188-89.**

Plaintiff argues, though, this case was not close because the jury deliberated for only two (2) days. **ECF No. 281, at PageID.8520** (citing **ECF No. 243, PageID.5674-5684**). Plaintiff is mistaken.

Consider *Park W. Galleries, Inc. v. Global Fine Art Registry, LLC,* where the jury deliberated for nearly two days in spite of counsel's prejudicial misconduct. 732 F. Supp. 2d 727, 750 (E.D. Mich. 2010). The Court found even though nineteen (19) separate claims were submitted to the jury, the fact deliberations carried on for nearly two days reflected the closeness of the case. *Id.* at 729-30, 750.

Plaintiff claims, however, the Sixth Circuit case, *In re Air Crash Disaster*, 86 F.3d 498 (6th Cir. 1996), undermines the closeness of the present case. **(ECF No. 281, PageID.8520-21)**. There, the Sixth Circuit found the jury took sixteen (16) days to deliberate, with five (5) intervening weekends, which the Court held did not indicate an inflamed rush to judgment. *Id.* at 525. But, in this case, the jury only deliberated for two days, undermining an inference that they were "not inflamed [to] rush to judgment" by counsel's misconduct. *Id.*

Plaintiff's reliance on *In re Air Crash Disaster* is also misplaced because, there, the Sixth Circuit found the defendant had not met its burden of showing it deserved a new trial based on a *few* words in a *long* closing argument. *Id.* at 525-26. Here, counsel's misconduct was not a few words in a sea of prolonged sentences. Rather, counsel's crying, causing Jones' brother to cry as well, carried on for almost the entirety of examination, and unlike words that blend together in a string of sentences, the raw emotion and sympathy an overt act, like crying, garners, is much more prejudicial.

Under the sixth factor, the verdict itself, Defendants again draw the Court's attention to the jury's impossible verdict, which can only be explained by counsel's uncontrollable crying, causing Jones's brother to cry, right before Thanksgiving, influencing the jury's verdict. **(ECF No. 258, PageID.6186-87)**.

Accordingly, Defendants have demonstrated counsel's misconduct inappropriately influenced the jury's verdict. Defendants respectfully asks this Court to grant their motion.

> C. **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND/OR NEW TRIAL SHOULD BE GRANTED BECAUSE A REASONABLE JURY COULD NOT FIND THAT DEFENDANTS WERE A PROXIMATE CAUSE OF PLAINTIFF'S INJURIES, DAMAGES, AND DEATH**

   *I.   The Jury's Verdict Must Be Overturned*

9

Plaintiff concedes both its expert, Dan Fintel, M.D. ("Dr. Fintel"), and Defendants' expert, Bryan Williamson, M.D. ("Dr. Williamson"), testified Jones was certain to die after 5:00 a.m. on April 27, 2018. **See ECF No. 281, PageID.8489.** But Plaintiff argues that because expert testimony is not necessary to prove proximate cause in a deliberate indifference claim, its own expert's testimony – the one Plaintiff tied its fate to and selected himself – is not dispositive of whether Furnace's, Goetterman's, and Mollo's actions after 5:00 a.m. could have proximately caused Jones' death. *Id*. at 8490-92. In doing so, Plaintiff reminds the Court it declined to find that *Phillips v. Tangilag,* 14 F. 4th 524 (6th Cir. 2021) stood for "the proposition that expert testimony is necessary to prove proximate cause in a deliberate indifference claim." *Id*. While the Court found *Phillips* may not *require* expert testimony to prove proximate cause*,* the case is silent on whether expert testimony is *sufficient* to foreclose the possibility of proximate cause. Plaintiff's response fails to recognize this "inconvenient" distinction.

What we can take away from *Phillips,* however, is that "[a]n official must *cause* the harm with a sufficiently culpable mental state—in this context, criminal recklessness." 14 F. 4th at 535. Plaintiff acknowledged he did not need to provide expert testimony on the issue of proximate cause for his deliberate indifference claims. **(ECF No. 281, PageID.8490-91)**. He did so, however, at his own peril, and his deliberate indifference claims cannot stand in the face of Dr. Fintel's testimony. And while Plaintiff claims the jury could have found Defendants failed to care for Jones, none of the evidence or testimony it references, **ECF No. 281, PageID.8492-98**, supports Jones had a chance at survival following 5:00 a.m.

Instead, the only way jurors could have reasonably found Nurses Furnace, Goetterman, and Mollo deliberately indifferent, is for their conduct prior to 5:00 a.m. on April 27, 2018. But as

10

raised in Defendants' motion, this is also impossible because the jury acquitted Furnace and Mollo on Plaintiff's professional negligence claims, finding their conduct prior to 5:00 a.m. did not proximately cause Jones' death. **(PageID.5680-84)**. And, of course, Gotterman was only involved following 5:00 a.m., and so he couldn't have proximately caused Jones' death given Dr. Fintel's and Dr. Williamson's testimony. **(ECF No. 147, PageID.3248)**. The jury therefore could not have found Defendants deliberately indifferent for their actions prior to 5:00 a.m. **(ECF No. 243, PageID.5680-81)**.

Plaintiff argues, though, Defendants waived their challenge to an inconsistent jury verdict because they failed to make a Rule 49(a) objection prior to discharging the jury. **(ECF No. 281, PageID.8498-99)**. But this is not the thrust of Defendants' argument. Rather, Defendants argue the jury could not have found Defendants deliberately indifferent for their conduct prior to 5:00 a.m. on April 27, 2018, because of the professional negligence verdicts, nor for their actions after 5:00 a.m., given Dr. Fitnel's and Dr. William's testimony.[3] **See ECF No. 243, PageID.5680-81**. That the professional negligence verdicts are inconsistent with the jury's verdicts for deliberate indifference only further exposes this truth. Defendants claim survives, independent of the requirement for objection under Rule 49(b).[4]

Nonetheless, Plaintiff outlines evidence it claims supports Nurses Furnace, Goetterman, and Mollo were deliberately indifferent.

### 1. Plaintiff's Evidence for Nurse Furnace

---

[3] Because Goetterman was only involved after 5:00 a.m. on April 27, 2018, the jury could only find him deliberately indifferent and a proximate cause of Jones' death for conduct occurring after 5:00 am. See ECF No. 147, PageID.3248.
[4] The requirement of objecting before the jury is discharged is not as neatly settled as Plaintiff represents. Rather, there is a circuit split regarding the requirement of objecting to later raise an inconsistent jury verdict. *See Umfress v. City of Memphis,* 2021 U.S. App. LEXIS 20367, at *10-11 (6th Cir. Jul. 7, 2021).

11

Four (4) out of the five (5) instances that Plaintiff argues supports Nurse Furnace was deliberately indifferent refer to her conduct that occurred prior to 5:00 a.m. on April 27, 2018. **(ECF No. 281, PageID.8499-8501)**. For the reasons just discussed (i.e., jury's verdict for professional negligence), the jury clearly disagreed with Plaintiff and found Furnace's conduct prior to 5:00 a.m. was not a proximate cause of Jones' death. **See ECF No. 243, PageID.5680-81**.

The fifth instance of conduct refers to Furnace's actions at 5:30 a.m., after she was notified, that Jones was having a seizure. **(ECF No. 281, PageID.8500)**. From 5:30 a.m. and onwards, Furnace was following NP Sherwood's instructions; indeed, KCCF's protocols instruct NP Sherwood was in charge. Because the jury found NP Sherwood was not a proximate cause of Jones' death, and therefore, not deliberately indifferent, **ECF No. 243, PageID.5674-76**, Furnace could also not have been a proximate cause of Jones' death for following Sherwood's directions.

### 2. Plaintiff's Evidence for Goetterman

Plaintiff's argument misses the mark. Goetterman's conduct is immaterial. For Plaintiff to recover damages, he had to prove that not only was Goetterman's conduct "tantamount to providing no medical care at all", but that his conduct was a proximate cause of Jones' death. Plaintiff's own expert forecloses this causal link. **(PageID.5057)**. Nor can Plaintiff point to Dr. Willamson's testimony that timely treatment for Jones would have included IV fluids available in the infirmary, as a basis for showing proximate cause. **(ECF No. 281, PageID.8506)**. Rather, Dr. Williamson testified that after 5:00 a.m. on April 27, 2018, which is when Goetterman first became involved

with Jones' care, Jones was certain to die, such that whatever Goetterman did – or didn't do – was immaterial to Jones' survival.[5]

### 3. Plaintiff's Evidence for Mollo

Plaintiff mostly references Mollo's actions prior to 5:00 a.m. on April 27, 2018, to try to support that the jury reasonably found he was deliberately indifferent and proximately caused Jones' death.  **See ECF No. 281, PageID.8507-11**.  But as discussed, the jury clearly disagreed with Plaintiff and found Mollos' conduct prior to 5:00 a.m. was not a proximate cause of Jones' death.  **See ECF No. 243, PageID.5680-81**.  Furthermore, this Court already ruled the allegations against Mollo regarding the April 26th withdrawal check do not constitute deliberate indifference ("in any case, Steimel and Mollo were treating Jones with medicine and recording observations of his condition. They were not deliberately indifferent to his medical needs. A dispute about the adequacy of a withdrawal check is equivalent to a medical malpractice claim. It does not rise to the level of indifference necessary for an Eighth Amendment claim.").  **(ECF No. 147, PageID.3237)**.

The one instance of conduct Plaintiff references after 5:00 a.m. relates to Mollo's actions at approximately 7:36 a.m. on April 27, 2018.  **(ECF No. 281, PageID.8510)**.  Plaintiff contends Mollo, like Goetterman, was informed by Ms. Nulty that Jones was slumped over the toilet in his cell for at least seven (7) minutes before he entered Jones' cell.  *Id.*  Plaintiff also points out that Mollo delayed administering oxygen or CPR to Jones, and thus the jury could have found he was deliberately indifferent.  *Id*. at 8510-11.

---

[5] For this reason, too, Plaintiff's argument regarding the supply of oxygen and CPR fails as well.  **See ECF No. 281, PageID.8507.**

13

Plaintiff's arguments are misplaced.  Like Goetterman, Mollo's actions were immaterial. This is because Plaintiff had to prove that Mollo's actions were a proximate cause of Jones' death. Dr. Fintel's and Dr. Williamson's testimony foreclose this possibility, however.  **See ECF No. 258, PageID.6188**.  To this day, Plaintiff has failed to produce testimony to the contrary. Moreover, Plaintiff never produced any evidence at trial that Mollo was ever deliberately indifferent regarding the infirmary and oxygen allegations.  Even when prompted by Plaintiff's counsel, Plaintiff's nursing expert, Furman, blamed only Goetterman for allegedly failing to provide oxygen and agreed Mollo was assigned compressions and properly performed his assignment.  Furman testified: "Nurse Goetterman should have - - as soon as he received the Ambu bag he should have started giving two breaths." **(ECF No. 268, PageID.7080)**. Per Expert Furman, Mollo compressed the chest, and took appropriate breaks, just as nurses are taught. (*Id*. at 7116). Realizing that her own expert did not blame Mollo for the CPR, Plaintiff's counsel asked no questions of Mollo regarding the infirmary or CPR **(ECF No. 268, PageID.7127 to 7156; ECF No. 270, PageID.7246 to 7272)** and never established any deliberate indifference against Mollo in the infirmary, or otherwise.

The jury's verdict, finding Nurses Furnace, Goetterman, and Mollo deliberately indifferent cannot withstand the scrutiny of Defendants' motion.

## II.     *The Damages Awarded to Plaintiff Must be Corrected*

Plaintiff argues because the damages awarded by the jury was a joint award of actual and compensatory damages, he is entitled to the entire $6.4 million**.  (ECF No. 281, PageID.8511**). However, Plaintiff ignores the jury verdict form, where the jury clearly delineates the portion of damages attributable to pain and suffering versus wrongful death.  **(ECF No. 243, PageID.5677)**. According to that form, the jury awarded $3 million for Jones' pain and suffering, and $3.4 million

14

for the present and future loss of companionship to the heirs of Jones' Estate. *Id*. The Court can clearly distinguish between the damages awarded.

Plaintiff argues, though, even if Nurses Furnace, Goetterman, and Mollo's actions following 5:00 a.m. on April 27 were not a proximate cause of Jones' death, the damages should be upheld because the jury may have found Defendants' conduct prior to 5:00 a.m. proximately caused Jones' death. **(ECF No. 281, PageID.8512)**. Plaintiff's argument again overlooks the fact the jury found Defendants actions prior to 5:00 a.m. did not cause Jones' death. **(ECF No. 243, PageID.5677)**.[6]

Accordingly, Defendants respectfully ask the Court to only award Plaintiff the $3 million the jury awarded for Jones' pain and suffering.

## CONCLUSION

The Court should adopt the appropriate remedies described throughout.

                            Respectfully submitted,
                            CHAPMAN LAW GROUP

Dated: February 7, 2023        */s/Ronald W. Chapman, Sr.*
                            Ronald W. Chapman Sr., M.P.A.,
                            LL.M. (P37603)
                            Devlin Scarber (P64532)
                            Attorneys for Corizon Defendants
                            1441 West Long Lake Rd., Suite 310
                            Troy, MI 48098
                            (248) 644-6326
                            rchapman@chapmanlawgroup.com
                            dscarber@chapmanlawgroup.com

---

[6] Because Goetterman was only involved after 5:00 a.m. on April 27, 2018, the jury could only not find that he was a proximate cause of Jones' death for conduct occurring before 5:00 a.m. **See ECF No. 147, PageID.3248**.

## **PROOF OF SERVICE**

I hereby certify that on February 7, 2023, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein and I hereby certify that I have mailed by US Postal Service the document to the involved non-participants.

>*/s/Ronald W. Chapman, Sr.*
>Ronald W. Chapman Sr., M.P.A.,
>LL.M. (P37603)
>1441 West Long Lake Rd., Suite 310
>Troy, MI 48098, (248) 644-6326
>rchapman@chapmanlawgroup.com